**JONATHAN W. BIRDT – SBN 183908**
18252 Bermuda Street
Porter Ranch, CA 91326
Telephone: (818) 400-4485
Facsimile: (818) 428-1384
jon@jonbirdt.com
Plaintiff

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JONATHAN BIRDT,<br><br>Plaintiff,<br><br>vs.<br><br>CHARLIE BECK, LEE BACA, THE LOS ANGELES POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFFS DEPARTMENT, DOES 1 to 50,<br><br>Defendants. | **CASE NO. 2:10-CV-08377-RGK -JEM**<br><br>PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Date: April 4, 2011<br>Time: 9:00 a.m.<br>Department: 850<br>Before: Hon. R. Gary Klausner<br>Location: Roybal Courthouse,<br>255 East Temple Street<br>Los Angeles, CA 90012 |

**Contents**

INTRODUCTION ........ 4
SUMMARY OF ARGUMENT ........ 5
FACTUAL BACKGROUND ........ 6
STANDARD OF REVIEW ........ 6
LAPD POLICY ........ 8
LASD POLICY ........ 8
DISTRICT OF COLUMBIA V HELLER ........ 8
MCDONALD V CITY OF CHICAGO ........ 9
DUTY TO REVIEW EACH APPLICATION ........ 10
ARMED CITIZENRY ........ 11
VIOLATION OF PLAINTIFFS RIGHTS ........ 12
CONCLUSION ........ 14

**Cases**


Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986) ........ 6, 7

Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001) ........ 7

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) ........ 6, 7

Chesapeake B &M, Inc. v. Harford County, 58 F.3d 1005, 1009 (4th Cir. 1995) ........ 10

Green v. City of Raleigh, 523 F.3d 293, 306 (4th Cir. 2008) ........ 10

Hague v. Committee for Indus. Org., 307 U.S. 496,516 (1937) ........ 11

Keenan v. Allan, 91 F.3d1275, 1279 (9th Cir.1996) ........ 7

Kunz v. New York, 340 U.S. 290, 294 (1951) ........ 11

McDonald v. City of Chicago, 130 S. Ct. 3020, at 3027 (2010) ........ 9

Nat'l Fed'n of the Blind v. FTC, 420 F.3d 331, 350 n. 8 (4th Cir. 2005)( ........ 10

Near v. Minnesota, 283 U.S. 697, 721-22 (1931) ........ 11

Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir.2000) ........ 7

Reese v. Jefferson Sch. Dist.No. 14J, 208 F.3d 736, 738 (9th Cir. 2000) ........ 7

Reno v. Flores, 507 U.S. 292 (1993) ........ 5

Salute v. Pitchess, 61 Cal. App. 3d 557, 560-561 (1976) ........ 10

Shuttlesworth v. City of Birmingham, 394 U.S. 147, at 153 (1969). ........ 11

Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008) ........ 7

Ward v. Rock Against Racism, 491 18 U.S. 781, 791 (1989) ........ 12


**Statutes**


42 U.S.C. 1983 ........ 5

California Gun Free School Zones Act ........ 6

**INTRODUCTION**

The United States Supreme Court has clearly stated, with regard to the Second Amendment, that:

> "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 128 S. Ct. 2783, at 2798 (2008).

Plaintiff, Jonathan Birdt, is prohibited under California law from leaving his home with a weapon carried for the purposes of self-defense in any condition other than in a locked container. Plaintiff is a resident of Los Angeles who has applied for and been denied a permit to carry a concealed weapon by the Los Angeles Police and Sheriffs' Departments because he failed to identify an imminent or specific threat. California law prohibits the carrying of a loaded weapon unless the resident has been issued a concealed weapons permit. California law also prohibits the carrying of an exposed loaded weapon and an exposed unloaded weapon within 1,000 feet of a school. Plaintiff sought to exercise his constitutional right of carrying a weapon and sought a concealed weapons permit. LAPD and LASD maintain a discretionary policy of not issuing concealed weapons permits unless the applicant demonstrates a clear and present danger to their safety that cannot be mitigated in any other way.

As such, Plaintiff hereby challenges the definition of "good cause" for the issuance of a CCW Permit used by the Los Angeles Police and Sheriffs' Departments because it is unconstitutional and an abuse of discretion as applied to his applications for CCW permits in Los Angeles and seeks orders from this Court compelling defendants to disclose their policies and adopt policies in conformance with constitutional mandates. When individuals enjoy a constitutional "right" to engage in some activity, a license to engage in that activity cannot be conditioned on the government's determination of their "need" to exercise that right. Defendants impose this classic form of unconstitutional prior restraint against the fundamental individual right to keep and bear arms and should be enjoined from doing so.

## SUMMARY OF ARGUMENT

California Penal Code 12050 is the only mechanism in California by which a non-law enforcement official can carry a loaded firearm, absent an immediate life threatening event. Pursuant to the statutory scheme, the California Attorney General has created a form application for residents of the State of California to use when applying for a permit thereunder; however, the decision to issue the permit rests with Chiefs of Police and County Sheriffs. Defendants herein define "good cause" under the statutory scheme in such a fashion that it results in the complete elimination of the issuance of CCW permits thus violating Plaintiff's Second Amendment rights and 42 U.S.C. 1983. By comparison, Florida has almost 800,000 active permits for concealed weapons, but as of 2007, the last year reported, there were only 42,000 issued in California and about 1,000 for Los Angeles (LAPD had less than 30 and LASD less than 500 issued, the balance, more than half, have been issued by other municipal agencies within the county).

When a fundamental right is recognized, substantive due process forbids infringement of that right "at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292 (1993) at 301-02 (citations omitted) Defendants policies in interpreting Section 12050 infringe upon Plaintiff's Second Amendment right "to possess and carry weapons in case of confrontation." District of Columbia v. Heller, 128 S. Ct. 2783 (2008), at 2797. The Second Amendment secures a right to carry arms for self-defense; however, defendants instead demand that applicants prove their need to exercise the right once applicants have been a victim of crime defendants failed to prevent.

## FACTUAL BACKGROUND

Absent a concealed weapons permit, Plaintiff can't exercise his right to keep and bear arms. Plaintiff practices law from his home, but can't leave his home with a weapon because he lives across the street from a school and thus is prevented from carrying in any capacity until he is 1,000 feet away from the school.

In 1995, the California Legislature enacted the California Gun Free School Zones Act which makes it a crime to openly carry a firearm on municipal property (sidewalks, streets, etc) within 1,000 feet of the grounds of a K-12 public or private school without written permission from the school. Persons with a license to carry a concealed firearm are exempt from the law.

Plaintiff is a long time resident, property owner and operates his business in Los Angeles. SSUDF #1. Plaintiff has completed several NRA and State required training courses and has competed (and scored higher than several LAPD Officers) in tactical Pistol competitions with the USPSA. SSUDF #2. Plaintiff has also passed numerous California Department of Justice Background and screening tests for various appointments and numerous weapons purchases. SSUDF #3. Plaintiff also volunteers as a judicial officer for the Los Angeles Superior Court and an Advocate for the Juvenile Court. SSUDF #4. The LAPD and LASD both denied Plaintiffs application for a concealed weapon and both stated the reason for the denial was "failure to establish good cause". SSUDF #5.

## STANDARD OF REVIEW

Summary judgment is proper where the pleadings and materials demonstrate "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A material issue of fact is a question a trier of fact must answer to determine the rights of the parties under the applicable substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. The moving party bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. To satisfy this burden, the movant must demonstrate that no genuine issue of material fact exists for trial. Id. at 322.

Where the moving party does not have the ultimate burden of persuasion at trial, it may carry its initial burden of production in one of two ways: "The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." Nissan Fire & Marine Ins. Co., v. Fritz Cos., 210 F.3d 1099, 1106 (9th Cir.2000).

To withstand a motion for summary judgment, the non-movant must then show that there are genuine factual issues which can only be resolved by the trier of fact. Reese v. Jefferson Sch. Dist.No. 14J, 208 F.3d 736, 738 (9th Cir. 2000). The non-moving party may not rely on the pleadings alone, but must present specific facts creating a genuine issue of material fact through affidavits, depositions, or answers to interrogatories. Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324. The court must review the record as a whole and draw all reasonable inferences in favor of the non-moving party. Hernandez v. Spacelabs Med. Inc., 343 F.3d 1107, 1112 (9th Cir. 2003). However, unsupported conjecture or conclusory statements are insufficient to defeat summary judgment. Id.; Surrell v. Cal. Water Serv. Co., 518 F.3d 1097, 1103 (9th Cir. 2008). Moreover, the court is not required "to scour the record in search of a genuine issue of triable fact," Keenan v. Allan, 91 F.3d1275, 1279 (9th Cir.1996) (citations omitted), but rather "may limit its review to the documents submitted for purposes of summary judgment and those parts of the record specifically referenced therein." Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1030 (9th Cir. 2001).

**LAPD POLICY**

The LAPD official policy on good cause states:

> "The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be ·reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

This policy violates the 2nd amendment under any stretch of the imagination as it is tantamount to a ban on concealed weapon permits absent a "clear and present danger".

**LASD POLICY**

The LASD official policy on good cause states:

> "According to Los Angeles County Sheriff's Department policy (5-09/380.1 0) and the California Supreme Court (CBS, Inc. v. Block, (1986) 42 Cal.3d 646), good cause shall exist only if there is convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

This policy violates the 2nd amendment under any stretch of the imagination as it is tantamount to a ban on concealed weapon permits absent a "clear and present danger".

**DISTRICT OF COLUMBIA V HELLER**

In Heller, after an exhaustive analysis of the text of the Amendment and the founding-era sources of its original public meaning, the Supreme Court stated unequivocally that the Second Amendment guarantees the right to "keep and bear arms" and is "the individual right to possess and carry weapons in case of confrontation.". District of Columbia v. Heller, 128 S. Ct. 2783, 2797 (2008).

> At the time of the founding, as now, to "bear" meant to "carry." See Johnson 161; Webster; T. Sheridan, A Complete Dictionary of the English Language (1796); 2 Oxford English Dictionary 20 (2d ed. 1989) (hereinafter Oxford). When used with "arms," however, the term has a meaning that refers to carrying for a particular purpose--confrontation. In *Muscarello v. United States, 524 U.S. 125, 118 S. Ct. 1911, 141 L. Ed. 2d 111 (1998),* in the course of analyzing the meaning of "carries a firearm" in a federal criminal statute, Justice Ginsburg wrote that "[s]urely a most familiar meaning is, as the *Constitution's Second Amendment* . . . indicate[s]: 'wear, bear, or carry . . . upon the person or in the clothing or in a pocket, for the purpose . . . of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id., at 143, 118 S. Ct. 1911, 141 L. Ed. 2d 111* (dissenting opinion) (quoting Black's Law Dictionary 214 (6th ed. 1990)). We think that Justice Ginsburg accurately captured the natural meaning of "bear arms." Although the phrase implies that the carrying of the weapon is for the purpose of "offensive or defensive action," it in no way connotes participation in a structured military organization. Id. at 2794.

The Supreme Court has explained that the natural meaning of “bear arms” is to “‘wear, bear, or carry ...upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.’” Id. at 2793 (quoting Muscarello v. United States, 524 U.S. 125, 143 (1998)). Further, Heller states that the right to bear arms does not bar "laws forbidding the carrying of firearms in sensitive places such as schools and government buildings." Id. at 2817. The obvious and inescapable implication is that there is a constitutional fundamental right to carry firearms in places which are not "sensitive" for the purpose of self-defense protected by and embodied within the Second Amendment.

## MCDONALD V CITY OF CHICAGO

Two years later in McDonald v. City of Chicago, the United States Supreme Court made it clear that the Second Amendment was applicable to the States and subject to the same protection as other rights like the First Amendment. McDonald v. City of Chicago, 130 S. Ct. 3020, at 3027 (2010).

**DUTY TO REVIEW EACH APPLICATION**

"It is the duty of the sheriff to make such an investigation and determination, on an individual basis, on every application under section 12050." Salute v. Pitchess, 61 Cal. App. 3d 557, 560-561 (1976). The stated policy of each department however is contrary to even this principle, by effectively excluding every application with a standard that can never be met. In this case, both the Sheriff and Chief did not even conduct any further inquiry or interview before denying Plaintiffs application and ignored Plaintiffs request to revisit, appeal or review his application.

The Census bureau estimated population for Los Angeles County in 2009 was 9,848,011 and for these Ten Millions residents, LASD had less than 500 permits issued. Similarly, though even more shocking is that in 2006 the City of LA had an estimated population of 3,849,378 and LAPD had less than 20 active permits to carry concealed issued. And while plaintiff does not seek the wholesale issuance of concealed weapons permits, there has to be a middle ground that passes constitutional muster and permits law abiding citizens to exercise their rights when they so desire.

"Traditionally, unconstitutional prior restraints are found in the context of judicial injunctions or a licensing scheme that places 'unbridled discretion in the hands of a government official or agency.'" Nat'l Fed'n of the Blind v. FTC, 420 F.3d 331, 350 n. 8 (4th Cir. 2005)(quoting FW/PBS, 493 U.S. at 225-26). "Unbridled discretion naturally exists when a licensing scheme does not impose adequate standards to guide the licensor's discretion." Chesapeake B &M, Inc. v. Harford County, 58 F.3d 1005, 1009 (4th Cir. 1995) (en banc); cf. Green v. City of Raleigh, 523 F.3d 293, 306 (4th Cir. 2008) ("'virtually unbridled and absolute power' to deny permission to demonstrate publically, or otherwise arbitrarily impose de facto burdens on public speech" is unconstitutional) (citation omitted).

Public safety is invoked to justify most laws, but where a fundamental right is concerned, a mere incantation of a public safety rationale does not save arbitrary licensing schemes. In the First Amendment arena, where the concept has been developed extensively, courts have consistently condemned licensing systems which vest in an administrative official discretion to grant or withhold a permit upon broad criteria unrelated to proper regulation of public places. Kunz v. New York, 340 U.S. 290, 294 (1951); Shuttlesworth v. City of Birmingham, 394 U.S. 147, at 153 (1969). "But uncontrolled official suppression of the privilege cannot be made a substitute for the duty to maintain order in connection with the exercise of the right." Hague v. Committee for Indus. Org., 307 U.S. 496,516 (1937) (plurality opinion).

## ARMED CITIZENRY

History and experience have demonstrated that the doomsayers who opposed Second Amendment rights were just plain wrong. 20 years ago when Florida became one of the first States to grant unfettered access to CCW permits, the critics warned there would be shootings in street over parking places. Instead, each of the more than 40 states that have followed the trend of recognizing the constitutional rights of their citizenry by going to a shall issue standard for CCW permits have seen a drop in violent crime and no increase in accidental or negligent shootings by those legal entitled to carry concealed weapons. The reality is that criminals don't seek safety training or permission to carry a concealed weapon, and those who do are far more careful and cautious than those who don't. If anything, the lessons learned tell us that it is far safer to grant CCW permits than it is to deny them.

Public safety concerns may justify permissible regulations of protected activities, but the Constitution does not permit fundamental civil rights to be abridged by public safety fears. See, e.g., Near v. Minnesota, 283 U.S. 697, 721-22 (1931).

The Heller Court held that handguns could not be prohibited, even to serve purportedly compelling societal needs:

> The very enumeration of the right [to keep and bear arms] takes out of the hands of government—even the Third Branch of Government—the power to decide on a case-by-case basis whether the right is really worth insisting upon. Heller, 128 S. Ct. at 2821.

The Court's rationale makes it clear that the Second Amendment stands on the same plane as any other enumerated constitutional right:

> We would not apply an "interest-balancing" approach to the prohibition of a peaceful neo-Nazi march through Skokie. The First Amendment contains the freedom-of-speech guarantee that the people ratified, which included exceptions for obscenity, libel, and disclosure of state secrets, but not for the expression of extremely unpopular and wrong-headed views. The Second Amendment is no different. Id. at 2821 (citing Nat'l Socialist Party of Am. v. Skokie, 432 U.S. 43 (1977)).

There is no evidence that issuing CCW's in any increases the risk to the public, creates a public safety concern or in any way hampers law enforcement and the spread of recognition of Second Amendment rights has in fact held a very strong and consistent correlation to a decline in violent crimes.

## VIOLATION OF PLAINTIFFS RIGHTS

A "reasonable" regulation is one that does not eliminate the exercise of a right, but instead is narrowly tailored, is based on a significant government interest, and leaves ample alternatives. As with the right to keep and bear arms, the right to freedom of speech has sometimes been analyzed in terms of "reasonable" regulation. For example, many public events for the exercise of First Amendment rights may be subject to "reasonable" time, place, and manner regulations. So the "government may impose reasonable restrictions," which means that the restrictions must be "narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." Ward v. Rock Against Racism, 491 18 U.S. 781, 791 (1989).

In the instant case, defendants' restrictive good cause definition and denial of permits to almost everyone without deliberation or investigation is a broad prohibition, the opposite of narrow tailoring. Nor does the prohibition leave any practical "alternative" to Plaintiff. For these reasons alone, defendants' actions fail a reasonableness standard.

They also fail because they do not advance a significant government interest. Mere fretting about the dangers of carrying guns in general does not address the reasonableness of carrying by adults who have passed a background check, taken safety classes, and whose carrying is consistent with the Second Amendment Rights guaranteed to all.

Separate and apart from their discretionary deficiencies, requirements that applicants demonstrate “justifiable need” and “urgent necessity for self-protection” are impermissible because the Second Amendment protects the “the inherent right of self-defense,” Heller, 128 S. Ct. at 2797 (emphasis added), and “guarantee[s]the individual right to possess and carry weapons in case of confrontation,” Id. at 2817 (emphasis added). Even if part of the “justifiable need” requirement can somehow be characterized as nondiscretionary, it is impermissible to limit the exercise of constitutional rights based on “need.” Logically, Los Angeles law enforcement is saying, you can’t protect yourself until you have actually been a victim and proven we can’t protect you. Legally, such logic is flawed and abusive of the rights of citizens; because when seconds count, LA Police and Sheriff are only minutes away.

## CONCLUSION

Much like First Amendment regulation of time, place and manner, Plaintiff does not dispute some regulation is appropriate and does not seek to yell "fire" in a crowded theater, instead, plaintiff seeks only the right to discreetly possess a registered handgun for the purpose of self-defense and the protection of his family. Plaintiff volunteers and works in several areas that present unique risks and threats and has been involved in countless high profile litigation involving law enforcement, convicted murderers and victims of abuse, and while he believes self-defense should be sufficient, his unique situation goes a step further and merits review and consideration under clear guidelines in conformance with his rights under the Second Amendment to the United States constitution.

> Our decision in Heller points unmistakably to the answer. Self-defense is a basic right, recognized by many legal systems from ancient times to the present day, 15 and in Heller, we held that individual self-defense is "the central component" of the Second Amendment right. McDonald v. City of Chicago, 130 S. Ct. 3020, at 3037.

Nowhere in any of the Supreme Court cases discussing the Second Amendment have the words "in the home" ever been incorporated as limiting the constitutional right to bear arms established thereunder. Plaintiff does not dispute the States rights to restrict the possession of firearms in sensitive places, but an all out prohibition of the right to keep and bear arms cannot pass scrutiny under any standard. This Court is respectfully requested to order the defendants to present, publish and adopt reasonable practices for the issuance of CCW permits in conformance with constitutional mandates.

January 4, 2011 __/s/ Jonathan W. Birdt_____________

By Plaintiff Jonathan W. Birdt