1 | **CARMEN A. TRUTANICH,** City Attorney (SBN 86629x)
**GARY G. GEUSS,** Chief Assistant City Attorney
2 | **CORY M. BRENTE,** Assistant City Attorney
**ELIZABETH MITCHELL,** Deputy City Attorney (SBN 251139)
3 | 200 North Main Street
6th Floor, City Hall East
4 | Los Angeles, CA  90012
Email: elizabeth.mitchell@lacity.org
5 | Phone No.: (213) 978-6958
Fax No.: (213) 978-8785
6 |
*Attorneys for Defendants* CHARLIE BECK and CITY OF LOS ANGELES
7 |

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BIRDT, | CASE NO. CV10-8377 RGK (JEM) |
| Plaintiff, | |
| v. | **DEFENDANT CHARLIE BECK AND LAPD'S EX PARTE APPLICATION FOR PROTECTIVE ORDER PREVENTING PLAINTIFF FROM TAKING LAPD CHIEF CHARLIE BECK'S DEPOSITION UNDER F.R.Civ.P. 26(C)(1)(A); DECLARATIONS OF DAVID DOAN AND ELIZABETH MITCHELL** |
| CHARLIE BECK, LEE BACA, THE LOS ANGELES POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFFS DEPARTMENT, DOES 1 to 50, *inclusive,* | |
| Defendants. | |
| | **[Proposed order filed concurrently herewith]** |

Defendants Los Angeles Police Department and Charlie Beck file this Ex Parte Application for a Protective Order for the Deposition of Los Angeles Police Chief Charlie Beck under F.R.Civ.P. 26(c)(1)(A).

### I.   STATEMENT OF FACTS

Plaintiff filed a lawsuit alleging that his constitutional rights were violated when his Concealed Carry Weapons ("CCW") permit application was denied by the Los Angeles

1

1 | Police Department ("LAPD").  Specifically he alleges that LAPD's policy defining "good
2 | cause" under California Penal Code Section 12050 was unconstitutionally applied to him
3 | in violation of his rights under the Second and Fourteenth Amendments.  Within two
4 | weeks of Defendants Beck and LAPD answering the complaint, Plaintiff filed his Motion
5 | for Summary Judgment, prior to discovery even being allowed.  Within Plaintiff's Motion
6 | for Summary Judgment, he alleges the same thing ("...Plaintiff hereby challenges the
7 | definition of "good cause" for the issuance of a CCW Permit used by the Los Angeles
8 | Police and Sheriffs' Departments because it is unconstitutional and an abuse of discretion
9 | as applied to his applications for CCW permits..." Plaintiffs Motion for Summary
10 | Judgment, 4:19-22).

11 | On Friday, March 25, 2011 Plaintiff emailed a notice of deposition for LAPD Chief
12 | Charlie Beck for April 15, 2011.  Chief Beck had absolutely nothing to do with the denial
13 | of Plaintiff's CCW application submitted to LAPD and has no personal knowledge thereof
14 | (Declaration of David Doan).  Instead, Chief Beck delegated his authority to LAPD
15 | Deputy Chief David Doan, Chief of Detectives, who denied Plaintiff's CCW application
16 | (Declaration of David Doan).

17 | In compliance with Local Rules 7-19 and 7-19.1, on Tuesday March 29, 2011,
18 | defense counsel emailed Plaintiff and informed him that Chief Beck had no personal
19 | knowledge of Plaintiff's CCW permit application and therefore was not the appropriate
20 | person to depose.  Instead, defense counsel offered to produce Deputy Chief David Doan
21 | who does have personal knowledge of Plaintiff's CCW permit application and was in fact
22 | the individual who denied Plaintiff's CCW application.  Plaintiff refused, insisting on
23 | deposing Chief Beck on the basis that it was his "right" despite the fact that Chief Beck
24 | has no personal knowledge of his application.  Plaintiff indicated he will oppose the Ex
25 | Parte Application. [See Declaration of Elizabeth Mitchell]  Plaintiff can be reached at
26 | 18252 Bermuda Street, Porter Ranch, CA 91326, (818) 400-4485 or by email at
27 |
28 |

1  jonbirdt@yahoo.com.

2       Ex Parte relief is appropriate in this case because Chief Beck's deposition was

3  noticed by Plaintiff for approximately two weeks from today.  Defendants do not have the

4  time to go through the ordinary motion process and require extraordinary relief.

5      **II.  THIS COURT SHOULD ISSUE A PROTECTIVE ORDER**

6             **PROTECTING LAPD CHIEF CHARLIE BECK FROM BEING**

7             **DEPOSED**

8       Rule 26(c) of the Federal Rules of Civil Procedure provides that, upon motion by a

9  party who has in good faith conferred or attempted to confer with other affected parties in

10  an effort to resolve a discovery dispute without court action, the court "may, for good

11  cause, issue an order to protect a party or person from annoyance, embarrassment,

12  oppression, or undue burden or expense," including an order (A) forbidding the . . .

13  discovery." F.R.Civ.P. 26(c)

14       According to The Rutter Group, high-level government officials may obtain a

15  protective order from being deposed "about matters as to which he or she has no personal

16  knowledge." (Schwarzer, et al., California Practice Guide: Federal Civil Procedure Before

17  Trial (The Rutter Group 2010) ¶11:1421) (Hereinafter "TRG"). *See Kyle Engineering Co.*

18  *v. Kleppe*, 600 F.2d 226, 231-32 (9th Cir. 1979) ("Heads of government agencies are not

19  normally subject to deposition..."). TRG goes on to state that the fact that high-level

20  government officials "are not involved in the decision making process may justify

21  relieving them of the burdens of litigation discovery." *Id.* At ¶ 11:1422. *See also Avalos v.*

22  *Baca*, 2006 U.S. Dist. LEXIS 79376 (C.D.CA, 2006) ("Although there is no definite Ninth

23  Circuit authority on the point, courts have recognized that high-ranking government

24  officials may not be deposed absent extraordinary circumstances")(citing *Green v. Baca*,

25  226 F.R.D. 362, 369 (N.D.CA 2000). "A narrow exception to this rule applies where the

26  officials "have direct personal factual information pertaining to material issues in an

27

28                    3

1  action… [and] where the information to be gained.. is not available through any other

2  source." *Avalos v. Baca, supra*, at 4 (citations omitted). *See also Stagman v. Ryan*, 176

3  F.3d 986, 994 (7th Cir. 1999) (Employee fired from Attorney General's Office barred from

4  deposing Attorney General who had no involvement in terminating plaintiff); *In re FDIC*,

5  58 F.3d 1055, 1061 (5th Cir 1995) ("[E]xceptional circumstances must exist before the

6  involuntary depositions of high agency officials are permitted" (citations omitted)); *In re*

7  *United States*, 985 F.2d 510, 512 (11th Cir 1993) ("High ranking officials have greater

8  duties and time constraints than other witnesses.")

9        Finally, in listing some relevant factors in determining whether a protective order

10 should be issued, one of the factors is "whether the party seeking the protective order is a

11 public entity or official." *Schwarzer, et al, supra*, at ¶11:1072 (other factors include

12 whether the information is being sought for a legitimate purpose, whether disclosure will

13 violate any privacy interest,   whether disclosure will cause a party embarrassment,

14 whether disclosure is important to public health and safety, whether sharing of information

15 among litigants will promote fairness and efficiency in the litigation, and whether the case

16 involves issues of public importance.)  In *In re F.D.I.C.*, 58 F.3d 1055 (5th Cir. 1995) the

17 court found it was error not to consider the high-ranking status of the deponents and the

18 potential burden it would impose on them.

19       In this case Plaintiff is challenging the Defendant LAPD's "good cause" policy as

20 applied to his CCW permit application.  LAPD Chief Charlie Beck had absolutely nothing

21 to do with Plaintiff's CCW permit application and has no personal knowledge thereof (See

22 Declaration of David Doan).  California Government Code § 24100 states that

23 "[w]henever the official name of any principal officer is used in any law conferring power

24 or imposing duties or liabilities, it includes deputies."  Chief Beck delegated his authority

25 in this instance to Deputy Chief David Doan.  Accordingly, there is no basis for deposing

26 Chief Beck other than to annoy and harass him which is completely improper under

27

28                                                4

1   F.R.Civ.P 26.  As the police chief of the second largest city in the United States Chief

2   Beck clearly qualifies as a high-ranking government official.  Further, he is extremely

3   busy and has several important duties, with responsibility for overseeing a nearly 10,000

4   member police force, public security issues in a post 9-11 world, and the current financial

5   problems facing the City, and time constraints that make him different than another

6   witness.  To allow this deposition to be taken on subjects about which he has no

7   knowledge and cannot testify to is not only a burden on him, but a waste of the court's and

8   counsel's time as well.

9        Moreover defense counsel offered to have Deputy Chief David Doan be produced

10  for the deposition in Chief Beck's stead.  Deputy Chief Doan is the highest ranked

11  individual with personal knowledge of Plaintiff's CCW permit application and the

12  individual who made the ultimate decision to deny Plaintiff's application.  Because

13  Plaintiff is challenging the denial of his CCW permit application - not the policy itself -

14  clearly Deputy Chief Doan is the high ranking LAPD official with personal knowledge on

15  that fact and should be the one deposed.

16       **III.   CONCLUSION**

17       For the foregoing reasons, Defendants LAPD and Charlie Beck's Request for

18  Protective Order should be granted precluding Plaintiff from deposing LAPD Chief

19  Charlie Beck.

20

21

22  DATED: April 1, 2011         **CARMEN A. TRUTANICH**, City Attorney
                                 **GARY G. GEUSS**, Chief Assistant City Attorney
23                               **CORY M. BRENTE**, Supervising Asst. City Attorney

24

25                        By   _Elizabeth Mitchell_____
                                 **ELIZABETH MITCHELL**
26                               Deputy City Attorney
                                 Attorneys for Defendants **CHARLIE BECK and CITY
27                               OF LOS ANGELES**

28                                       5

## DECLARATION OF ELIZABETH MITCHELL

I, Elizabeth Mitchell, say and declare as follows:

1. I am an attorney at law, duly licensed to practice law all the courts of the State of California. I am employed as a Deputy City Attorney for the City of Los Angles in the Police Litigation Unit, and I am the attorney of record for Defendants City of Los Angeles and Charlie Beck in this matter. I have personal knowledge of the information set forth below, except those things set forth on information and belief, and as to those, I believe them to be true.

2. On Friday, March 25, 2011 Plaintiff emailed a notice of deposition for LAPD Chief Charlie Beck for April 15, 2011.

3. In compliance with Local Rules 7-19 and 7-19.1, on Tuesday March 29, 2011, I emailed Plaintiff Jonathan Birdt and copied counsel for Los Angeles Sheriffs Department and Lee Baca, Jennifer Lehman, and informed him that Chief Beck had no personal knowledge of Plaintiff's CCW permit application and therefore was not the appropriate person to depose. Instead, I offered to produce LAPD Deputy Chief David Doan who does have personal knowledge of Plaintiff's CCW permit application and was in fact the individual who denied Plaintiff's CCW application. Plaintiff refused, insisting on deposing Chief Beck on the basis that it was his "right" despite the fact that Chief Beck has no personal knowledge of his application. Plaintiff indicated he will oppose the Ex Parte Application.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct. Executed this 1st day of April 2011, at Los Angeles, California.

_Elizabeth Mitchell_
Elizabeth Mitchell

## **DECLARATION OF DAVID DOAN**

I, David Doan, say and declare as follows:

     1.  I am a Deputy Chief of Police for the Los Angeles Police Department, Chief of Detectives.

     2.  In my capacity as Chief of Detectives, I review all finalized applications for Concealed Carry Weapon ("CCW") permits that are submitted to the Los Angeles Police Department ("LAPD").

     3.  When an individual submits an initial application for a CCW permit to the LAPD, the application is first reviewed by an officer assigned to LAPD's Gun Unit. Once the review and preliminary investigation is completed, the application packet is then given to the Detective in charge of the Gun Unit, and then forwarded on to the Lieutenant of the Gun Unit for further review.  Thereafter it is sent to the Assistant Commander of the Gang and Narcotics Division, then Commanding Officer of the Gang and Narcotics Division for review, then the Assistant Commanding Officer, Detective Bureau who writes a recommendation and forwards it to me in my capacity as the Chief of Detectives.

     4.  If the recommendation is to deny the CCW permit application, I sign the letter denying the permit, and no one else reviews the application at that time. I have ultimate authority, vested in me by the Chief of Police, to deny permit applications during this initial application process.

     5.  If the initial recommendation written by the Assistant Commanding Officer of the Detective Bureau during the first permit application process is to approve the

7

1   applicant's CCW permit, I will review the application and then forward it to the Chief

2   of Police who reviews the application packet and ultimately approves or denies the

3   CCW permit application.

4          6. After a permit application is denied, the applicant can elect to have an

5   independent citizen advisory board review his or her application and make a

6   recommendation. If the advisory board recommends against giving the applicant a

7   CCW permit, the process is over and the permit remains denied. If the advisory board

8   recommends that the applicant be given a permit, the process starts again from the

9   beginning. The Chief of Police himself will ultimately review and either approve or

10  deny all applications in this second round of reviews.

11         7. Plaintiff Jonathan Birdt applied for a CCW permit in February, 2010. The

12  same review process described in Number 3 above was used, and I was the one who

13  ultimately denied his application. The Chief of Police, Charlie Beck, never reviewed

14  Plaintiff's application, nor has any personal knowledge of Plaintiff's application.

15

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28

8.  Plaintiff Jonathan Birdt went through the process with the independent citizen advisory board.  They reviewed his application and recommended against issuing Mr. Birdt a CCW permit because he failed to establish good cause for licensure. Therefore Mr. Birdt's application packet will not be resubmitted for the second round of review and LAPD Police Chief Charlie Beck will not see Mr. Birdt's application.

I swear under penalty of perjury under the laws of the United States that the foregoing is true and correct.  Executed this  31  day of March 2011, at Los Angeles, California.

David Doan