1 | ANDREA SHERIDAN ORDIN, County Counsel
ROGER H. GRANBO, Assistant County Counsel
2 | JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
(SBN 191477) • jlehman@counsel.lacounty.gov
3 | JONATHAN MCCAVERTY, Deputy County Counsel
(SBN 210922) • jmccaverty@counsel.lacounty.gov
4 | 648 Kenneth Hahn Hall of Administration
500 West Temple Street
5 | Los Angeles, California 90012-2713
Telephone (213) 974-1908 Fax: (213) 626-2105
6
7 | Attorneys for Defendants
LOS ANGELES COUNTY SHERIFF'S DEPARTMENT & LEE BACA

8

9

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BIRDT, | CASE NO. CV 10-08377 RGK (JEMx) |
| Plaintiff, | **DEFENDANTS LOS ANGELES COUNTY SHERIFF'S DEPARTMENT & LEE BACA'S AMENDED SEPARATE STATEMENT OF UNDISPUTED FACTS & CONCLUSIONS OF LAW; EVIDENCE IN SUPPORT THEREOF & RESPONSE TO PLAINTIFF'S SEPARATE STATEMENT** |
| v. | |
| CHARLIE BECK, LEE BACA, THE LOS ANGELES POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT, and DOES 1 through 50, | |
| Defendants. | [Filed concurrently with Notice of Motion and Motion for Summary Judgment/Opposition to Plaintiff's Motion for Summary Judgment; Proposed Order] |
| | MSJ Date; **May 16, 2011**<br>Time: 9:00 a.m.<br>Dept. 850 |
| | Action Filed: November 4, 2010<br>**Trial Date: October 4, 2011** |

Defendants Los Angeles County Sheriff's Department and Sheriff Lee Baca

("the LASD Defendants") submit their Amended Separate Statement of

1  Uncontroverted Facts & Conclusions of Law in support of their Motion for

2  Summary Judgment/Partial Summary Judgment pursuant to Local Rule 56-1.  This

3  Amended Separate Statement replaces former Docket No. 55 and redacts Plaintiff's

4  private information which was inadvertently included in Exhibit 2 and Exhibit 4 to

5  the Declaration of Larry Waldie.

6              **LASD DEFENDANTS' UNDISPUTED FACTS AND EVIDENCE**

7

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| 1.    Larry L. Waldie is the Undersheriff for Los Angeles County. As part of his responsibilities as Undersheriff he has been designated to act as the Sheriff's sole authorized representative for reviewing applications for (CCW) licenses for the county of Los Angeles.  In that role, he and members of his staff, evaluate CCW applications.  While members of his staff make recommendations regarding applications, he is the final decision-maker. | 1.     Exh. A, Waldie Decl. ¶¶ 1-2. |
| 2.    As part of his evaluation of CCW applications, he will review the entire application packet and any and all supporting documentation.  He has been involved in these decisions since | 2.     Exh. A, Waldie Decl. ¶ 2. |

| **LASD Defendants' Undisputed Facts** | **LASD Defendants' Supporting Evidence** |
|---|---|
| he became Undersheriff in 2005. | |
| 3.     In Los Angeles County, there are four distinct categories of CCW licenses:  Employment, Standard, Judges, and Reserve Police Officers. The Employment CCW license is issued only to a person who spends a substantial period of time in his or her principal place of employment or business in Los Angeles County.  The Standard CCW license is issued to residents of Los Angeles County or to residents of a particular city within Los Angeles County.  The Judge CCW license is issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts.  The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6. | 3.     Exh. A, Waldie Decl. ¶ 3. |
| 4.     If an applicant resides in an incorporated city not policed by the LASD, the applicant must apply to the | 4.     Exh. A, Waldie Decl. ¶ 4. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| chief of police of their city of residence for a concealed weapons license and have such application acted upon. Within 60 days after a denial of such application, such city resident may file a separate application with the LASD, attaching a copy of the application denied by the chief of police.  The LASD will exercise independent discretion in granting or denying licenses to such person but may review, consider, and give weight to the grounds upon which such denial was made. | |
| 5.     California Penal Code sections 12050-12054 set forth the general criteria that CCW applicants must meet.  Applicants must be of good moral character, be a resident of, or spend substantial time in the County they apply in, take a firearms course, and demonstrate good cause for the license. | 5.     Exh. A, Waldie Decl. ¶ 5. |
| 6.     The issuance of licenses enabling a private citizen to carry a CCW is of | 6.     Exh. A, Waldie Decl. ¶ 6. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| great concern to the LASD. The LASD's overriding policy is that no CCW license should be granted merely for the personal convenience of the applicant. No position or job application in itself shall constitute good cause for the issuance, or for the denial, of a CCW license. | |
| 7.    The LASD defines "good cause" under California Penal Code section 12050 as requiring convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by applicant's carrying of a concealed firearm. | 7.    Exh. A, Waldie Decl. ¶ 6. |
| 8.    Each application is individually reviewed for cause. The LASD's definition of good cause has been in existence since Undersheriff Waldie began reviewing CCW applications in 2005. It is the Undersheriff's | 8.    Exh. A, Waldie Decl. ¶ 6. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| understanding that this definition of good cause, or one similar to it, is utilized by many other counties within California, including San Diego. | |
| 9.     In evaluating whether an applicant has presented "convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by applicant's carrying of a concealed firearm," an applicant's stated reason of self-defense is not enough. | 9.     Exh. A, Waldie Decl. ¶ 7. |
| 10.     The applicant must demonstrate a credible threat of violence which would justify the need to possess a concealed weapon.  If an applicant claims that he or she has been threatened, the LASD looks for documentation of that threat, such as police reports or other evidence. | 10.     Exh. A, Waldie Decl. ¶ 7. |
| 11.     One of the purposes for the | 11.     Exh. A, Waldie Decl. ¶ 8. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| LASD's policy is to protect against gun violence to the community at large, as well as to protect officers conducting law enforcement operations on the streets. | |
| 12.    Gun violence is a problem throughout the State of California and Los Angeles County is no exception. The vast majority of homicides in Los Angeles County are committed with the use of guns.  Handguns are of particular concern because they are much more likely to be used than shotguns and rifles.  Because handguns are small, easy to conceal, and deadly at short range, they are of paramount concern and danger.  Further, most of the violent acts committed in this County involving the use of guns are by gang members. | 12.    Exh. A, Waldie Decl. ¶ 8; see also Exh, B, Zimring Decl., ¶¶ 3-6. |
| 13.    The presence of more guns on the streets of Los Angeles County creates many problems for law enforcement officers.  Officers are often charged with monitoring public | 13.    Exh. A, Waldie Decl. ¶ 9; Exh,. B, Zimring Decl., ¶¶ 3-6. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| gatherings as well as with breaking up public nuisance.  Officers must act quickly whenever a disturbance occurs.  Often times, this involves isolating one or two problem individuals.  However, if multiple persons within a crowd are carrying concealed weapons, this creates an increased likelihood that guns will be brandished or used.  Thus, the increased presence of guns creates not only increased safety problems for officers but also for members of the community at large. | |
| 14.    It is the LASD's position that increasing the numbers of concealed weapons in the community increases the threat of gun violence to the community at large, to those who use the streets and go to public accommodations, and to law enforcement officers patrolling the streets.  Further, the increased presence of concealed handguns make law enforcement operations more difficult thus taking away valuable resources | 14.    Exh. A, Waldie Decl. ¶ 10; Exh. B, Zimring Decl., ¶¶ 3-6. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| which would be better used conducting law enforcement operations. | |
| 15.    Los Angeles County's "good cause" requirement is intended to drastically restrict the number of persons who are secretly armed in the County. | 15.    Exh. A, Waldie Decl. ¶ 10; see also Exh. B, Zimring Decl., ¶¶ 3-6. |
| 16.    At present, there are approximately 400 concealed weapons permits that were issued by the LASD. The Undersheriff is informed and believe that the County's Chief Executive Office has estimated that the population of Los Angeles County as of January 2010 was 10,441,080 people. | 16.    Exh. A, Waldie Decl. ¶ 11. |
| 17.    The LASD reviewed Mr. Birdt's first application and determined that he failed to show good cause as required by LASD policy, and as defined above. LASD has not yet responded to Mr. Birdt's second application as of the date of the Undersheriff's Declaration. | 17.    Exh. A, Waldie Decl. ¶ 15 and exhibits 1-4 thereto; Exh. C, Birdt Depo., p. 111:1-10. |
| 18.    In his initial application to the LASD, Plaintiff states as justification: <u>Details of Reason for Applicant</u> | 18.    Exh, A, Waldie Decl., exh. 2 thereto, p. 13. |

| LASD Defendants' Undisputed Facts | LASD Defendants' Supporting Evidence |
|---|---|
| Desiring a CCW License: Volunteer LA Superior Court Judge.  Frequent Las Vegas Travel with large sums of cash.  Unprotected/Unsecured office with threat against employer. Representation of victims of violence, abuse + murder. | |
| 19.    Birdt never spoke with anyone from the LAPD to report threats against him and to his knowledge, no report was ever generated. | 19.    Exh. C, Birdt Depo., p. 31:15-p. 33:19; p. 42:4-p. 45:10; p. 50:10-17. |
| 20.    Birdt was never threatened in his capacity as a volunteer judge. | 20.    Exh. C, Birdt Depo. p. 33:23-24; p. 37:2-7. |
| 21.    Birdt was never specifically threatened as a result of his position on the juvenile dependency court panel. | 21.    Exh. C, Birdt Depo., p. 38:5-7; p. 39:8-p. 40:8. |
| 22.    Birdt himself has never been expressly threatened with harm at all. | 22.    Exh. C, Birdt Depo., pp. 68:5-p. 71:1 |
| 23.    In 2009, there were 126,352 adults arrested by the LASD, and 46,329 felony arrests. | 23.    Exh. D, LASD Arrest Statistics 2009, www.lasd.org |
| 24.    In that same year, 23,001 LASD arrests involved those with prior felony convictions. | 24.    Exh. E, Enbom Decl. ¶3. |

1   The LASD Defendants also submit this Response to Plaintiff Jonathan

2   Birdt's Separate Statement of Uncontroverted Facts & Conclusions of Law in

3   support of his Motion for Summary Juidgment/Partial Summary Judgment

4   pursuant to Local Rule 56-1.

5

6   **PLAINTIFF'S UNDISPUTED FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

7

| Plaintiff's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response |
|---|---|
| 1.   Plaintiff is also a long time resident, property owner and operates his business in Los Angeles from his home.<br>**Evidence:**  Declaration of Jonathan W. Birdt at Paragraph 2. | 1.   Undisputed for purposes of this Motion. |
| 2.   Plaintiff has completed several NRA and State required training courses and has competed (and scored higher than several LAPD Officers) in tactical Pistol competitions with the USPSA.<br>**Evidence:**  Declaration of Jonathan W. Birdt at Paragraph 3. | 2.   Undisputed for purposes of this Motion. |
| 3.   Plaintiff has also passed numerous California Department of Justice Background and screening tests for various appointments and numerous weapons purchases. | 3.   Undisputed for purposes of this Motion. |

| Plaintiff's Undisputed Material Facts and Supporting Evidence: | Opposing Party's Response |
|---|---|
| **Evidence:** Declaration of Jonathan W. Birdt at Paragraph 4. | |
| 4.     Plaintiff also volunteers as a judicial officer for the Los Angeles Superior Court and an Advocate for the Juvenile Court.<br>**Evidence:** Declaration of Jonathan W. Birdt at Paragraph 5 | 4.     Undisputed for purposes of this Motion. |
| 5.     The LAPD and LASD both denied Plaintiff's application for a concealed weapon and both stated the reason for the denial was "failure to establish good cause".<br>**Evidence:** Declaration of Jonathan W. Birdt at Paragraph 6. | 5.     Undisputed for purposes of this Motion. |

## CONCLUSIONS OF LAW

1.     California Penal Code § 12050(a)(1)(A) authorizes a county sheriff to issue a license to carry a concealed pistol, revolver, or other firearm capable of being concealed upon the person (hereinafter "CCW permit") upon the existence of good cause, and provided that the applicant meets other criteria provided for in the Penal Code.

2.     Penal Code § 12050 gives extremely broad discretion to the sheriff concerning the issuance of concealed weapons licenses, and explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements. *Gifford v. City of Los Angeles*, 88

HOA.786448.1

-12-

1  Cal.App.4th 801, 805 (2001).

2      3.    In *District of Columbia v. Heller*, 554 U.S. 570, 128 S. Ct. 2783,
3  2788, 2822 (2008) and *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026,
4  3044 (2010), the United States Supreme Court held that the Second Amendment
5  protects an individual's right to possess firearms <u>in the home</u> for self-defense.

6      4.    The right to keep and bear arms is not a right to keep and carry any
7  weapon whatsoever in any manner whatsoever and for whatever purpose. *Heller*,
8  128 S.Ct. at 2816.

9      5.    Penal Code sections 12025(a) and 12031(a) have been upheld in
10  California against a Second Amendment challenge after *Heller*. *People v. Flores*,
11  169 Cal. App. 4th 568, 575-576 (2008); *People v. Yarbrough*, 169 Cal. App. 4th
12  303, 312-314 (2008).

13      6.    Unlike possession of a gun for protection within a residence, carrying
14  a concealed firearm presents a recognized "threat to public order," and is
15  "prohibited as a means of preventing physical harm to persons other than the
16  offender.' *Yarbrough,* 169 Cal.App.4th at 314, citing *People v. Hale*, 43
17  Cal.App.3d 353, 356 (1974).

18      7.    A person who carries a concealed firearm on his person or in a
19  vehicle, which permits the individual immediate access to the firearm but impedes
20  others from detecting its presence, poses an 'imminent threat to public safety. *Id.*
21  at 313-314.

22      8.    Intermediate scrutiny requires that the challenged statute or regulation
23  "be substantially related to an important governmental objective." *Clark v. Jeter*,
24  486 U.S. 456, 461 (1988).

25      9.    Maintaining public safety and preventing crime are clearly important
26  (if not paramount) government interests and the regulation of concealed firearms is
27  a critical factor in accomplishing that interest. *See, e.g., United States v. Salerno*,
28  481 U.S. 739, 750 (1987); *Schall v. Martin*, 467 U.S. 253, 264 (1984); *Kelley v.*

1   *Johnson*, 425 U.S. 238, 247 (1976).

2       10.   The denial of a concealed weapons permit is not a deprivation of the

3   right to travel. See *Pencak v. Concealed Weapons Licensing Bd.*, 872

4   F.Supp.410, 414 (E.D. Mich. 1994).

5       11.   When a government's action does not involve a suspect classification

6   or implicate a fundamental right, even intentional discrimination will survive

7   constitutional scrutiny for an equal protection violation as long as it bears a

8   rational relation to a legitimate state interest. *New Orleans v. Dukes*, 427 U.S.

9   297, 303-04 (1976); *Lockary v. Kayfetz*, 917 F.2d 1150, 1155 (9th Cir. 1990).

10

11   DATED: April 19, 2011           Respectfully submitted,

12

13                          ANDREA SHERIDAN ORDIN
County Counsel

14

15                          By

16                             JENNIFER A.D. LEHMAN
Principal Deputy County Counsel

17

18                          Attorneys for Defendants

19                          LOS ANGELES COUNTY SHERIFF'S
DEPARTMENT & LEE BACA

20

21

22

23

24

25

26

27

28