# DECLARATION OF
# JENNIFER A.D. LEHMAN

# DECLARATION OF JENNIFER A.D. LEHMAN

I, JENNIFER A.D. LEHMAN, declare as follows:

1.     I am an attorney at law, duly licensed to practice law in all of the Courts of the State of California.  I am employed by the County of Los Angeles as a Principal Deputy County Counsel in the Office of the County Counsel, and am counsel for Defendants County of Los Angeles (sued as the Los Angeles County Sheriff's Department) and Sheriff Lee Baca.

2.     I have personal knowledge of the facts set forth below and if called as a witness, I could and would testify thereto.

3.     Attached hereto as Exhibit A is the Declaration of Larry L. Waldie.

4.     Attached hereto as Exhibit B is the Declaration of Frank Zimring.

5.     Attached hereto as Exhibit C are true and correct copies of excerpts from the deposition of Jonathan Birdt, taken on February 22, 2011.

4.     Attached hereto as Exhibit D is Los Angeles County Sheriff's Department arrest statistics labeled "2009 Arrest Summary".

5.     Attached hereto as Exhibit E is the Declaration of Rolf Enbom.

I declare under penalty of perjury that the foregoing is true and correct under the laws of the United States of America.

Executed this 19th day of April, 2011 in Los Angeles, California.


                                        /S/
                              JENNIFER A.D. LEHMAN

HOA.786448.1                            -15-

# EXHIBIT A

NO FEE DUE
GOV'T CODE § 6103

1  ANDREA SHERIDAN ORDIN, County Counsel
   ROGER H. GRANBO, Assistant County Counsel
2  JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
   (SBN 191477) • jlehman@counsel.lacounty.gov
3  648 Kenneth Hahn Hall of Administration
   500 West Temple Street
4  Los Angeles, California  90012-2713
   Telephone (213) 974-1908  Fax: (213) 626-2105
5
   Attorneys for Defendants
6  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT & LEE BACA

7              UNITED STATES DISTRICT COURT

8            CENTRAL DISTRICT OF CALIFORNIA

9

10  JONATHAN BIRDT,                    CASE NO. CV 10-08377 RGK (JEMx)

11           Plaintiff,               DECLARATION OF
                                      UNDERSHERIFF LARRY L.
12       v.                           WALDIE

13  CHARLIE BECK, LEE BACA, THE
    LOS ANGELES POLICE
14  DEPARTMENT and THE LOS
    ANGELES COUNTY SHERIFF'S
15  DEPARTMENT, and DOES 1 through
    50,
16
17           Defendants.

18

19      I, LARRY L. WALDIE, declare as follows:

20      1.      I am the Undersheriff for Los Angeles County.  I have served as the

21  Undersheriff since 2005, and have been employed by the Los Angeles County

22  Sheriff's Department (LASD) for over 40 years.  As the Undersheriff, I am the

23  second in command of the LASD and the Sheriff's chief assistant.  In the Sheriff's

24  absence, I also assume his duties, in addition to my executive responsibilities

25  addressing LASD operational, budgetary and personnel matters.

26      2.      As part of my responsibilities as Undersheriff, I have been designated

27  to act as the Sheriff's sole authorized representative for reviewing applications for

28  carry concealed weapons (CCW) licenses for the County of Los Angeles.  In that

HOA.768147.1

COLA Sep. Statement  00016

1  role, I and members of my staff, evaluate CCW applications.  While members of

2  my staff make recommendations regarding applications, I am the final decision-

3  maker.  As part of my evaluation of CCW applications, I will review the entire

4  application packet and any and all supporting documentation.  I have been

5  involved in these decisions since I became Undersheriff in 2005.

6      3.      In Los Angeles County, there are four distinct categories of CCW

7  licenses:  Employment, Standard, Judges, and Reserve Police Officers.  The

8  Employment CCW license is issued only to a person who spends a substantial

9  period of time in his or her principal place of employment or business in Los

10  Angeles County.  The Standard CCW license is issued to residents of Los Angeles

11  County or to residents of a particular city within Los Angeles County.  The Judge

12  CCW license is issued to California judges, full-time commissioners, and to

13  federal judges and magistrates of the federal courts.  The Reserve Police Officer

14  CCW license may be issued to reserve police officers appointed pursuant to

15  California Penal Code § 830.6.

16      4.      If an applicant resides in an incorporated city not policed by the

17  LASD, the applicant must apply to the chief of police of their city of residence for

18  a concealed weapons license and have such application acted upon.  Within 60

19  days after a denial of such application, such city resident may file a separate

20  application with the LASD, attaching a copy of the application denied by the chief

21  of police.  We will exercise independent discretion in granting or denying licenses

22  to such person but may review, consider, and give weight to the grounds upon

23  which such denial was made.  A copy of the LASD Concealed Weapons License

24  Policy is attached hereto as Exhibit 1.  This policy is also available on the LASD

25  website at www.lasd.org

26      5.      California Penal Code sections 12050-12054 set forth the general

27  criteria that CCW applicants must meet.  Applicants must be of good moral

28  character, be a resident of, or spend substantial time in the County they apply in,

1 take a firearms course, and demonstrate good cause for the license.

2       6.       The issuance of licenses enabling a private citizen to carry a CCW is

3 of great concern to the LASD.  The LASD's overriding policy is that no CCW

4 license should be granted merely for the personal convenience of the applicant.

5 No position or job application in itself shall constitute good cause for the issuance,

6 or for the denial, of a CCW license.  The LASD defines "good cause" under

7 California Penal Code section 12050 as requiring convincing evidence of a clear

8 and present danger to life or of great bodily harm to the applicant, his spouse or

9 dependent child, which cannot be adequately dealt with by existing law

10 enforcement resources and which danger cannot be reasonably avoided by

11 applicant's carrying of a concealed firearm.  Each application is individually

12 reviewed for cause.  The LASD's definition of good cause has been in existence

13 since I began reviewing CCW applications in 2005.  It is my understanding that

14 this definition of good cause, or one similar to it, is utilized by many other

15 counties within California, including San Diego.

16       7.       In evaluating whether an applicant has presented "convincing evidence

17 of a clear and present danger to life or of great bodily harm to the applicant, his

18 spouse or dependent child, which cannot be adequately dealt with by existing law

19 enforcement resources and which danger cannot be reasonably avoided by

20 applicant's carrying of a concealed firearm," an applicant's stated reason of self-

21 defense is not enough.  The applicant must demonstrate a credible threat of

22 violence which would justify the need to possess a concealed weapon.  If an

23 applicant claims that he or she has been threatened, we look for documentation of

24 that threat, such as police reports or other evidence.

25       8.       One of the purposes for the LASD's policy is to protect against gun

26 violence to the community at large, as well as to protect officers conducting law

27 enforcement operations on the streets.  Gun violence is a problem throughout the

28 State of California and Los Angeles County is no exception.  The vast majority of

1  homicides in Los Angeles County are committed with the use of guns.  Handguns
2  are of particular concern because in my experience, they are much more likely to
3  be used than shotguns and rifles.  Because handguns are small, easy to conceal,
4  and deadly at short range, they are of paramount concern and danger.  Further,
5  most of the violent acts committed in this County involving the use of guns are by
6  gang members.

7       9.    In my experience as a law enforcement officer, the presence of more
8  guns on the streets of Los Angeles County creates many problems for law
9  enforcement officers.  Officers are often charged with monitoring public
10  gatherings as well as with breaking up public nuisances.  Officers must act quickly
11  whenever a disturbance occurs.  Often times, this involves isolating one or two
12  problem individuals.  However, if multiple persons within a crowd are carrying
13  concealed weapons, this creates an increased likelihood that guns will be
14  brandished or used.  Thus, the increased presence of guns creates not only
15  increased safety problems for officers but also for members of the community at
16  large.

17       10.   It is the LASD's position that increasing the numbers of concealed
18  weapons in the community increases the threat of gun violence to the community
19  at large, to those who use the streets and go to public accommodations, and to law
20  enforcement officers patrolling the streets.  Further, the increased presence of
21  concealed handguns make law enforcement operations more difficult thus taking
22  away valuable resources which would be better used conducting law enforcement
23  operations.  Los Angeles County's "good cause" requirement is intended to
24  drastically restrict the number of persons who are secretly armed in the County.

25       11.   At present, there are approximately 400 concealed weapons permits
26  that were issued by the LASD.  I am informed and believe that the County's Chief
27  Executive Office has estimated that the population of Los Angeles County as of
28  January 2010 was 10,441,080 people.

12.    Attached hereto as Exhibit 2 is a copy of the March 2010 CCW application we received from Jonathan Birdt.

13.    Attached hereto as Exhibit 3 is a copy of the May 11, 2010 letter we sent to Mr. Birdt denying his application.

14.    Attached hereto as Exhibit 4 is a copy of the October 2010 CCW we received from Jonathan Birdt.

15.    I reviewed Mr. Birdt's first application and determined that he failed to show good cause as required by LASD policy, and as defined above.  We have not yet responded to Mr. Birdt's second application as of the date of this Declaration.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Monterey Park, California on March _8_ , 2011

_____
LARRY L. WALDIE

# EXHIBIT 1

# Los Angeles County Sheriff's Department

## Concealed Weapons Licensing Policy

The issuance of licenses enabling a private citizen to carry a concealed weapon (CCW) is of great concern to the Los Angeles County Sheriff's Department. The Department's overriding policy is that no concealed weapons license should be granted merely for the personal convenience of the applicant. No position or job classification in itself shall constitute good cause for the issuance, or for the denial, of a CCW license. Each application shall be individually reviewed for cause, and the applicant will be notified by writing within 90 days of the application, or within 30 days after receipt of the applicant's criminal background check from the Department of Justice, that the CCW license was either approved or denied.

In accordance with California Penal Code § 12050 et. seq., and subject to Department policy and procedures, any Los Angeles County resident may obtain a CCW application for authorization to carry a concealed weapon. Applications may be obtained from any sheriff's patrol station or directly from the Office of the Undersheriff. Completed applications may be submitted to any of these units for processing.

## Types of Licensing and Expiration Periods for CCWs

There are four distinct categories of CCW licenses: Employment, Standard, Judges, and Reserve Police Officers. The Employment CCW license is issued only by the sheriff of a county to a person who spends a substantial period of time in his or her principal place of employment or business in the county of issuance. The license is valid only in the county issued and for any period not to exceed 90 days. The Standard CCW license is issued to residents of the county or a particular city within the county. The license is valid for any period not to exceed 2 years. The Judge CCW license may be issued to California judges, full-time commissioners, and to federal judges and magistrates of the federal courts. The license is valid for any period not to exceed 3 years. The Reserve Police Officer CCW license may be issued to reserve police officers appointed pursuant to California Penal Code § 830.6. The license is valid for any period not to exceed 4 years, except that it becomes invalid upon the conclusion of the person's appointment as a reserve police officer.

## Training Requirements for a CCW License

Regardless of the category, all new license applicants for CCW's must now pass a specified course of training which is acceptable to the licensing authority, the Los Angeles County Sheriff's Department (See attached sheet, "Suggested Training Vendors"). New CCW license applicants must pass a specified course of training acceptable to the licensing authority. The course shall not exceed 16 hours, and the course shall include instruction on firearm safety, the law regarding the permissible use of a firearm and weapon proficiency. The licensing authority may also require

the applicant to attend a community college course certified by the Commission on Peace Officer Standards and Training (POST), up to a maximum of 24 hours, but only if required uniformly of all applicants without exception. For CCW license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than 4 hours, and shall include instruction on firearms safety, the law regarding the permissible use of a firearm and weapon proficiency.

## Qualifications for a CCW License

To qualify for a CCW, each applicant must demonstrate (1) proof of good moral character, (2) that good cause exists, and (3) that the applicant is a resident of the count or a city within the county, or, that the applicant spends a substantial period of time in the applicant's place of employment or business in the county or a city within the county. In addition, the applicant must complete the training requirements as listed above.

According to Los Angeles County Sheriff's Department policy (5-09/380.10) and the California Supreme Court (CBS, Inc. v. Block, (1986) 42 Cal.3d 646), good cause shall exist only if there is convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

The character requirement will be fulfilled by, but not limited to, a criminal history check through the Bureau of Criminal Identification and Investigation. The good cause requirement will only be fulfilled by thoroughly justifying the applicant's need to the Sheriff or his designee on the application form. The residence requirement will be fulfilled upon presentation of an approved, recognized identification card and at least one recently canceled item of United States mail.

If the applicant resides in an incorporated city, which is not policed by our Department, he or she must first apply to the Chief of Police of their city of residence for a CCW license and have the application acted upon. Within 60 days after a denial of the application, the city resident may file a separate application with the Los Angeles County Sheriff's Department, attaching a copy of the application denied by the Chief of Police. The Sheriff will exercise independent discretion in granting or denying licenses to these applicants. Further, the Sheriff may review, consider, and give weight to the grounds upon which the previous denial was made.

-2-

## CCW License Subject to Restrictions

When a license is issued it will be subject to the following general restrictions.

While exercising the privilege granted under the terms of this license, licensees shall not:

1. Consume any alcoholic beverage. Represent to any person that they
2. are peace officers, unless they are in fact
   peace officers as defined by law.
3. Abuse this privilege by an unjustified display of a deadly weapon.
4. Violate any law of this State or Country.
5. Be under the influence of any medication or narcotic drug. Impede
6. law enforcement officers in the conduct or performance of their duty
   or activities.
7. Refuse to display their permits or to surrender their concealable
   firearm to any peace officer for inspection upon demand.

In addition, the Los Angeles County Sheriff's Department may place special limitations further limiting the time, the place, and the circumstances under which the license is valid. When each license is issued, general restrictions and any special limitations will be noted on the reverse side of the card.

Remember, it is a Privilege, not a right to carry a concealed weapon.

## Application for CCW License Form

Upon reviewing the attached policy and meeting all requirements, please complete the Standard Application form in its entirety and forward to Sheriff Headquarters, 4700 Ramona Boulevard, Monterey Park, California, 91754-2169, Attention: CCW Coordinator. A non-refundable fee of $10.00 must accompany this application. Those who successfully pass the initial screening will be charged a required follow-up processing fee.

Revised 9/99

-3-

COLA Sep. Statement    00023

## Suggested Training Vendors

Angeles Range 12651 Little Tujunga, Lakeview Terrace Phone: (818) 362-3650 or (800) 499-4486 Instructor: Don Emmer

L.A.X. Shooting Range 927 W. Manchester, Inglewood Phone: (310) 568-1515 Instructor: Danny Hudson

Sharpshooter 1827 W. 208 Street, Torrance Phone: (310) 618-9971 Instructor: Fred Darling

Centinel Services 18348 Eddy, Northridge Phone: (818) 238-9860 Instructor: Cecil Williams

Centinel Services 1060 N. Lake Street, Burbank Phone: (818) 954-981 0 Instructor: John Rives

The Firing Line 17921 Jamestown Lane, Huntington Beach Phone: (714) 841-2100 Instructor: Fred Donohue

Professional Security Training School 44633 Sierra Highway Lancaster, CA 93534 Phone: (661) 945-0600 Instructor: Cecil Williams

5040 Cornell Road Agoura Hills, CA 91301 (818) 707-9100

THE CONTENT AND LENGTH OF THE COURSES OFFERED BY THE TRAINERS LISTED ABOVE ARE ACCEPTABLE TO THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD") IN ACCORDANCE WITH PENAL CODE SECTION 12050(a).

### DISCLAIMER

THE COUNTY OF LOS ANGELES AND THE LASD MAKE NO OTHER REPRESENTATIONS OR WARRANTIES ABOUT THE TRAINERS LISTED ABOVE OR THE FACILITIES OR EQUIPMENT THEY USE TO CONDUCT TRAINING.

- ◆ NONE OF THESE TRAINERS ARE EMPLOYEES OR AGENTS OF THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THESE TRAINERS WAS TRAINED IN THE USE OF FIREARMS BY THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THE FACILITIES AND EQUIPMENT USED BY THESE TRAINERS ARE OWNED, CONTROLLED OR INSPECTED BY THE COUNTY OF LOS ANGELES OR THE LASD.

NEITHER THE COUNTY OF LOS ANGELES NOR LASD CERTIFY OR CONTROL THE SAFETY OF THE TRAINING CONDUCTED BY ANY OF THESE TRAINERS.

YOU ASSUME FULLY THE RISK OF ANY LOSS, INJURY OR DAMAGE ATTRIBUTABLE TO (1) ANY ACT OR OMISSION OF ANY OF THESE TRAINERS OR ANY OF THEIR AGENTS OR EMPLOYEES OR (2) THE CONDITION ANY PREMISES OR EQUIPMENT USED BY ANY OF THESE TRAINERS. THE COUNTY OF LOS ANGELES AND LASD DISCLAIM ANY RESPONSIBILITY FOR ANY SUCH LOSS, INJURY OR DAMAGE.

LASD RECOMMENDS THAT BEFORE YOU BEGIN TRAINING, YOU FULLY INVESTIGATE THE TRAINER'S QUALIFICATIONS, TRAINING, SAFETY RECORD AND CONDITION OF PREMISES AND EQUIPMENT.



## 5-09/380.10 APPLICATION REQUESTS

Any person may obtain the Department's Concealed Weapon License Application (form SH-AD-602 revised 2/95) from any station or the Undersheriff. Persons requesting such application shall be shown a copy of the application process.

Each applicant must demonstrate proof of residence and good character. In addition, good cause for the purposes of Penal Code section 12050 shall exist only if both of the following elements prevail:

- Convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm,
- A valid certificate from an Advanced Officer Training Institution, approved by the California State Bureau of Collection and Investigative Services, attesting to applicant's satisfactory completion of at least 24 hours of training,
  - Alternate proof of firearms proficiency may be submitted for review and possible acceptance in lieu of this certification.

If the applicant resides in an incorporated city not policed by this Department, they must apply to the chief of police of their city of residence for a Concealed Weapon License and have such application acted upon. Within 60 days after a denial of such application, such city resident may file a separate application with the Sheriff, attaching a copy of the application denied by the chief of police. The Sheriff will exercise independent discretion in granting or denying licenses to such persons but may review, consider and give weight to the grounds upon which such denial was made.

**04/01/96 MPP**

Convincing evidence of a clear and present danger to life or of great bodily harm to the
applicant, his spouse or dependent child, which cannot be adequately dealt with by
existing law enforcement resources and which danger cannot be reasonably avoided by
alternative measures, and which danger would be significantly mitigated by the
applicant's carrying of a concealed firearm,
    A valid certificate from an Advanced Officer Training Institution, approved by a
California State Bureau of Collection and Investigative Services, attesting to
applicant's satisfactory completion of at least 24 hours of training,
    Alternate proof of firearms proficiency may be submitted for review and possible
    acceptance in lieu of this certification.

If the applicant resides in an incorporated city not policed by this Department, they must
apply to the chief of police of their city of residence for a Concealed Weapon License
and have such application acted upon. Within 60 days after a denial of such application,
such city resident may file a separate application with the Sheriff, attaching a copy of the
application denied by the chief of police. The Sheriff will exercise independent discretion
in granting or denying licenses to such persons but may review, consider and give weight
to the grounds upon which such denial was made.

COLA Sep. Statement   00025

# EXHIBIT 2

State of California, Department of Justice
## Standard Application for CCW License

Official Use Only -Type of Permit
Requested ( ) Standard    ( ) Judge
( ) Reserve Officer ( ) 90 Day

### Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

Applicant Signature                              Date  3/30/10

Witness Signature / Badge Number                 Date

### Section I - Applicant Personal Information

Name: Biggs  Jonathan  Wesley
      Last    First      Middle

If Applicable,
Maiden Name or Other Name(s) Used: _____

City and County
of Residence: Los Angeles        Country of Citizenship: USA

Date of Birth: _____  Place of Birth: Los Angeles , Los Angeles  CA
                                         City        County     state

Height: 6'    Weight: 215#   Color Eyes: Green   Color Hair: Brown

### Section 2 - Applicant Clearance Questions

1.  Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
    No_____ Yes X  (If yes, please indicate below. Use additional pages if necessary.)

    Issuing Agency Utah /Nevada    Issue Date 7/31/09/1/7/11 CCW# C 315219 /7745005

2.  Have you ever applied for and been denied a license to carry a concealed weapon?
    No_____ Yes X  (If yes, give agency name, date and reason for denial.)

    LAPD  1995  after Northridge earthquake.
    Good cause not found. 3/2010  LAPD-see attached,
    good cause not found.

    -3-

State of California, Department of Justice
## Standard Application for CCW License

Section 2 - Applicant Clearance Questions - (continued)

3. Have you ever held and subsequently renounced your United States citizenship?
No___X___Yes_____ (If yes, explain):

4. If you served with the Armed Forces, were you ever convicted of any charges or was your discharge other than honorable? No _X___ Yes _____ (If yes, explain):

5. Are you now, or have you been, a party to a lawsuit in the last five years?
No_____Yes__X___ (If yes, explain):
CRUZ V. MC NULTY - legal malpractice case in Arizona pending.

6. Are you now, or have you been, under a restraining order(s) from any court?
No__X__Yes_____ (If yes, explain):

7. Are you on probation or parole from any state for conviction of any offense including traffic? No _X___ Yes _____ (If yes, explain):

-4-

COLA Sep. Statement   00027

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 . Applicant Clearance Questions -   (continued)

8.   List all traffic violations (moving violations only) and motor vehicle accidents you have had in the last five years. (Use additional pages if necessary.)

Date _____ Violation / Accident _____ Agency / Citation # _____

just one about 2 years ago - wens to traffic school.

_____

_____

_____

9.   Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

No __X__ Yes _____   (If yes, explain including date, agency, charges, and disposition.)

_____

_____

10.   Have you withheld any fact that might affect the decision to approve this license?

No __X__ Yes _____ (If yes, explain):

_____

_____

### Section 3 . Descriptions of Weapons:

List below the weapons you desire to carry if granted a CCW. You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated. Any misuse will cause an automatic revocation and possible arrest. (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|---|---|---|---|
| 1. | S+W | mp 40 | 40 sw | will provide |
| 2. | Springfield | 1911 | 45 | WW 114725 |
| 3. | Kahr | mk 9 | 9mm | GC 4899 |
| | S+W | .915 | 9mm | TZR 2157 |
| | Spring field | XD40 | 40 | US 183285 |

State of California, Department of Justice
## Standard Application for CCW License

### Section 4 -  CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:
- Consume any alcoholic beverage.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any medication or drug, whether prescribed or not.
- Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
- Impede any peace officer in the performance of his/her duties.
- Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
- Unjustifiably display a concealed weapon.
- Carry a concealed weapon not listed on the permit
- Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code - Title 49, Chapter 26, Section 1472 (1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

State of California, Department of Justice
## Standard Application for CCW License

### Section 5 -  Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

**Penal Code Section 12051 - Applications for CCW Licenses; False Statements**

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:

    (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.

    (2) A criminal conviction.

    (3) A finding of not guilty by reason of insanity.

    (4) The use of a controlled substance.

    (5) A dishonorable discharge from military service.

    (6) A commitment to a mental institution.

    (7) A renunciation of United States citizenship.

**Penal Code Section 192 - Manslaughter**

Manslaughter is the unlawful killing of a human being without malice.

(a) Voluntary - upon a sudden quarrel or heat of passion.

(b) Involuntary - in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

**Penal Code Section 197 - Justifiable Homicide; Any Person**

Homicide is justifiable when committed by any person in any of the following cases:

1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the of offering violence to any person therein; or,

3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

COLA Sep. Statement    00030

State of California, Department of Justice

## Standard Application for CCW License

**Section 5 -   Applicable California Penal Code Sections -    (continued)**

**Penal Code Section 198 - Justifiable Homicide; Sufficiency of Fear**
**(Limitation of Self-defense of Property Rule)**
A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 - Justifiable and Excusable Homicide; Discharge of Defendant**
The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 - Storage of Firearms Accessible to Children**
(a) As used in this section, the following definitions shall apply:
    (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
    (2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.
    (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.
(b)(1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
    (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
    (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
    (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
    (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
    (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
    (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
    (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
    (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

COLA Sep. Statement    00031

State of California, Department of Justice
## Standard Application for CCW License

### Section 5 - Applicable California Penal Code Sections - (continued)

**Penal Code Section 12036 -Firearms Accessed by Children and Carried Off-premises**

(a) As used in this section, the following definitions shall apply:

(1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.

(2) "Child" means a person under the age of 16 years. (3) "Off-premises" means premises other than the premises where the firearm was stored.

(4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($ 1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if any one of the following circumstances exists:

(1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.

(2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.

(3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.

(4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.

(5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.

(6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.

(7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

COLA Sep. Statement   00032

State of California, Department of Justice
## Standard Application for CCW License

### Section 6 - Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time, I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 - California Prohibiting Categories for a CCW License, Attachment 2 - California Prohibiting Misdemeanors, and Attachment 3 - Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____           3/30/10
Applicant Signature                        Date

_____           _____
Witness Signature / Badge Number           Date

-10-

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 - Investigator's Interview Notes

Applicant Name: __Birds__   __Jonathan__   __Wesley__
Last   First   Middle

Date of Birth: _____   Age: __39__

Social Security No.: _____

California DLAD No.: _____

Driver's License Restrictions: __None__

Residence Address:

Mailing Address (if different):

| Number | Street | Apt | City | State | Zip |
|--------|--------|-----|------|-------|-----|

Home / Personal Phone Numbers: __(818) 400 4485__

Spouse's Name and Address: __Julie Birds - same__

Applicant Occupation: __Attorney__

Business / Employer Name: __Peter J. McNulty__

Business Phone Number: __(310) 471 2707__

Business Address:
__827   moraga   Los Angeles   CA   90049__
Number   Street   Apt   City   State   Zip

1.  List all previous home addresses for the past five years.

-11-

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 -  Investigator's Interview Notes -  (continued)

2.  Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No __X__ Yes _____ (If yes, explain):

_____

_____

3.  Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illegal controlled substance, or have you ever reported to a detoxification or drug treatment program? No __X__ Yes _____ (If yes, explain):

_____

_____

4.  Have you ever been involved in an incident involving firearms?
No __X__ Yes_____(If yes, explain):

_____

_____

_____

5.  Have you been involved in a domestic violence incident?
No __X__ Yes_____(If yes, explain):

_____

_____

6.  List any arrests or formal charges, with or without disposition, for any criminal offenses within the U.S. or any other country (civilian or military).

_____ None _____

_____

_____

-12-

State of California, Department of Justice
## Standard Application for CCW License

**Section 7 -  Investigator's Interview Notes    - (continued)**

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license. For example, has your life or property been threatened or jeopardized? Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

**Details of Reason for Applicant Desiring a CCW License (use additional sheets if needed).**

Volunteer LA superior court judge. Frequent
Las Vegas travel with large sums of cash.
Unprotected/unsecured office with threats
against employer. Representation of
victims of violence, abuse + murder.

-13-

State of California, Department of Justice

# Standard Application for CCW License

## Section 8 -   Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 1205 1 (b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____          3/30/10
Applicant Signature                                    Date

_____          _____
Witness Signature / Badge Number                 Date

-14-

# LOS ANGELES POLICE DEPARTMENT



**CHARLIE BECK**
Chief of Police

ANTONIO R. VILLARAIGOSA
Mayor

P.O. Box 30158
Los Angeles, Calif. 90030
Telephone: (213) 486-7000
TDD (877) 275-5273
Ref #: 8.4

March 18, 2010

Mr. Jonathan W. Birdt
18252 Bermuda Street
Northridge, California 91326

Dear Mr. Birdt:

I have reviewed your application for a Carrying a Concealed Weapon (CCW) permit. The circumstances delineated in your application do not meet the requirements as set forth under the policies established by the Los Angeles Police Department (LAPD) for the issuance of a CCW license.

Your request was denied for the following reason(s):

Convincing evidence was not established of a clear and present danger to life or of great bodily injury to yourself, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures. You did not provide satisfactory proof that your work is such a nature that it requires the carrying of a concealed weapon.

An independent advisory board has been established to review contested applications. The Board's recommendations are forwarded to the Police Department for consideration. If you wish to have your application reviewed by the advisory board, please notify us in writing. Address your correspondence to the Los Angeles Police Department, Gun Unit, 100 West First Street, Los Angeles, CA 90012.

Concerns or questions regarding this matter can be directed at Lieutenant Ronald Dickerson, Gun Unit, Gang and Narcotics Division, (213) 486-5360.

Very truly yours,

CHARLIE BECK
Chief of Police

DAVID R. DOAN, Commander
Chief of Detectives

AN EQUAL EMPLOYMENT OPPORTUNITY - AFFIRMATIVE ACTION EMPLOYER
www.LAPDOnline.org
www.JoinLAPD.com

COLA Sep. Statement   00038





# Carry a Concealed Weapon (CCW) application Guidelines

**Applicant:** Upon completion of your CCW application, it will be necessary for you to appear in person to have your application reviewed by a member of the Los Angeles Police Department, Gun Unit.

Please contact the Gang and Narcotics Division, Gun Unit at (213) 486-5360 for your appointment.

You will be requried to show proof of residency in the city of Los Angeles by bringing in a California Drivers License or Identification Card and a recent utility bill or rent receipt that shows your name and address.

**Training Requirement:** A firearms training course is require as part of the criteria as described in the LAPD concealed Weapon License Policy.  Therefore, the applicant must furnish proof to the LAPD that he or she has completed a course of training and it shall be submitted with the application.

## LAPD CONCEALED WEAPON LICENSE POLICY

Pursuant to California Penal Code Section 12050, in the City of Los Angeles, the Chief of Police of the Los Angeles Police Department ("LAPD") may issue a license to a person to carry a pistol, revolver, or other firearm capable of being concealed upon the person upon proof that the person applying for the license is of good moral character, that good cause exists for the issuance of the license, that the person is a resident of the City of Los Angeles, and that the person has completed a required course of training.

The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

The following further rules and guidelines are provided for the interpretation and implementation of this policy:

### INTRODUCTORY

The department recognizes that Penal Code Section 12050 requires the issuance of licenses to persons of good character who have good cause to carry a concealed firearm for the defense of themselves or others or in pursuing their livelihood. These guidelines are designed to implement that requirement.

Good cause is more likely to be found if the applicant has a demonstrated record of responsible handling of firearms as indicated by voluntarily having taken firearms training and/or long-term participation in the shooting sports. While lack of such a demonstrated record is not a disqualification if the applicant is otherwise qualified to use a firearm properly, licenses will not issue if there is substantial, articulable reason to believe that issuance would be contrary to public safety or if the applicant does not have good character. Among other criteria to be considered are: the applicant's record and history in accidents with firearms, automobiles or other dangerous instrumentalities; and association with persons having a criminal record or who are reliably known to lack good character. The expression of dangerous or irresponsible attitudes, or threats, toward or regarding the use of firearms or other dangerous instrumentalities shall be grounds for denial or revocation of a license.

### CRITERIA FOR LICENSURE

Training. A new license applicant must furnish proof to the department that he or she has successfully completed a course of training in the carrying and use of firearms established pursuant to Section 7585 of the California Business and Professions Code or some other course acceptable to the department which includes the following subjects of training: knowledge of California laws regarding weapons and deadly force use; safe handling, carriage, use and storage of concealable firearms; and competency with the types of firearms to be listed on the license.

# LAPD CONCEALED WEAPON LICENSE POLICY

Such course does not need to exceed 16 hours. For license renewal applicants, the course of training may be any course acceptable to the department, shall be no less than four hours, and shall include instruction on at least firearm safety and the law regarding the permissible use of a firearm.

Good Cause. Good cause shall be deemed to exist, and a license will issue in the absence of strong countervailing factors, upon a showing of any of the following circumstances: a) The applicant is able to establish that there is an immediate or continuing threat, express or implied, to the applicant's safety, or the applicant's family's safety, and that no other reasonable means exist which would suffice to neutralize that threat. b) The applicant is employed in the field of security, has all requisite licenses, is employed by a security firm having all requisite licenses, and provides satisfactory proof that his or her work is of such a nature that it requires the carrying of a concealed weapon. c) The applicant has obtained, or is a person included within the protections of, a court order which establishes that the applicant is the on-going victim of a threat or physical violence or otherwise meets the criteria set forth in Penal Code Section 12025.5. d) The applicant establishes that circumstances exist requiring him or her to transport in public significant amounts of valuable property which it is impractical or impracticable to entrust to the protection of armored car services or equivalent services for safe transportation of valuables. e) The applicant establishes that he or she is subject to a particular and unusual danger of physical attack and that no reasonable means are available to abate that threat.

Favorable Factors. Among facts upon which the department will, in the exercise of its discretion, look favorably in considering applications are whether: a) the applicant has a demonstrated record of responsible handling of firearms; b) the applicant has a commitment to safe and responsible handling of firearms as shown by having voluntarily taken firearms training; c) the applicant has a record of good citizenship in general as evidenced, for instance, by service to the community through such activities as creditable service in the armed forces, including the National Guard and state militia or in the police reserves, or of active participation in charitable or public service organizations or activities or in political affairs; d) the applicant is trustworthy and responsible as evidenced, for instance, by employment history, positions held in civic, political, religious or secular achievements or record of personal accomplishment in other areas of endeavor; e) that the applicant suffers under a disability or physical handicap, including age or obesity, which hinders the applicant's ability to retreat from an attacker.

Unfavorable Factors. Factors which will bear negatively on issuance (unless they appear to be in the remote past) are: a) the applicant has a long-term history of mental or emotional instability, alcoholism, drug use or addiction to controlled substances; b) the applicant has a history of fault in serious accidents with firearms, automobiles or other dangerous instrumentalities; c) the applicant has had a permit to own or carry a concealed weapon denied, suspended or revoked for good cause by any issuing authority; d) the applicant has had a driver's license denied, suspended or revoked for good cause by any issuing authority; e) the applicant has a long-term record of irresponsible and dangerous behavior with automobiles as indicated by numerous convictions of serious driving offenses; f) the applicant has a long-term history of

## LAPD CONCEALED WEAPON LICENSE POLICY

conduct from which it appears that he or she is not now of good moral character, trustworthy or responsible. While none of the foregoing disqualify an applicant per se, a license will be denied if it appears, in the discretion of the department, that the applicant does not now have good character or that issuance of a license to him/her is not consistent with public safety.

### FURTHER INFORMATION

Residency. Proof that the applicant is a resident of the City of Los Angeles will be fulfilled upon presentation of a copy of the following two items: a recognized California identification card and at least one recent utility or rent receipt showing the applicant's name and residence address.

Conditions of license. The Department may attach to the license such conditions as in the reasonable exercise of its discretion it deems appropriate. These conditions will be noted on the face of the license.

## Suggested Training Vendors

**Angeles Range 12651 Little Tujunga, Lakeview Terrace Phone: (818) 362-3650 or (800) 499-4486 Instructor: Don Emmer**

**L.A.X. Shooting Range 927 W. Manchester, Inglewood Phone: (310) 568-1515 Instructor: Danny Hudson**

**Sharpshooter 1827 W. 208 Street, Torrance Phone: (310) 618-9971 Instructor: Fred Darling**

**Centinel Services 18348 Eddy, Northridge Phone: (818) 238-9860 Instructor: Cecil Williams**

**Centinel Services 1060 N. Lake Street, Burbank Phone: (818) 954-981 0 Instructor: John Rives**

**The Firing Line 17921 Jamestown Lane, Huntington Beach Phone: (714) 841-2100 Instructor: Fred Donohue**

**Professional Security Training School 44633 Sierra Highway Lancaster, CA 93534 Phone: (661) 945-0600 Instructor: Cecil Williams**

**5040 Cornell Road Agoura Hills, CA 91301 (818) 707-9100**

THE CONTENT AND LENGTH OF THE COURSES OFFERED BY THE TRAINERS LISTED ABOVE ARE ACCEPTABLE TO THE LOS ANGELES COUNTY SHERIFF'S DEPARTMENT ("LASD") IN ACCORDANCE WITH PENAL CODE SECTION 12050(a).

### DISCLAIMER

THE COUNTY OF LOS ANGELES AND THE LASD MAKE NO OTHER REPRESENTATIONS OR WARRANTIES ABOUT THE TRAINERS LISTED ABOVE OR THE FACILITIES OR EQUIPMENT THEY USE TO CONDUCT TRAINING.

- ◆ NONE OF THESE TRAINERS ARE EMPLOYEES OR AGENTS OF THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THESE TRAINERS WAS TRAINED IN THE USE OF FIREARMS BY THE COUNTY OF LOS ANGELES OR LASD.

- ◆ NONE OF THE FACILITIES AND EQUIPMENT USED BY THESE TRAINERS ARE OWNED, CONTROLLED OR INSPECTED BY THE COUNTY OF LOS ANGELES OR THE LASD.

NEITHER THE COUNTY OF LOS ANGELES NOR LASD CERTIFY OR CONTROL THE SAFETY OF THE TRAINING CONDUCTED BY ANY OF THESE TRAINERS.

YOU ASSUME FULLY THE RISK OF ANY LOSS, INJURY OR DAMAGE ATTRIBUTABLE TO (1) ANY ACT OR OMISSION OF ANY OF THESE TRAINERS OR ANY OF THEIR AGENTS OR EMPLOYEES OR (2) THE CONDITION ANY PREMISES OR EQUIPMENT USED BY ANY OF THESE TRAINERS. THE COUNTY OF LOS ANGELES AND LASD DISCLAIM ANY RESPONSIBILITY FOR ANY SUCH LOSS, INJURY OR DAMAGE.

LASD RECOMMENDS THAT BEFORE YOU BEGIN TRAINING, YOU FULLY INVESTIGATE THE TRAINER'S QUALIFICATIONS, TRAINING, SAFETY RECORD AND CONDITION OF PREMISES AND EQUIPMENT.

State of California, Department of Justice

## Standard Application for CCW License

| Official Use Only -- Type of Permit Requested |  |
|---|---|
| ( ) Standard | ( ) Judge |
| ( ) Reserve Officer | ( ) 90 Day |

### Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application. I understand that all of the information disclosed by me in this application may be subject to public disclosure.

_____     Date _____
Applicant Signature

_____     Date _____
Witness Signature / Badge Number

### Section 1 - Applicant Personal Information

Name: _Birdt_ (Last)   _Jonathan_ (First)   _Wesley_ (Middle)

If Applicable
Maiden Name or other Name(s) Used: _____

City and County of Residence: _Los Angeles, Los Angeles_    Country of Citizenship: _USA_

Date of Birth _____   Place of Birth: _Los Angeles_ (City), _Los Angeles_ (County), _CA_ (State)

Height: _215_   Weight: _6'_   Color Eyes: _Green_   Color Hair: _Brown_

### Section 2 - Applicant Clearance Questions

1. Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
No_____ Yes _X_ (If yes, please indicate below. Use additional pages if necessary.)

Issuing Agency _Utah DPS / Nevada_   Issue Date _7/31/09/ 1/7/10_   CCW# _C315219/2745005_

2. Have you ever applied for and been denied a license to carry a concealed weapon?
No_____ Yes _X_ (If yes, give agency name, date and reason for denial.)

_LAPD- 1995- after earthquake. Good cause not found._

-3-

State of California, Department of Justice

## Standard Application for CCW License

### Section 2 – Applicant Clearance Questions – (continued)

3.  Have you ever held and subsequently renounced your United States citizenship?
    No __X__ Yes____ (If yes, explain):

    _____

4.  If you served with the Armed Forces, were you ever convicted of any charges or was

    your discharge other than honorable?  No __X__ Yes____ (If yes, explain):

    _____

    _____

5.  Are you now, or have you been a party to a lawsuit in the last five years?

    No____ Yes __X__ (If yes, explain):

    CRUZ v. MCNULTY - legal malpractice case in Arizona - pending

    _____

    _____

    _____

6.  Are you now, or have you been, under a restraining order(s) from any court?

    No __X__ Yes____ (If yes, explain):

    _____

    _____

7.  Are you on probation or parole from any state for conviction of any offense including

    traffic?  No __X__ Yes____ (If yes, explain):

    _____

    _____

-4-

COLA Sep. Statement   00046

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 - Applicant Clearance Questions - (continued)

8. List all traffic violations (moving violations only)  and motor vehicle accidents you have had in the last five years. (Use additional pages if necessary.)

| Date | Violation / Accident | Agency / Citation # |
|------|----------------------|---------------------|
| Just a speeding ticked 2years ago but went to ocuffic | | |
| School | | |
| | | |
| | | |

9. Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

   No _X_ Yes_____ (If yes, explain including date, agency, charges, and disposition.)

10. Have you withheld any fact that might affect the decision to approve this license?

   No _X_ Yes_____ (If yes, explain):

### Section 3 - Descriptions of Weapons

List below the weapons you desire to carry if granted a CCW.  You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated.  Any misuse will cause an automatic revocation and possible arrest.  (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|------|-------|---------|------------|
| 1. | S+W | 915 | 9mm | TZR2157 |
| 2. | Kahe | mk9 | 9 mm | GC4899 |
| 3. | Springfiell | 1911 | 45 ACP | WW 114725 |
| 4. | S+W | mp 40 | 40 SW | US183285 |
| 5. | springhed | XD40 | 40 SW | |

State of California, Department of Justice

## Standard Application for CCW License

### Section 4 – CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees; by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:

- Consume any alcoholic beverage.
- Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
- Be under the influence of any medication or drug, whether prescribed or not.
- Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
- Impede any peace officer in the performance of his/her duties.
- Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
- Unjustifiably display a concealed weapon.
- Carry a concealed weapon not listed on the permit.
- Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code – Title 49, Chapter 26, Section 1472(1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

State of California, Department of Justice
## Standard Application for CCW License

## Section 5 – Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

### Penal Code Section 12051 – Applications for CCW Licenses; False Statements

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:

  (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.

  (2) A criminal conviction.

  (3) A finding of not guilty by reason of insanity.

  (4) The use of a controlled substance.

  (5) A dishonorable discharge from military service.

  (6) A commitment to a mental institution.

  (7) A renunciation of United States citizenship.

### Penal Code Section 192 – Manslaughter

Manslaughter is the unlawful killing of a human being without malice.

(a)  Voluntary – upon a sudden quarrel or heat of passion.

(b)  Involuntary – in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

### Penal Code Section 197 – Justifiable Homicide; Any Person

Homicide is justifiable when committed by any person in any of the following cases:

1.  When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2.  When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

3.  When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4.  When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

COLA Sep. Statement   00049

State of California, Department of Justice

## Standard Application for CCW License

### Section 5 – Applicable California Penal Code Sections – (Continued)

**Penal Code Section 198 – Justifiable Homicide; Sufficiency of Fear (Limitation of Self-defense of Property Rule)**

A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 – Justifiable and Excusable Homicide; Discharge of Defendant**

The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 – Storage of Firearms Accessible to Children**

(a) As used in this section, the following definitions shall apply:
    (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
    (2) "Child" means a person under the age of 16 years.
    (3) "Off-premises" means premises other than the premises where the firearm was stored.
    (4) "Locked container" has the same meaning as set for the in subdivision (d) of Section 12026.2.
(b) (1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
    (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
    (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
    (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
    (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
    (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
    (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
    (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
    (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

COLA Sep. Statement   00050

State of California, Department of Justice

## Standard Application for CCW License

**Section 5 – Applicable California Penal Code Sections – (continued)**

### Penal Code Section 12036 – Firearms Accessed by Children and Carried Off-premises

(a) As used in this section, the following definitions shall apply:
  (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
  (2) "Child" means a person under the age of 16 years.
  (3) "Off-premises" means premises other than the premises where the firearm was stored.
  (4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this Section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if one of the following circumstances exists:
  (1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.
  (2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.
  (3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.
  (4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.
  (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.
  (6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.
  (7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

–9–

COLA Sep. Statement   00051

State of California, Department of Justice
## Standard Application for CCW License

### Section 6 – Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 – California Prohibiting Categories for a CCW License, Attachment 2 – California Prohibiting Misdemeanors, and Attachment 3 – Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

_____                    _____
Applicant Signature                                        Date


_____                    _____
Witness Signature / Badge Number                           Date

-10-

State of California, Department of Justice

# Standard Application for CCW License

**Section 7 – Investigator's Interview Notes**

Applicant Name: Birdt        Jonathan        Wesley
         First     Middle  Age 39

Date of Birth:

Social Security No.:

California DL/ID No.:

Driver's License Restrictions: None

Residence Address:
              91326
              Zip

Mailing address (if different):

Number  Street      Apt.  City  State  Zip

Home / Personal Phone Numbers: (818) 400 4455

Spouse's Name and Address: Julie Birdt, 18252 Bermuda Northridge, CA 91326

Applicant Occupation: Attorney

Business / Employer Name: McAllly Law Firm

Business Phone Number: : (310) 471 2707

Business Address:
827 Moraga Drive    Los Angeles CA 90049
Number Street      Apt.  City  State Zip

1.   List all previous home addresses for the past five years.

N/A

-11-

COLA Sep. Statement   00053

State of California, Department of Justice

## Standard Application for CCW License

**Section 7 - Investigator's Interview Notes - (continued)**

2.  Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No ✗ Yes_____ (If yes, explain):

_____

_____

3.  Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illgal controlled substance, or have you ever reported to a detoxification or drug treatment program? No ✗ Yes_____ (If yes, explain):

_____

_____

4.  Have you ever been involved in an incident involving firearms?
    No ✗ Yes_____ (If yes, explain):

_____

_____

_____

5.  Have you been involved in a domestic violence incident?
    No ✗ Yes_____ (If yes, explain):

_____

_____

6.  List any arrests or formal charges, with or without disposition, for any criminal offenses with the U.S. or any other country (civilian or military).

    None.

_____

_____

_____

-12-

State of California, Department of Justice
## Standard Application for CCW License

**Section 7 - Investigator's Interview Notes - (Continued)**

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license.  For example, has your life or property been threatened or jeopardized?  Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

**Details of Reason for Applicant desiring a CCW License (use additional sheets if needed).**

Volunteer Judge, Los Angeles Superior Court.
Juvenile dependency court TRST referral panel.
Representation of high profile civil plaintiffs
where plaintiffs or counsel have been threatened.
Active threat against employee distributing
LASD CCW permit. No office security or
parking. Frequent travel throughout state
and Nevada weekly, carry large amounts
of cash and dinner Just transferring
firearm at state line and/or entering
+ exiting office which is in a remote
area with a ten minute LAPD response
time. Multiple disturbance within office
by visitors and disgruntled clients.

-13-

State of California, Department of Justice

## Standard Application for CCW License

### Section 8 – Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 12051(b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____          _____
Applicant Signature                                                          Date

_____          _____
Witness Signature / Badge Number                                 Date

-14-

COLA Sep. Statement   00056

Jonathan W. Birdt
18252 Bermuda Street
Porter Ranch, CA 91326

jonbirdt@yahoo.com
818-400-4485

February 22, 2010

Officer Bun
LAPD Gun Unit
100 W. First Street
Los Angeles, CA

Dear Officer Bun,

As set forth in my application, there are a number of reasons justifying my CCW application and
when taken together, the need is clear. This letter is intended to discuss those issues in a little
more detail.

First, with respect to my safe handling of firearms, knowledge of the laws and any additional
training I have attached some of the course related material and out of State CCW licenses along
with my other supporting documentation. At the outset, while I have taken many courses and am
a California attorney very familiar with firearms laws, I am willing to take any additional course
of training. Note that all of the weapons on my application are also listed on my Nevada CCW
which required live fire qualification with each.

I recently completed the NRA personal protection in the home course and am looking for a
scheduled Personal Protection Outside the home course unless you have different requirements.
Regardless I am an avid shooter and go Angeles Range at least monthly to maintain my
proficiency with handguns, long rifles and/or sporting clays.

While I began shooting as a child, my formal training began in college when I spent three years
as a volunteer member of the Search and rescue team. Since that time I have sought out any
training possible to improve both my handgun safety and any element of personal protection to
insure the safety of my home and family. I have legally carried a concealed handgun for several
years now without incident.

COLA Sep. Statement   00057

My need for a CCW is multifactorial. I practice law in Nevada and throughout California. I do not fly and as such on weekly basis I am driving throughout the state and to Las Vegas. At this point I have to stop in Stateline, usually in an open parking lot, to unload and secure my weapon. Likewise, my office is a small building occupied solely by our firm and located in a residential area in Bel Air. We do not have a security guard or secured parking.

In addition to working as a volunteer judge I also serve on a juvenile dependency court tort panel reviewing cases involving injured and abused children, often at the hands of parents or guardians I must interact with. I am also involved in high profile litigation representing victims of rape, family members in wrongful death cases where in at least one defendant was convicted of murder and two others are awaiting criminal trial. I have represented and continue to represent members of law enforcement including the son of the undersheriff who currently works the gang detail after his wife was killed in a Kaiser emergency room.

Lastly, my employer has a current an ongoing threat justifying the issuance of a permit to him following a home invasion by gang members who shot him. Our office is also frequently the site of disturbances or threats by upset former clients and in Nevada I continue to be involved in high profile litigation including the Endoscopy/hepatitis litigation that has led to published death threats against my co-counsel.

As can be seen my recent local events, being a litigator isn't easy and in my case it is impossible to take other steps as we already have an armed security service for the office but their response time of 20 minutes is worse than the best LAPD response time of 10 minutes and the simple act of getting out of my car to secure my weapon at the state line creates more danger than simply allowing me to proceed to my home or office.

Please let me know what additional information you require to assist in your evaluation of this matter.

Thank you for your attention to this matter.

Sincerely,

Jonathan W. Birdt



JOHN A. CLARKE
EXECUTIVE OFFICER / CLERK

TEMPORARY JUDGE PROGRAM
111 NORTH HILL STREET
LOS ANGELES, CA 90012-3014

**Superior Court of California**
**County of Los Angeles**

FEBRUARY 24, 2009

JONATHAN WESLEY BIRDT

827 MORAGA DR
LOS ANGELES, CA 90049

Dear JONATHAN WESLEY BIRDT:

You have been scheduled to serve as a Temporary Judge on FRIDAY, MARCH 13, 2009 FROM 8:30 AM TO 5:00 PM IN DEPARTMENT F43, located at the CHATSWORTH COURTHOUSE, 9425 PENFIELD AVENUE, CHATSWORTH.

There is public parking located on the north side of the courthouse off of Penfield.

It is your obligation when sitting as Temporary Judge to recuse yourself in any matter if one or more of the litigants is (1) an attorney, or (2) bench officer (Judge or commissioner). However, if you have completed the Court's temporary judge training, the Presiding Judge has waived the requirement that you not serve as a court appointed temporary judge in a family law or unlawful detainer case if one party is in pro per and the other is represented by an attorney or is an attorney. (CRC 2.818(b)(3)). If you are assigned under an exception order, this waiver does not apply.

Should you be unable to serve on your assignment date, PLEASE CALL THE TEMPORARY JUDGE OFFICE AT (213) 974-0947 or (213) 974-0948 IMMEDIATELY to allow sufficient time to get a replacement.

The Los Angeles Superior Court appreciates your assistance in helping to manage its ever-increasing workload in a timely manner.

Sincerely,

*M.A. Ewing*

M.A. Ewing, Administrator
Temporary Judge Program

If this is your first assignment, you are encouraged to contact the court location/courtroom and arrange to observe judicial officers or temporary judges on the bench before your assignment.



**Total Gas Charges Including Taxes and Fees**    102.85

*Your direct payment of $102.05 will be deducted from your bank account on/after 03/01/2010.*

| | | |
|---|---|---|
| Last Payment: Feb 02 2010 | 63.88 | Total Current Gas Charges    102.85 |
| | | **Total Amount Due**    **102.05** |
| | | Current Amount Past Due if not paid by Mar 11, 2010 |

Need help paying your SoCalGas bill? You may qualify for available assistance. Visit socalgas.com/extrahelp.

This bill reflects modified gas charges due to a rate change.

Seal leaky air ducts and weather-strip drafty doors and windows to help keep heated air inside your home this winter. Look for more energy-saving tips at socalgas.com.

| Energy Comparison | This Year Days | Therms | Daily Average | Last Year Days | Therms | Daily Average |
|---|---|---|---|---|---|---|
| Feb | 33 | 83 | 2.52 | 32 | 82 | 2.56 |
| Jan | 32 | 57 | 1.78 | 35 | 84 | 2.40 |
| Dec | 32 | 59 | 1.84 | 30 | 59 | 1.97 |

Date Mailed
Feb 19, 2010

10 4110 1714
S

DO NOT
MAIL

| Total Amount Due |
|---|
| **$102.05** |
| Direct Payment[1] |
| on/after 03/01/2010 |

Save paper & postage: Pay online at www.socalgas.com

Make Payment To:

The Gas Company
P O Box C
Mont Pk Ca 91756

5809.3.95.23820 1 AV 0.335   oz 0.660
JON W BIRDT

18252 BERMUDA ST
NORTHRIDGE CA 91326-3204

Your Account Number
201 014 4588 8

80 2010144588 00010205 81     2010144588 0001020581



THE STATE BAR OF CALIFORNIA



Jonathan W. Birdt
State Bar Member 183908
**LOS ANGELES**
COURT PRIORITY ACCESS

Executive Director / Secretary



JONATHAN WESLEY BIRDT
18252 BERMUDA ST
NORTHRIDGE CA 91326

SEX:M       HAIR:BRN
HT:05-08    WT:200

11/21/2025 239 RB   P0/11

STATE BAR OF NEVADA

Membership Certification
**Jonathan W. Birdt**
Bar #8376

Member's Signature

**2009 Active Member
State Bar of Nevada**

703.382.2200 • 800.254.2797 • Fax 702.385.2878 • www.nvbar.org

THE STATE BAR OF CALIFORNIA



**JONATHAN W. BIRDT**

183908       **MCLE GROUP 1**

PRESERVE AND IMPROVE OUR JUSTICE SYSTEM
IN ORDER TO ASSURE A FREE AND JUST SOCIETY UNDER LAW.
Only active members are entitled to practice law.

**ACTIVE**

Executive Director / Secretary

UTAH   C31521D
DEPARTMENT OF PUBLIC SAFETY
**Concealed Firearm Permit**

NAME: JONATHAN   WESLEY   BIRDT

D.O.B.:           SEX:  M

ADDRE_____ BERMUDA

CITY: NORTHRIDGE   ST: CA ZIP: 91326

DATE OF       DATE OF
ISSUE:  7/31/2009  EXPIRATION: 7/31/2014

HT: 600  WT: 215  EYES: GRN  HAIR: BRO

Commissioner of Public Safety



NATIONAL RIFLE ASSOCIATION

NRA

Jonathan W. Birdt

168788040

EPL

JONATHAN W BIRDT

HT: 6'0"    WT: 215
Address:
18252 BERMUDA ST
NORTHRIDGE, CA 91326

MAKE / MODEL / CAL / DATE
SPRFLD ARM / 1911 / 45 / 010710
SPRFLD ARM / XD / 40 / 010710
SW / 915 / 9 / 010710
SW / MP 40 / 40 / 010710
KAHR / MK9 / 9 / 010710
——REVOLVERS AUTHORIZED——

Signature



STATE of NEVADA, CLARK COUNTY
**Las Vegas Metropolitan
Police Department**
**CONCEALED
FIREARMS PERMIT**

**JONATHAN W BIRDT**
Permit No: 2745005
Issued: 01-07-2010

Expires: 01-07-2015





# THE NATIONAL RIFLE ASSOCIATION OF AMERICA

Awards this certificate to

## Jon Birdt

for successful completion of the

### NRA
### PERSONAL PROTECTION
### IN THE HOME COURSE

Northridge, CA

Issued at _Michael Ferrara_

NRA Certified Instructor

143370625

February 21, 2010

Date _____

NRA Secretary





# CERTIFICATE OF COMPLETION

NEVADA CONCEALED FIREARMS
PERMIT TRAINING

Jon Birdt

This is to certify that the above named individual has successfully completed a course of
instruction including Use of Deadly Force Liability, Firearms Regulations, Safe Handling and
Storage, and a Shooting Proficiency test for holders of concealed firearm permits as required
by The Nevada Sheriffs' and Chiefs' Association under Nevada Revised Statute 202.3657

Awarded on  11/05/2009

Kurt L. Gepke/139518524
National Rifle Association Certified Firearms Instructor

Teamdigit Defensive Training
Las Vegas, Nevada

COLA Sep. Statement   00063

# EXHIBIT 3



**LEROY D. BACA, SHERIFF**

**County of Los Angeles**
Sheriff's Department Headquarters
4700 Ramona Boulevard
Monterey Park, California 91754-2169



May 11, 2010

Mr. Jonathan W. Birdt
18252 Bermuda
Northridge, California   91326

Dear Mr. Birdt:

Department Executives have reviewed your application for a concealed weapon license. The circumstances, as outlined in the application, do not satisfy the requirements for the existence of good cause and we must, pursuant to our policy, deny your request.

Our stated policy as to what constitutes good cause for the issuance of a permit is stated below for your information:

> ".....specifically state under the section entitled "Qualifications for a CCW License" those circumstances which present convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his/her spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by applicant's carrying of a concealed firearm."

Typically, the verbiage "convincing evidence of a clear and present danger...." refers to a current situation which involves a specific person(s) who has threatened an individual and who has displayed a pattern of behavior which would suggest that the threat(s) could be carried out. Situations which would suggest only a potential danger to one's safety, (e.g. carrying large amounts of money to the bank, profession/job, working late hours in a high crime rate area, etc.) are not consistent with the criteria for issuance of a concealed weapon license.

If I may be of further assistance, please do not hesitate to call me or Lieutenant Charles Antuna at (323) 526-5118.

Sincerely,

LEROY D. BACA, SHERIFF

LARRY L. WALDIE
UNDERSHERIFF

*A Tradition of Service*

# EXHIBIT 4

# Jonathan W. Birdt

## Attorney at Law

18252 Bermuda Street
Porter Ranch, CA 91326
Jonbirdt@yahoo.com
Phone 818-400-4485
Fax 818-428-1384
www.jonbirdt.com

October 22, 2010

Chief Charlie Beck
100 West 1st Street Room
Los Angeles, CA 90012

Leroy D. Baca, Sheriff
Los Angeles County Sheriff's Department
4700 Ramona Blvd.
Monterey Park, CA 91754

Dear Sheriff Baca and Chief Beck:

I have submitted applications for permits to carry concealed weapons to each of your departments this year without success and my request for appeals have been ignored. Given recent Federal developments I believe my right to a CCW permit is absolute and as such would like to give you more opportunity to review my CCW application. As such, I am submitting to you a new application utilizing the California Attorney General form. If there are any additional fees or requirements, I am willing to immediately comply with those.

Likewise, I am willing to go through whatever additional training you may require, just let me know.

Earlier this year I met with the LAPD gun detail, was photographed and interviewed and subsequently my request was denied. I requested an appeal but no response was provided. Thereafter I submitted my application to the LASD and no response was provided.

As such, unless I am advised within the next ten days that your department intends to provide any administrative remedy or review of this application I intend to proceed with an immediate Federal suit to enforce my constitutional rights.

Thank you for your attention to this matter.

Respectfully,

Jonathan W. Birdt

# California Department of Justice



# STANDARD APPLICATION
# FOR LICENSE TO CARRY
# A CONCEALED WEAPON (CCW)

BCIA 4012 (6/99)

COLA Sep. Statement   00066

**California Department of Justice**
# STANDARD APPLICATION
for
# LICENSE TO CARRY A CONCEALED WEAPON (CCW)

### Authority

California Penal Code (PC) sections 12050 through 12054 provide that a sheriff of a county or the chief or other head of a municipal police department of any city or city and county may issue a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person (CCW license). PC section 12051(a)(3)(A) requires the Attorney General to prescribe a statewide standard application form for a CCW license.

### Who May Be Issued a License

The licensing authority specified in PC section 12050(a)(1) (a sheriff or head of a municipal police department) may issue a license to persons who are of good moral character, who have completed a course of training, and where good cause exists for issuance of the CCW license. All applications for a CCW will be fingerprinted and state records will be checked to determine if they are in a prohibiting class. Attachments 1, 2, and 3 (following page 14 of this application) list all categories that would cause a person to be in a class prohibiting them from possessing firearms and being granted a CCW license. These attachments are updated annually to reflect new legislation and other changes in the law.

### Format of CCW License

A CCW license may be issued in either of the following formats:

1.  A license to carry concealed, a pistol, revolver, or other firearm capable of being concealed upon the person.
2.  Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in that county a pistol, revolver, or other firearm capable of being concealed upon the person

### Training Required

PC section 12050(a)(1)(B) and (E) specifies that new license applicants must complete a course of training. The training may consist of any course acceptable to the licensing authority. The licensing authority may require either a course not to exceed 16 hours which includes instruction on at least firearms safety and the law regarding the permissible use of a firearm or a community college course not to exceed 24 hours certified by the Commission on Peace Officer Standards and Training. If the licensing authority requires the community college course, it must be uniformly required for all CCW license applicants. The licensing authority may also require annual qualification on the weapon(s) during th term for which the CCW license is granted.

For license renewal applicants, the course of training may be any course acceptable to the licensing authority, shall be no less than four hours in length, and shall include instruction on at least firearm safety and the law regarding permissible use of a firearm

-1-

COLA Sep. Statement   00067

State of California, Department of Justice
# Standard Application for CCW License

## Psychological Testing

In addition to licensing requirements as specified by the licensing authority, jurisdictions may require psychological testing on the initial application. If required, the applicant shall be referred to a licensed psychologist used by the licensing authority for the psychological testing of its own employees. Any fees charged will be the responsibility of the applicant and such fees shall not exceed $150.00 for an initial test. Additional psychological testing of an applicant seeking license renewal shall be required only if there is compelling evidence to indicate that a test is necessary (PC section 12054(e)).

## Completing the Application

Answering all the questions on this standard application does not guarantee the issuance of a CCW license. The determination whether or not to issue the license is the prerogative of the licensing authority. Each licensing authority, in addition to using the state standard application form, will have a written policy summarizing what they require pursuant to PC section 12050(1)(1)(A) and (B). Prior to issuing a CCW, the statutes require proof that:

- The applicant is of good moral character,
- Good cause exists to issue the CCW license,
- The applicant meets residence requirements, and
- The course of training prescribed by the licensing authority has been completed.

The application on the following pages sets forth standardized questions to be used by the CCW licensing authority to determine whether a CCW license shall be issued. The applicant shall not be required to complete any additional application or form for a CCW license, or to provide any information other than that necessary to complete this standard application form except to clarify or interpret information provided herein (PC section 12051(a)(3)(C)).

The applicant will certify that all answers provided are true and correct to the best of their knowledge and belief under penalty of perjury. The applicant will also acknowledge that information disclosed on this application may be subject to public disclosure.

### Important Instructions

- Fill out, read, and sign Sections 1 through 5, as directed. Use additional pages if more space is required.

- Sections 6, 7, and 8 must be completed in the presence of an official of the licensing agency.

- Review Section 7 and be prepared to answer these questions orally. Do not write anything in Section 7 unless specifically directed to do so by the licensing agency.

Section 1 – Applicant Personal Information ............................................................................................ 3
Section 2 – Applicant Clearance Questions ............................................................................................ 3
Section 3 – Description of Weapon(s) ..................................................................................................... 5
Section 4 – CCW License Conditions and Restrictions ......................................................................... 6
Section 5 – Applicable California Penal Code Sections .......................................................................... 7
Section 6 – Agreement to Restrictions and to Hold Harmless ............................................................... 10
Section 7 – Investigator's Interview Notes ............................................................................................ 11
Section 8 – Certification and Release of Information ............................................................................. 14

Attachment 1 – California Prohibiting Categories for a CCW License ................................................. 16
Attachment 2 – California Prohibiting Misdemeanors .......................................................................... 17
Attachment 3 – Federal Prohibiting Categories for Possessing Firearms ............................................. 19

-2-

State of California, Department of Justice
## Standard Application for CCW License

| Official Use Only – Type of Permit Requested | |
|---|---|
| ( ) Standard | ( ) Judge |
| ( ) Reserve Officer | ( ) 90 Day |

### Public Disclosure Admonition

I understand that I am obligated to be complete and truthful in providing information on this application.  I understand that all of the information disclosed by me in this application may be subject to public disclosure.

Applicant Signature                                          Date  10/22/10

Witness Signature / Badge Number                             Date

### Section 1 – Applicant Personal Information

Name: Birdt, Jonathan Wesley

      Last           First           Middle

If Applicable
Maiden Name or other Name(s) Used: _____

City and County of Residence: Los Angeles, CA

Country of Citizenship: United States

Date of Birth: _____   Place of Birth: Los Angeles, Los Angeles, CA

          City        County      State

Height: 6   Weight: 230   Color Eyes: Brown   Color Hair: Brown

### Section 2 – Applicant Clearance Questions

1. Do you now have, or have you ever had a license to carry a concealed weapon (CCW)?
   No [ ]   Yes [✓]  (If yes, please indicate below.  Use additional pages if necessary.)

Issuing Agency Nevada & Utah   Issue Date 1/7/10 & 7/31/2009   CCW# 2745005 & C315219

2. Have you ever applied for and been denied a license to carry a concealed weapon?
   No [ ]   Yes [✓]  (If yes, give agency name, date and reason for denial.)

LAPD- No reason given and Appeal not processed.  1995 and 2010.

LASD- No response provided. 2010.

-3-

COLA Sep. Statement    00069

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 – Applicant Clearance Questions – (continued)

3.  Have you ever held and subsequently renounced your United States citizenship?
    No ☑ Yes ☐ (If yes, explain):

4.  If you served with the Armed Forces, were you ever convicted of any charges or was your discharge other than honorable?  No ☑ Yes ☐ (If yes, explain):

5.  Are you now, or have you been a party to a lawsuit in the last five years?
    No ☐ Yes ☑ (If yes, explain):
    Cruz v. McNulty- Legal Malpractice suit in Arizona.

6.  Are you now, or have you been, under a restraining order(s) from any court?
    No ☑ Yes ☐ (If yes, explain):

7.  Are you on probation or parole from any state for conviction of any offense including traffic?  No ☑ Yes ☐ (If yes, explain):

-4-

COLA Sep. Statement   00070

State of California, Department of Justice
## Standard Application for CCW License

### Section 2 – Applicant Clearance Questions – (continued)

8.   List all traffic violations (moving violations only)  and motor vehicle accidents you have had in the last five years.  (Use additional pages if necessary.)

| Date | Violation / Accident | Agency / Citation # |
|---|---|---|
| | Speeding ticket in 2010 dismissed after traffic school. | |
| | Speeding ticket around 2008 dismissed after traffic school. | |
| | I do not not recall any other tickets but will consent to the release of my DMV driving record or an NCIC criminal background check. | |

9.   Have you ever been convicted for any criminal offense (civilian or military) in the U.S. or any other country?

No ☑  Yes ☐  (If yes, explain including date, agency, charges, and disposition.)

10.   Have you witheld any fact that might affect the decision to approve this license?

No ☑  Yes ☐  (If yes, explain):

### Section 3 – Descriptions of Weapons:

List below the weapons you desire to carry if granted a CCW.  You may carry concealed only the weapon(s) which you list and describe herein, and only for the purpose indicated.  Any misuse will cause an automatic revocation and possible arrest.  (Use additional pages if necessary.)

| | Make | Model | Caliber | Serial No. |
|---|---|---|---|---|
| 1. | Sig Sauer | P220 | .45 ACP | |
| 2. | Smith & Wesson | MP40 | .40 | |
| 3. | Kahr | MK9 | 9mm | |

-5-

COLA Sep. Statement   00071

State of California, Department of Justice

## Standard Application for CCW License

### Section 4 – CCW License Conditions and Restrictions

The licensee is responsible for all liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit, or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

The licensee authorizes the licensing agency to investigate, as they deem necessary, the licensee's record and character to ascertain any and all information which may concern his/her qualifications and justification to be issued a license to carry a concealed weapon and release said agency of any and all liability arising out of such investigation.

While exercising the privileges granted to the licensee under the terms of this license, the licensee shall not, when carrying a concealed weapon:
* Consume any alcoholic beverage.
* Be in a place having a primary purpose of dispensing alcoholic beverages for on-site consumption.
* Be under the influence of any medication or drug, whether prescribed or not.
* Refuse to show the license or surrender the concealed weapon to any peace officer upon demand.
* Impede any peace officer in the performance of his/her duties.
* Present himself/herself as a peace officer to any person unless he/she is, in fact, a peace officer as defined by California law.
* Unjustifiably display a concealed weapon.
* Carry a concealed weapon not listed on the permit.
* Carry a concealed weapon at times or circumstances other than those specified in the permit.

Pursuant to U.S. Government Code – Title 49, Chapter 26, Section 1472(1) and Federal Aviation Regulation 121.583, a license to carry a concealed weapon does not authorize a person to carry a firearm, tear gas, or any dangerous weapon aboard commercial airlines. Further, a person must declare that he/she is carrying such firearm, tear gas, or dangerous weapon BEFORE entering the boarding area of an air terminal where the security checks are made. Such violation can result in arrest by law enforcement.

Any violation of these restrictions or conditions may invalidate the CCW license and may void any further use of the license until reinstated by the licensing authority. Any arrest for a felony or serious misdemeanor, including driving under the influence of alcohol and/or drugs, is cause for invalidating the license.

-6-

COLA Sep. Statement    00072

State of California, Department of Justice

## Standard Application for CCW License

### Section 5 – Applicable California Penal Code Sections

The following Penal Code sections are of special importance to the holder of a CCW license regarding the use, carrying, and storage of firearms:

### Penal Code Section 12051 – Applications for CCW Licenses; False Statements

(b) Any person who files an application required by subdivision (a) knowing that statements contained therein are false is guilty of a misdemeanor.

(c) Any person who knowingly makes a false statement on the application regarding any of the following shall be guilty of a felony:

  (1) The denial or revocation of a license, or the denial of an amendment to a license, issued pursuant to Section 12050.

  (2) A criminal conviction.

  (3) A finding of not guilty by reason of insanity.

  (4) The use of a controlled substance.

  (5) A dishonorable discharge from military service.

  (6) A commitment to a mental institution.

  (7) A renunciation of United States citizenship.

### Penal Code Section 192 – Manslaughter

Manslaughter is the unlawful killing of a human being without malice.

(a) Voluntary – upon a sudden quarrel or heat of passion.

(b) Involuntary – in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection; provided that this subdivision shall not apply to acts committed in the driving of a vehicle.

### Penal Code Section 197 – Justifiable Homicide; Any Person

Homicide is justifiable when committed by any person in any of the following cases:

1. When resisting any attempt to murder any person, or to commit a felony, or to do some great bodily injury upon any person; or,

2. When committed in defense of habitation, property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony, or against one who manifestly intends and endeavors, in a violent, riotous or tumultuous manner, to enter the habitation of another for the purpose of offering violence to any person therein; or,

3. When committed in the lawful defense of such person, or of a wife or husband, parent, child, master, mistress, or servant of such person, when there is reasonable ground to apprehend a design to commit a felony or to do some great bodily injury, and imminent danger of such design being accomplished; but such person, or the person in whose behalf the defense was made, if he was the assailant or engaged in mutual combat, must really and in good faith have endeavored to decline any further struggle before the homicide was committed; or,

4. When necessarily committed in attempting, by lawful ways and means, to apprehend any person for any felony committed, or in lawfully suppressing any riot, or in lawfully keeping and preserving the peace.

-7-

COLA Sep. Statement   00073

State of California, Department of Justice

## Standard Application for CCW License

### Section 5 – Applicable California Penal Code Sections – (continued)

**Penal Code Section 198 – Justifiable Homicide; Sufficiency of Fear (Limitation of Self-defense of Property Rule)**
A bare fear of the commission of any of the offenses mentioned in subdivisions 2 and 3 of Section 197, to prevent which homicide may be lawfully committed, is not sufficient to justify it. But the circumstances must be sufficient to excite the fears of a reasonable person, and the party killing must have acted under the influence of such fears alone.

**Penal Code Section 199 – Justifiable and Excusable Homicide; Discharge of Defendant**
The homicide appearing to be justifiable or excusable, the person indicted must, upon his trial, be fully acquitted and discharged.

**Penal Code Section 12035 – Storage of Firearms Accessible to Children**
(a) As used in this section, the following definitions shall apply:
    (1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.
    (2) "Child" means a person under the age of 16 years.
    (3) "Off-premises" means premises other than the premises where the firearm was stored.
    (4) "Locked container" has the same meaning as set for the in subdivision (d) of Section 12026.2.
(b) (1) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the first degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes death or great bodily injury to himself, herself, or any other person.
    (2) Except as provided in subdivision (c), a person commits the crime of "criminal storage of a firearm of the second degree" if he or she keeps any loaded firearm within any premise which is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to the firearm without the permission of the child's parent or legal guardian and the child obtains access to the firearm and thereby causes injury, other than great bodily injury, to himself, herself, or any other person, or carries the firearm either to a public place or in violation of Section 417.
(c) Subdivision (b) shall not apply whenever any of the following occurs:
    (1) The child obtains the firearm as a result of an illegal entry to any premises by any person.
    (2) The firearm is kept in a locked container or in a location that a reasonable person would believe to be secure.
    (3) The firearm is carried on the person or within such a close proximity thereto so that the individual can readily retrieve and use the firearm as if carried on the person.
    (4) The firearm is locked with a locking device that has rendered the firearm inoperable.
    (5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the firearm during, or incidental to, the performance of the person's duties.
    (6) The child obtains, or obtains and discharges, the firearm in a lawful act of self-defense or defense of another person, or persons.
    (7) The person who keeps a loaded firearm on any premise which is under his or her custody or control has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premise.

-8-

State of California, Department of Justice

## Standard Application for CCW License

### Section 5 – Applicable California Penal Code Sections – (continued)

**Penal Code Section 12036 – Firearms Accessed by Children and Carried Off-premises**

(a) As used in this section, the following definitions shall apply:

(1) "Locking device" means a device that is designed to prevent the firearm from functioning and when applied to the firearm, renders the firearm inoperable.

(2) "Child" means a person under the age of 16 years.

(3) "Off-premises" means premises other than the premises where the firearm was stored.

(4) "Locked container" has the same meaning as set forth in subdivision (d) of Section 12026.2.

(b) A person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person, loaded or unloaded, within any premise that is under his or her custody or control and he or she knows or reasonably should know that a child is likely to gain access to that firearm without the permission of the child's parent or legal guardian and the child obtains access to that firearm and thereafter carries that firearm off-premises, shall be punished by imprisonment in a county jail not exceeding one year, by a fine not exceeding one thousand dollars ($1,000), or by both that imprisonment and fine.

(c) A pistol, revolver, or other firearm capable of being concealed upon the person that a child gains access to and carries off-premises in violation of this section shall be deemed "used in the commission of any misdemeanor as provided in this code or any felony" for the purpose of subdivision (b) of Section 12028 regarding the authority to confiscate firearms and other deadly weapons as a nuisance.

(d) This Section shall not apply if one of the following circumstances exists:

(1) The child obtains the pistol, revolver, or other firearm capable of being concealed upon the person as a result of an illegal entry into any premises by any person.

(2) The pistol, revolver, or other firearm capable of being concealed upon the person is kept in a locked container or in a location that a reasonable person would believe to be secure.

(3) The pistol, revolver, or other firearm capable of being concealed upon the person is locked with a locking device that has rendered the firearm inoperable.

(4) The pistol, revolver, or other firearm capable of being concealed upon the person is carried on the person within such a close range that the individual can readily retrieve and use the firearm as if carried on the person.

(5) The person is a peace officer or a member of the armed forces or national guard and the child obtains the pistol, revolver, or other firearm capable of being concealed upon the person during, or incidental to, the performance of the person's duties.

(6) The child obtains, or obtains and discharges, the pistol, revolver, or other firearm capable of being concealed upon the person in a lawful act of self-defense or defense of another person or persons.

(7) The person who keeps a pistol, revolver, or other firearm capable of being concealed upon the person has no reasonable expectation, based on objective facts and circumstances, that a child is likely to be present on the premises.

-9-

State of California, Department of Justice
## Standard Application for CCW License

### Section 6 – Agreement to Restrictions and to Hold Harmless

I accept and assume all responsibility and liability for, injury to, or death of any person, or damage to any property which may result through any act or omission of either the licensee or the agency that issued the license. In the event any claim, suit or action is brought against the agency that issued the license, its chief officer or any of its employees, by reason of, or in connection with any such act or omission, the licensee shall defend, indemnify, and hold harmless the agency that issued the license, its chief officer or any of its employees from such claim, suit, or action.

I understand that the acceptance of my application by the licensing authority does not guarantee the issuance of a license and that fees and costs are not refundable if denied. I further understand that if my application is approved and I am issued a license to carry a concealed weapon, that the license is subject to restrictions placed upon it and that misuse of the license will cause an automatic revocation and possible arrest and that the license may also be suspended or revoked at the discretion of the licensing authority at any time. I am aware that any use of a firearm may bring criminal action or civil liability against me.

I have read, understand, and agree to the CCW license liability clauses, conditions, and restrictions stated in this Application and Agreement to Restrictions and to Hold Harmless.

I have read and understand the applicable Penal Code sections regarding False Statements on a CCW Application, Manslaughter, Killing in Defense of Self or Property, Limitation on Self-defense and Defense of Property, and Child Access and Firearm Storage, stated in this application.

I have read and understand Attachment 1 – California Prohibiting Categories for a CCW License, Attachment 2 – California Prohibiting Misdemeanors, and Attachment 3 – Federal Prohibiting Categories for Possessing Firearms. I further acknowledge that these Prohibiting Categories can be amended or expanded by state or federal legislative or regulatory bodies and that any such amendment or expansion may affect my eligibility to hold a CCW.

Applicant Signature                                      Date   10/22/10

Witness Signature / Badge Number                         Date

-10-

COLA Sep. Statement   00076

State of California, Department of Justice

## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes

**Applicant Name:** Birdt, Jonathan Weslet

    Last           First         Middle

**Date of Birth:**_____    **Age** 39

**Social Security No.:**___

**California DL/ID No.:**

**Driver's License Restrictions:** None

**Residence Address:**

18252 Bermuda St. Porter Ranch, CA 91326

Number   Street          Apt.    City    State   Zip

**Mailing address (if different):**

Number   Street          Apt.    City    State   Zip

**Home / Personal Phone Numbers:** ( 818 ) 400-4485

**Spouse's Name and Address:** Julie Birdt- same address

**Applicant Occupation:** Attorney

**Business / Employer Name:** Self

**Business Phone Number: :** ( 818 ) 400-4485

**Business Address:**

18252 Bermuda St. Porter Ranch, CA 91326

Number   Street          Apt.    City    State   Zip

1. List all previous home addresses for the past five years.

-11-

COLA Sep. Statement   00077

State of California, Department of Justice
## Standard Application for CCW License

**Section 7 – Investigator's Interview Notes – (continued)**

2. Have you ever been in a mental institution, treated for mental illness, or been found not-guilty by reason of insanity ? No ☑ Yes ☐ (If yes, explain):

_____

_____

3. Are you now, or have you ever been, addicted to a controlled substance or alcohol, or have you ever utilized an illgal controlled substance, or have you ever reported to a detoxification or drug treatment program? No ☑ Yes ☐ (If yes, explain):

_____

_____

4. Have you ever been involved in an incident involving firearms?
No ☑ Yes ☐ (If yes, explain):

_____

_____

_____

5. Have you been involved in a domestic violence incident?
No ☑ Yes ☐ (If yes, explain):

_____

_____

6. List any arrests or formal charges, with or without disposition, for any criminal offenses with the U.S. or any other country (civilian or military).

_____

_____

_____

_____

-12-

COLA Sep. Statement   00078

State of California, Department of Justice
## Standard Application for CCW License

### Section 7 – Investigator's Interview Notes – (continued)

If the CCW license is desired for self-protection, the protection of others, or for the protection of large sums of money or valuable property, you are required to explain and provide good cause for issuance of the license.  For example, has your life or property been threatened or jeopardized?  Explain incidents and include dates, times, locations, and names of police agencies to which these incidents were reported.

**Details of Reason for Applicant desiring a CCW License (use additional sheets if needed).**

Self Defense. I am an attorney and work from home handling cases in California and

Nevada. A CCW Permit is required as denial restricts my ability to travel between California

and Nevada. I handle high profile cases and work as a volunteer Judge for the Los Angeles

Superior Court. I have also served on the juvenile Court dependency panel.

I am life member of the NRA and a member of the CRPA. I participate in shooting events

almost weekly and in addition to the training already received I am willing to complete any

additional training you may require. I have no criminal background and the States of

California and Nevada have already determined i am of good moral charachter in granting me

a license to practice law. Moreover, 38 states recognize my right to carry a concealed

weapon based upon my current licensing status yet i can't leave my home to exercise these

rights.

-13-

COLA Sep. Statement   00079

State of California, Department of Justice

## Standard Application for CCW License

### Section 8 – Certification and Release of Information

I hereby give permission to the agency to which this application is made to conduct a background investigation of me and to contact any person or agency who may add to or aid in this investigation. I further authorize persons, firms, agencies and institutions listed on this application to release or confirm information about me and statements I have made as contained in this application.

Notwithstanding any other provision of law and pursuant to the Public Records Act (Government Code section 6250 et seq.), I understand that information contained in this application may be a matter of public record and shall be made available upon request or court order.

I hereby certify under penalties of perjury and Penal Code section 12051(b) and (c), that the answers I have given are true and correct to the best of my knowledge and belief, and that I understand and agree to the provisions, conditions, and restrictions herein or otherwise imposed.

_____          10/22/10
Applicant Signature                              Date

_____          _____
Witness Signature / Badge Number                 Date

-14-



# Attachments

State of California, Department of Justice
## Standard Application for CCW License

*Attachment 1*

## CALIFORNIA PROHIBITING CATEGORIES FOR A CCW LICENSE
## As of January, 1999

- Persons convicted of a felony, or any offense enumerated in section 12021.1 of the Penal Code (PC).

- Persons addicted to the use of narcotics.

- Persons denied firearm possession as a condition of probation pursuant to PC section 12021(d).

- Persons convicted of a specified misdemeanor pursuant to PC section 12021(c)(1) are prohibited from purchasing or possessing firearms for 10 years (see Attachment 2).

- Juveniles adjudged wards of the juvenile court because they committed a 707(b) Welfare and Institutions Code (WIC) offense, an offense described in PC section 1203.073(b) or any offense enumerated in PC section 12021 (c)(1) are prohibited until they reach age 30.

- Persons who are subject to a protective order as defined in section 6218 of the Family Code, or a temporary restraining order or injunction issued pursuant to sections 527.6 or 527.8 of the Code of Civil Procedure.

- Persons found by a court to be a danger to others because of mental illness.

- Persons found by a court to be mentally incompetent to stand trial.

- Persons found by a court to be not guilty by reason of insanity.

- Persons adjudicated to be a mentally disordered sex offender.

- Persons placed on a conservatorship because they are gravely disabled as a result of a mental disorder or impairment by chronic alcoholism.

- Persons who communicate a threat to a licensed psychotherapist, against a reasonably identifiable victim, and the psychotherapist reports to law enforcement pursuant to WIC section 8100(b), are prohibited from purchasing or possessing a firearm for 6 months.

- Persons in a mental health facility certified pursuant to WIC sections 5250, 5260, and 5270.15 are prohibited from possessing or purchasing or attempting to purchase firearms for 5 years.

- Persons who are voluntary patients in a mental facility who are determined to be a danger to self or others are prohibited from purchasing or possessing a firearm between admission and discharge.

- Persons under indictment or information in any court for a crime punishable by imprisonment for a term exceeding one year.

-16-

COLA Sep. Statement   00082

State of California, Department of Justice
## Standard Application for CCW License

## *Attachment 2*

## CALIFORNIA PROHIBITING MISDEMEANORS
### As of January, 1999

**Pursuant to Penal Code (PC) section 12021(c)(1), any person who has been convicted of a misdemeanor violation for any of the following offenses is prohibited from owning, possessing, or having under his or her custody or control any firearms within 10 years of the conviction:**

- Threatening public officers, employees and school officials (PC section 71).
- Threatening certain public officials, appointees, judges, staff or their families with the intent and apparent ability to carry out the threat (PC section 76).
- Possessing a deadly weapon with the intent to intimidate a witness (PC section 136.5).
- Threatening witnesses, victims, or informants (PC section 140).
- Attempting to remove or take a firearm from the person or immediate presence of a public or peace officer (PC section 148(d)).
- Unauthorized possession of a weapon in a courtroom, courthouse or court building, or at a public meeting (PC section 171(b)).
- Bringing into or possessing a loaded firearm within the state capitol, legislative offices, etc. (PC section 171c).
- Taking into or possessing loaded firearms within the Governor's Mansion or residence of other constitutional officers, etc. (PC section 171(d)).
- Supplying, selling or giving possession of a firearm to a person for participation in criminal street gangs (PC section 186.28).
- Assault (PC sections 240, 241).
- Battery (PC sections 242, 243).
- Assault with a stun gun or Taber weapon (PC section 244.5).
- Assault with deadly weapon or force likely to produce great bodily injury (PC section 245).
- Assault with a deadly weapon or instrument, by any means likely to produce great bodily injury or with a stun gun or Taber on a school employee engaged in performance of duties (PC section 245.5).
- Shooting at an inhabited or occupied dwelling house, building, vehicle, aircraft, horsecart or camper (PC section 246).
- Discharging a firearm in a grossly negligent manner (PC section 246.3).
- Shooting at an unoccupied aircraft, motor vehicle, or uninhabited building or dwelling house (PC section 247).
- Inflicting corporal injury on a spouse or significant other (PC section 273.5).
- Willfully violating a domestic protective order (PC section 273.6).

–17–

COLA Sep. Statement    00083

State of California, Department of Justice

# Standard Application for CCW License

## *Attachment 2 (Continued)*

## CALIFORNIA PROHIBITING MISDEMEANORS
### As of January, 1999

- Drawing, exhibiting, or using any deadly weapon other than a firearm (PC sections 417(a)(1), 417(a)(2)).
- Brandishing a firearm in presence of a peace officer (PC section 417.1 -- repealed by stats. 1998).
- Drawing or exhibiting, selling, manufacturing, or distributing firearm replicas or imitations (PC section 417.2).
- Inflicting serious bodily injury as a result of brandishing (PC section 417.6).
- Bringing into or possessing firearms upon or within public schools and grounds (PC section 626.9).
- Stalking (PC section 646.9).

- Armed criminal action (PC section 12023).
- Possessing a deadly weapon with intent to commit an assault (PC section 12024).
- Driver or any vehicle who knowingly permits another person to discharge a firearm from the vehicle or any person who will fully and maliciously discharges a firearm from a motor vehicle (PC sections 12034(b), 12034(d)).
- Criminal possession of a firearm (PC section 12040).
- Firearms dealer who sells or transfers or gives possession of any firearm to a minor or a handgun to a person under the age of 21 (PC section 12072(b)).

- Various violations involving sales and transfers of firearms (PC section 12072(g)(3)).
- Person or corporation who sells any concealable firearm to any minor (PC section 12100(a) -- repealed by stats. 1994).
- Unauthorized possession/transportation of a machine gun (PC section 12220).
- Possession of ammunition designed to penetrate metal or armor (PC section 12320).
- Carrying a concealed or loaded firearm or other deadly weapon or wearing a peace officer uniform, while picketing (PC section 12590).

- Bringing firearm related contraband into juvenile hall (WIC section 871.5).
- Bringing firearm related contraband into a youth authority institution (WIC section 1001.5).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person receiving in-patient treatment for a mental disorder, or by a person who has communicated to a licensed psychotherapist a serious threat of physical violence against an identifiable victim (WIC section 8100).
- Providing a firearm or deadly weapon to a person described in WIC sections 8100 or 8103 (WIC section 8101).
- Purchase, possession, or receipt of a firearm or deadly weapon by a person who has been adjudicated to be a mentally disordered sex offender or found to be mentally incompetent to stand trial, or not guilty by reason of insanity, and individuals placed under a conservatorship (WIC section 8103).

–18–

COLA Sep. Statement   00084

State of California, Department of Justice
## Standard Application for CCW License

### *Attachment 3*

## FEDERAL PROHIBITING CATEGORIES FOR POSSESSING FIREARMS
### Gun Control Act of 1968, Title 18 U.S.C. Chapter 44
### As of January, 1999

**Pursuant to Section 922, any person listed below is prohibited from possessing, shipping, transporting, or receiving any firearm, who:**

- Has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year.

- Is a fugitive from justice.

- Is an unlawful user of or addicted to any controlled substance.

- Has been adjudicated as a mental defective or committed to a mental institution.

- Is an alien illegally or unlawfully in the United States.

- Has been discharged from the Armed Forces under dishonorable conditions.

- Having been a citizen of the United States, has renounced U.S. citizenship.

- Is subject to a court order that restrains the person from harassing, stalking, or threatening an intimate partner or child of such intimate partner.

- Has been convicted in any court of a misdemeanor crime of domestic violence.

- Is under indictment for a crime punishable by imprisonment for a term exceeding one year.

- Has an out-of-state prohibitive criminal history.

- Has a prior denial on a previous National Instant Criminal Background Check System (NICS) inquiry.

-19-

COLA Sep. Statement   00085

1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EDWARD PERUTA,<br><br>                              Plaintiff,<br><br>    vs.<br><br>COUNTY OF SAN DIEGO; and WILLIAM<br>D. GORE, individually and in his capacity as<br>sheriff,<br><br>                              Defendants. | CASE NO. 09-CV-2371 - IEG (BLM)<br><br>ORDER DENYING DEFENDANT'S<br>MOTION TO DISMISS<br><br>[Doc. No. 3] |

        This is a Section 1983 action, challenging the constitutionality of California's law governing the carrying of concealed weapons, both facially and as applied to Plaintiff. Currently before the Court is Defendant William Gore's ("Gore") Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Having considered the parties' arguments, and for the reasons set forth below, the Court DENIES the motion.

## BACKGROUND

        Plaintiff is a sixty year old United States citizen and a California resident, who "maintains several residences across the United States, including but not limited to a residence in San Diego County." (Compl. ¶ 17.) According to Plaintiff, he maintains a permanent mailing address in San Diego, "where he and his wife have a room in which they keep a wardrobe and other personal items." (Id.) Plaintiff and his wife have made their motor home their "permanent residence," and allegedly stay in San Diego for extended periods of time. (Id. ¶ 18.) For example, Plaintiff claims to have

- 1 -                                    09cv2371-IEG (BLM)

COLA Sep. Statement   00086

1   reserved space at Campland on the Bay, in San Diego, from November 15, 2008 through April 15,

2   2009. He had also reserved spaces at the same place from February 2007 through April 2007. Plaintiff

3   is a founder, and sole stockholder, of American News and Information Services, Inc., which gathers

4   and provides raw, breaking news video, photographs, and news tips to various mainstream media

5   outlets. According to Plaintiff, both his work and his lifestyle choice often require him to travel to

6   high crime areas as well as remote rural areas, sometimes carrying large sums of cash, valuables, and

7   equipment.

8         By way of background, Plaintiff is a certified National Rifles Association ("N.R.A.") instructor

9   with the authority to train and certify individuals in the N.R.A. Basic Pistol Safety Course. Plaintiff

10  has a valid pistol permit issued by the State of Connecticut, and is recognized by the Department of

11  Public Safety to teach the pistol course required to obtain a Connecticut Pistol Permit. In 1969,

12  Plaintiff was assigned as a marine small arms instructor (rifle and pistol) at the U.S. Naval Academy.

13  In 1970, Plaintiff successfully completed the Connecticut Municipal Training Course. From 1969 to

14  1971, Plaintiff was a law enforcement officer in the State of Connecticut.

15        The present case arises from Plaintiff's attempts to obtain a concealed weapon's permit in San

16  Diego County. Plaintiff alleges that he obtained and provided to the San Diego County Sheriff the

17  required 8 Hour Firearms Safety and Proficiency Certificate in accordance with California Penal Code

18  § 12050(E)(i). He also alleges that the Firearms Licensing and Permits Unit of the State of California

19  Department of Justice found him eligible to possess firearms. On November 17, 2008, Plaintiff

20  requested a license to carry a concealed weapon from the San Diego County Sheriff's License

21  Division ("SD License Division"), at which time he was interviewed by a licensing supervisor to

22  determine whether he satisfied the licensing criteria. On February 3, 2009, Plaintiff submitted an

23  application for a license to carry a concealed weapon. Plaintiff alleges he was denied a license to carry

24  a concealed weapon by Defendant Gore's predecessor because the SD License Division made a

25  finding that Plaintiff did not have good cause and was not a resident of San Diego–both of which are

26  requirements under Section 12050.

27        Plaintiff filed his complaint on October 9, 2009, alleging three causes of action. First, Plaintiff

28  argues Section 12050's requirements of (1) "good cause" beyond the interests of self-defense and (2)

-2-

09cv2371-IEG (BLM)

COLA Sep. Statement   00087

1    durational "residency" violate the Second and Fourteenth Amendments to the U.S. Constitution.

2    Second, Plaintiff alleges that Defendants' subjective application of the "good cause" and "residency"

3    requirements results in an unequal treatment of similarly situated individuals, and therefore violates

4    the Eighth Amendment of the U.S. Constitution. Finally, Plaintiff argues the requirement that

5    individuals reside full time in San Diego County before they can apply for a concealed weapon's

6    permit violates Plaintiff's right to travel under the Fourteenth Amendment to the U.S. Constitution.

7         On November 12, 2009, Defendant Gore filed the current Motion to Dismiss. [Doc. No. 3].

8    Plaintiff filed a response on December 7, 2009, and Defendant Gore filed a reply on December 14,

9    2009. [Doc. Nos. 4, 5]. On December 17, 2009, having determined that the Court can proceed without

10   oral argument, the Court vacated the hearing set for December 21, 2009. [Doc. No. 6].

11                                   **LEGAL STANDARD**

12        A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings. A

13   complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is

14   plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The court may dismiss

15   a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts

16   under a cognizable legal claim." SmileCare Dental Group v. Delta Dental Plan of California, 88 F.3d

17   780, 783 (9th Cir. 1996) (citation omitted). The court only reviews the contents of the complaint,

18   accepting all factual allegations as true, and drawing all reasonable inferences in favor of the

19   nonmoving party. al-Kidd v. Ashcroft, 580 F.3d 949, 956 (9th Cir. 2009) (citation omitted).

20        Despite the deference, the court need not accept "legal conclusions" as true. Ashcroft v. Iqbal,

21   — U.S. —, 129 S.Ct. 1937, 1949-50 (2009). It is also improper for the court to assume "the [plaintiff]

22   can prove facts that [he or she] has not alleged." Assoc. Gen. Contractors of Cal., Inc. v. Cal. State

23   Council of Carpenters, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded

24   factual allegations, a court should assume their veracity and then determine whether they plausibly

25   give rise to an entitlement to relief." Iqbal, 129 S.Ct. at 1950.

26                                     **DISCUSSION**

27        The Second Amendment provides: "A well regulated Militia, being necessary to the security

28   of a free State, the right of the people to keep and bear Arms, shall not be infringed." The Supreme

COLA Sep. Statement   00088

1   Court's landmark decision in District of Columbia v. Heller, --- U.S. ---, 128 S. Ct. 2783 (2008),

2   resolved some of the hotly debated issues with regard to the Second Amendment, but left many others

3   lingering for future determination. In Heller, after an exhaustive analysis of the text of the Amendment

4   and the founding-era sources of its original public meaning, the Supreme Court stated unequivocally

5   that the Second Amendment guarantees "the individual right to possess and carry weapons in case of

6   confrontation." 128 S. Ct. at 2797. However, like most rights, "the right secured by the Second

7   Amendment is not unlimited." Id. at 2816. Thus, the Supreme Court also made it clear that "the right

8   was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever

9   purpose." Id. For example, the Supreme Court noted that:

10          the majority of the 19th-century courts to consider the question held that prohibitions
            on carrying concealed weapons were lawful under the Second Amendment or state
11          analogues. Although we do not undertake an exhaustive historical analysis today of the
            full scope of the Second Amendment, nothing in our opinion should be taken to cast
12          doubt on longstanding prohibitions on the possession of firearms by felons and the
            mentally ill, or laws forbidding the carrying of firearms in sensitive places such as
13          schools and government buildings, or laws imposing conditions and qualifications on
            the commercial sale of arms.
14
    Id. at 2816-17 (internal citations omitted). In a footnote immediately following, the Supreme Court
15
    explained: "We identify these presumptively lawful regulatory measures only as example; our list does
16
    not purport to be exhaustive." Id. at 2817 n.26.
17
            In Heller, having concluded that the Second Amendment protects an individual right to "keep
18
    and bear arms," and noting that "the inherent right of self-defense has been central to the Second
19
    Amendment right," the Supreme Court turned to the challenged law before it.[1] Id. at 2817-18. Without
20
    deciding what level of scrutiny should be applied (except stating that it would have to be more than
21
    "rational basis"), the Supreme Court concluded that the District of Columbia's "absolute prohibition
22
    of handguns held and used for self-defense in the home" clearly violated the Second Amendment. Id.
23
    at 2817-22.[2]
24

25   ────────────────────

26   [1] The Supreme Court characterized the challenged law as follows: "the law totally bans
     handgun possession in the home. It also requires that any lawful firearm in the home be disassembled
27   or bound by a trigger lock at all times, rendering it inoperable." Heller, 128 S. Ct. at 2817.

28   [2] Because Heller involved a challenge to a District of Columbia statute, the Supreme Court
     there did not have to decide whether the Second Amendment also applied to the states. See id. at 2812-
     13. No party has raised this issue in the present case either. Accordingly, because it appears that both

COLA Sep. Statement   00089

## I.   Right to Bear Arms

### A.   Parties' arguments

Plaintiff's first cause of action alleges that Section 12050's requirements of (1) "good cause" beyond the interests of self-defense and (2) durational residency violate the Second and Fourteenth Amendments.[3] Defendant moves to dismiss this cause of action, arguing that the Supreme Court in Heller, 128 S. Ct. 2816-17, expressly stated that the right secured by the Second Amendment is not unlimited, and that it certainly does not prohibit states from regulating the carrying of concealed weapons. Defendant argues that, unlike possession of a gun for protection within a residence–which

parties agree that the Second Amendment applies in this case, the Court will proceed on that assumption, without deciding the issue at this time. The Court does note, however, that it is aware of the pre-Heller Ninth Circuit case law on this issue, as well as the post-Heller trend. Compare Fresno Rifle & Pistol Club, Inc., 965 F.2d 723, 731 (9th Cir. 1992) (concluding that until such time as United States v. Cruikshank, 92 U.S. 542 (1876), and Presser v. Illinois, 116 U.S. 252 (1886), are overturned, "the Second Amendment limits only federal action") with Nordyke v. King, 563 F.3d 439, 457 (9th Cir. 2009), reh'g en banc granted, 575 F.3d 890 (concluding that "the Due Process Clause of the Fourteenth Amendment incorporates the Second Amendment and applies it against the states and local governments"). It should also be noted that after rehearing Nordyke en banc, the Ninth Circuit vacated its submission of the case pending the Supreme Court's disposition of Maloney v. Rice, 08-1592; McDonald v. City of Chicago, No. 08-1521; and N.R.A. v. City of Chicago, No. 08-1497.

[3] Section 12050(a)(1) provides, in pertinent part:

(A) The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:

(i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(ii) Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

. . . .

(D) For the purpose of subparagraph (A), the applicant shall satisfy any one of the following:

(i) Is a resident of the county or a city within the county.

(ii) Spends a substantial period of time in the applicant's principal place of employment or business in the county or a city within the county.

– 5 –

09cv2371-IEG (BLM)

1  was the issue in Heller--carrying a concealed firearm presents a recognized "'threat to public order.'"

2  (Def. MTD, at 3 (quoting People v. Hale, 43 Cal. App. 3d 353, 356 (1974).)[4]

3       Plaintiff agrees that the constitutional right to "keep and bear arms" is not unlimited, and

4  therefore concedes that some regulations are permissible under the Second Amendment. However,

5  also relying on Heller, Plaintiff argues that at the center of the Second Amendment is an individual

6  right "to possess and carry weapons in case of confrontation, self-defense, or other traditionally lawful

7  purposes, unconnected with service in a militia." (Pl. Opp., at 3.) Thus, to be armed and ready in case

8  of confrontation, Plaintiff argues the Second Amendment requires that a person be allowed to carry

9  a weapon "that is immediately capable of being used for its intended purpose." (Id. at 4.) According

10  to Plaintiff, by imposing the "good cause" requirement, Section 12050 violates the Second

11  Amendment. In the alternative, Plaintiff argues the application of Section 12050's "good cause" and

12  "residency" requirements violates the Second Amendment because law abiding citizens who desire

13  to carry concealed firearms solely for self-defense purposes and/or those that are not full-time

14  residents of San Diego County are deemed by the sheriff not to satisfy the statute's requirements.

15     B.    Analysis

16       The Supreme Court's decision in Heller made it clear--for the first time--that the Second

17  Amendment guarantees "the individual right to possess and carry weapons in case of confrontation."

18  128 S. Ct. at 2797. It also made clear that this right is not unlimited. Id. at 2816-17. Accordingly,

19  while Heller does not preclude Second Amendment challenges to laws regulating firearm possession

20  outside of home, "Heller's dicta makes pellucidly clear that the Supreme Court's holding should not

21

----

22      [4] In addition, Defendant argues there is no constitutionally protected interest in a concealed weapon's permit because, in light of the extremely broad discretion delegated to the sheriff under Section 12050, there is no legitimate claim of entitlement to such a permit. (Def. Reply, at 2.) However, because Defendant raised this issue for the first time in the reply, Plaintiff had no opportunity to respond and the Court has not received the benefit of full briefing. Accordingly, the Court will not consider this in deciding the Motion to Dismiss. See Sogeti USA LLC v. Scariano, 606 F. Supp. 2d 1080, 1086 (D. Ariz. 2009) ("The Court will not grant a motion to dismiss on the basis of argument first raised in a reply."(citing U.S. ex rel. Giles v. Sardie, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000))); see also Sanchez v. City of Santa Ana, 915 F.2d 424, 430 (9th Cir. 1990) ("As a general rule, an appellant may not raise an argument for the first time in a reply brief." (citation omitted)). In any event, the cases relied on by Defendant for the proposition that there is no protected interest in a concealed weapon's permit all predate Heller, which held--for the first time--that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." 128 S. Ct. at 2797. The validity of those cases post-Heller is not clear.

- 6 -

COLA Sep. Statement   00091

1  be read by lower courts as an invitation to invalidate the existing universe of public weapons

2  regulations." United States v. Masciandaro, 648 F. Supp. 2d 779, 788 (E.D. Va. 2009).

3       In the present case, Plaintiff's complaint challenges constitutionality of Section 12050's

4  requirements of "good cause" and "residency" as they relate to his ability to obtain a concealed

5  weapon's permit. This precise issue was not directly addressed by the Supreme Court in Heller, which

6  involved a challenge to District of Columbia's prohibition on the possession of a loaded firearm *in the*

7  *home.* 128 S. Ct. at 2817-22. Thus, the Court must determine whether Section 12050's application to

8  Plaintiff's request for a permit withstands the appropriate level of constitutional scrutiny.[5]

9       *1.   Presumptive constitutionality of concealed weapon bans*

10       As a threshold matter, the Court rejects Defendant's contention that the Supreme Court in

11  Heller *held* that prohibitions on carrying of concealed weapons are presumptively constitutional. First,

12  because this precise question was not before the Supreme Court, any pronouncements to that effect

13  would generally be considered *dicta*, even if persuasive.[6] Moreover, the Supreme Court in Heller

14  expressly stated that it was leaving the determination of the scope of "permissible" Second

15  Amendment restrictions for a later time. Id. at 2816-18, 2821 ("[T]here will be time enough to

16  expound upon the historical justifications for the exceptions we have mentioned if and when those

17  exceptions come before us.").

18  _____

19      [5] The level of scrutiny is necessary to determine whether the application of Section 12050
violates the Second Amendment as applied through the Fourteenth Amendment. The Due Process

20  Clause of the Fourteenth Amendment, which appears to be implicated by Plaintiff's first cause of
action, provides that "No State shall . . . deprive any person of life, liberty, or property, without due

21  process of law." U.S. CONST. amend. XIV. The Equal Protection Clause of the Fourteenth
Amendment, which is the basis for Plaintiff's second cause of action, provides that: "No State shall

22  . . . deny to any person within its jurisdiction the equal protection of the laws." Id. These two
provisions of the Constitution both stem from the "American ideal of fairness" and are "not mutually

23  exclusive." Bolling v. Sharpe, 347 U.S. 497, 499 (1954). However, depending on the circumstances,
these clauses serve slightly different purposes. As one court has explained, "Substantive Due Process

24  generally provides a constitutional safeguard against arbitrary laws to all citizens, but Equal
Protection[] ensures that a certain class, which might be as small as a single individual, will not be

25  treated differently under the law from people similarly situated." United States v. Miller, 604 F. Supp.
2d 1162, 1168 n.7 (W.D. Tenn. 2009).

26

27      [6] "Dictum," the singular form of "dicta," is a remark "by the way" and is a shortened version
of "obiter dictum," which is a Latin phrase often translated as "something said in passing." BLACK'S

28  LAW DICTIONARY 519, 1177 (9th ed. 2009). *Black's Law Dictionary* defines "obiter dictum" as "[a]
judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision
in the case and therefore not precedential (although it may be considered persuasive)." Id. at 1177.

COLA Sep. Statement    00092

1        Finally, a closer examination of the cases and authorities relied upon by the Supreme Court

2   suggests that it did not intend to make *all* concealed weapon bans presumptively constitutional. The

3   Supreme Court's entire pronouncement on the validity of concealed weapon bans was:

> 4       Like most rights, the right secured by the Second Amendment is not unlimited. . . . .
> 5   For example, the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues. See, e.g., State v. Chandler, [5 La. Ann. 489, 489-90
> 6   (1850)]; Nunn v. State, [1 Ga. 243, 251 (1846)]; see generally [2 J. KENT, COMMENTARIES ON AMERICAN LAW *340, n. 2 (O. Holmes ed., 12th ed. 1873)]; THE
> 7   AMERICAN STUDENTS' BLACKSTONE 84, n. 11 (G. Chase ed. 1884).

8   Id. at 2816. Both Chandler and Nunn, the two cases relied upon by the Supreme Court, concerned

9   prohibitions on carrying of concealed weapons where the affected individuals had alternate ways to

10   exercise their Second Amendment rights—by *openly* carrying those weapons. See Chandler, 5 La. Ann.

11   at 489-90 (noting that the law against carrying of concealed weapons was "absolutely necessary" and

12   that "[i]t interfered with no man's right to carry arms . . . 'in full view,' which places men upon an

13   equality"); Nunn, 1 Ga. at 251 ("We are of the opinion, then, that so far as the act of 1837 seeks to

14   suppress the practice of carrying certain weapons *secretly*, that it is valid, inasmuch as it does not

15   deprive the citizen of his *natural* right of self-defence, or of his constitutional right to keep and bear

16   arms. But that so much of it, as contains a prohibition against bearing arms *openly*, is in conflict with

17   the Constitution, and *void* . . . ." (emphases in original)). The applicability of these cases is

18   questionable where, as here, the State expressly *prohibits* individuals such as Plaintiff from openly

19   carrying a loaded firearm in public places. See CAL. PENAL CODE § 12031(a)(1).[7]

20

21       [7] Section 12031(a)(1) provides:

22       A person is guilty of carrying a loaded firearm when he or she carries a loaded firearm
23       on his or her person or in a vehicle while in any public place or on any public street in an incorporated city or in any public place or on any public street in a prohibited area
24       of unincorporated territory.

25   Although this statute contains a number of exceptions, see People v. Flores, 169 Cal. App. 4th 568, 576 (2008), its overall effect cannot be compared to the *unrestricted* right to carry weapons openly
26   as recognized in both Chandler and Nunn. Accordingly, in the present case, the issue is best addressed by determining whether Section 12050's requirements, and their application, meet the appropriate
27   level of constitutional scrutiny, rather than by a categorical approach advocated by Defendant. But see United States v. Hall, No. 2:08-00006, 2008 WL 3097558, at *1 (S.D. W. Va. Aug. 4, 2008) ("The
28   court concludes that the prohibition, as in West Virginia, on the carrying of a concealed weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority notwithstanding the Second Amendment.").

09cv2371-IEG (BLM)

COLA Sep. Statement   00093

1       The other authorities cited by the Supreme Court further undermine Defendant's position.

2   Thus, in *Commentaries on American Law*, James Kent states that "[t]here has been a great difference

3   of opinion on the question" of whether a prohibition on carrying of concealed weapons was

4   constitutional. 2 KENT, *supra*, at *340 n.(b). Likewise, in *The American Students' Blackstone*, George

5   Chase first notes that "it is generally held that statutes prohibiting the carrying of *concealed* weapons

6   are not in conflict with [the Second Amendment], since they merely prohibit the carrying of arms in

7   a particular manner." THE AMERICAN STUDENTS' BLACKSTONE, *supra*, at 84, n.11. However, he

8   immediately points out that "[i]n some states . . . a contrary doctrine is maintained." *Id.* These

9   pronouncements are directly at odds with Defendant's contention that Heller expressed constitutional

10   approval for *all* concealed weapon bans. (See Def. MTD, at 3-4.)

11       Finally, Defendant's reliance on Hall, 2008 WL 3097558, is misplaced. In that case, the district

12   court for the Southern District of West Virginia denied the defendant's second motion to suppress

13   made after the Supreme Court's decision in Heller. Hall, 2008 WL 3097558, at *2. In reaffirming its

14   prior ruling, the court noted that "the prohibition, as in West Virginia, on the carrying of a concealed

15   weapon without a permit, continues to be a lawful exercise by the state of its regulatory authority

16   notwithstanding the Second Amendment." *Id.* at *1. However, unlike California, West Virginia is an

17   "open carry" state, and therefore allows individuals to carry weapons openly. See OFFICE OF THE

18   ATT'Y GEN., WEST VIRGINIA FIREARM LAWS 1 (October 2009), attached to Pl. Opp., Ex. B.[8] Thus,

19   just like in Chandler and Nunn, but unlike California, there is a ready alternative available to the

20   affected individuals–the ability to carry weapons openly if they cannot obtain a concealed weapon's

21   permit.

22       For the foregoing reasons, the Court is convinced the Heller decision cannot stand for the

23   broad proposition that *all* concealed weapon bans are presumptively constitutional. Accordingly, the

24

25       [8] The Court can properly take judicial notice of the documents appearing on a governmental

26   website, such as the Office of the Attorney General handbook attached to Plaintiff's Opposition. See, e.g., Paralyzed Veterans of Am. v. McPherson, No. C 06-4670 SBA, 2008 WL 4183981, at *5 (N.D.

27   Cal. Sept. 9, 2008) (noting that the information on government agency websites has often been treated as a proper subject for judicial notice and citing cases from numerous circuits). Accordingly, because

28   accuracy of the document attached to Plaintiff's Opposition "cannot reasonably be questioned" and because there is no objection to its accuracy by Defendant, the Court will take judicial notice of it. See FED. R. EVID. 201(b).

-9-

09-cv2371-IEG (BLM)

COLA Sep. Statement   00094

1   Court will proceed to determine whether Section 12050's application to Plaintiff's request for a permit

2   withstands the appropriate level of constitutional scrutiny.

3           *2.*    *Level of scrutiny*

4         The Supreme Court in Heller, while not designating any specific level of scrutiny for

5   evaluating Second Amendment restrictions, explicitly rejected the "rational basis" test. According to

6   the Supreme Court, the rational basis test "could not be used to evaluate the extent to which a

7   legislature may regulate a specific, enumerated right," such as "the right to keep and bear arms." 128

8   S. Ct. at 2818 n.27 (citation omitted). "If all that was required to overcome the right to keep and bear

9   arms was a rational basis, the Second Amendment would be redundant with the separate constitutional

10   prohibitions on irrational laws, and would have no effect." Id. The Heller majority also rejected an

11   "interest-balancing inquiry" suggested by the dissent that "'asks whether the statute burdens a

12   protected interest in a way or to an extent that is out of proportion to the statute's salutary effect upon

13   other important governmental interests." Id. at 2821. According to the Supreme Court, such a

14   "freestanding" approach, which is subject to future judges' assessments of the constitutional

15   guarantee's usefulness, "is no constitutional guarantee at all." Id.

16         With these standards out, the Court must choose between "strict scrutiny"–typically reserved

17   for laws that restrict certain fundamental rights, see Reno v. Flores, 507 U.S. 292, 301-02 (1993)–and

18   some form of "intermediate scrutiny."[9] Following Heller, courts have not been uniform in the level

19   of scrutiny that should be applied to Second Amendment restrictions. Some courts have applied strict

20   scrutiny,[10] others have used intermediate scrutiny,[11] and still others have either formulated their own

21

22          [9] When a fundamental right is recognized, substantive due process forbids infringement of that
23   right "*at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve
      a compelling state interest." Flores, 507 U.S. at 301-02 (citations omitted) (emphasis in original). On
24   the other hand, intermediate scrutiny allows the State to regulate the right at issue if necessary to
      further an important governmental interest. See Sell v. United States, 539 U.S. 166, 178-80 (2003).

25          [10] See, e.g., United States v. Engstrum, 609 F. Supp. 2d 1227, 1231-35 (D. Utah 2009)
26   (applying strict scrutiny and upholding 18 U.S.C. § 922(g)(9), which prohibits individuals convicted
      of domestic violence crimes from possessing firearms).

27          [11] See, e.g., United States v. Skoien, 587 F.3d 803, 810-14 (7th Cir. 2009) (applying
28   intermediate scrutiny and noting that the standard of review would "fluctuate with character and
      degree of the challenged law's burden on the right and sometimes also with the specific iteration of
      the right"); United States v. Miller, 604 F. Supp. 2d 1162, 1169-72 (W.D. Tenn. 2009) (applying

09cv2371-IEG (BLM)

COLA Sep. Statement   00095

1   tests or have upheld a challenged regulation without specifying a standard of review.[12]

2       At this stage of the proceedings, the Court need not decide which heightened level of scrutiny

3   applies because the government has failed to meet its burden even if the Court applies the more lenient

4   standard of "intermediate scrutiny." Under both "strict scrutiny" and "intermediate scrutiny" the

5   burden is on the government to show that the challenged law is constitutional, by demonstrating that

6   the law is either "narrowly tailored to serve a compelling state interest," Flores, 507 U.S. at 301-02

7   (citations omitted), or necessary to further an important governmental interest, Sell, 539 U.S. at 178-

8   80. In the present case, apart from arguing that Section 12050 is within one of the "presumptively

9   lawful" restrictions recognized in Heller and that it passes "rational basis" standard of review, the

10   government has made little effort to defend the statute's constitutionality under either of the

11   heightened levels of scrutiny.

12       3.    *Application to Plaintiff's case*

13       Accordingly, taking Plaintiff's allegations as true, his first cause of action for violation of the

14   Second Amendment appears to state a claim upon which relief can be granted. Twombly, 550 U.S.

15   at 570. Plaintiff alleges that he was denied a license to carry a concealed weapon by Defendant Gore's

16   predecessor because the SD License Division made a finding that Plaintiff did not have good cause

17   and was not a resident of San Diego–both of which are requirements under Section 12050. As an

18   initial matter, Plaintiff challenges the "good cause" requirement as violating his Second Amendment

19   right "to possess and carry weapons in case of confrontation." See Heller, 128 S. Ct. at 2797. The

20   Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ...

21   upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive

22   action in a case of conflict with another person.'" Id. at 2793 (quoting Muscarello v. United States,

23

24   intermediate scrutiny and upholding 18 U.S.C. § 922(g)(1), which prohibits possession of firearms by felons).

25      [12] See, e.g., United States v. Marzzarella, 595 F. Supp. 2d 596, 604-06 (W.D. Pa. 2009)

26   (fashioning a standard of review akin to content-neutral "time, place, and manner" test and upholding 18 U.S.C. § 922(k), which prohibits possession of a firearm if the individual has knowledge that the

27   firearm's serial number has been obliterated, removed, or altered); People v. Flores, 169 Cal. App. 4th 568, 573-77 & n.5 (upholding defendant's convictions for possession of a firearm by a person

28   prohibited from possessing a firearm (Cal. Penal Code § 12021(c)(1)), carrying a concealed firearm (Cal. Penal Code § 12025(a)(2)), and carrying a loaded firearm in a public place (Cal. Penal Code § 12031(a)(1)); and suggesting, but not deciding, that a mid-level standard of scrutiny analogous to the "undue burden" standard should apply).

- 11 -

COLA Sep. Statement   00096

1  524 U.S. 125, 143 (1998). Accordingly, by imposing a "good cause" requirement before a concealed

2  weapon's permit can be issued, the State undoubtedly infringes Plaintiff's right to "possess and carry

3  weapons in case of confrontation." See id. at 2797. For such infringement to pass constitutional

4  muster, Defendant must at the very least demonstrate that it is necessary to further an important

5  governmental interest. See Sell, 539 U.S. at 178-80. In the present case, Defendant has made very little

6  effort to either identify an "important governmental interest" or demonstrate the required "fit" between

7  the law and the interest served.[13] Accordingly, Defendant's Motion to Dismiss for failure to state a

8  claim Plaintiff's challenge to the "good cause" requirement of Section 12050 fails. Cf. Skoien, 587

9  F.3d at 814-15 (vacating and remanding where "the government has made little effort to discharge its

10  burden of demonstrating the relationship between § 922(g)(9)'s means and its end").

11     Plaintiff's challenge to the requirements of Section 12050 as applied by Defendants also

12  survives the Motion to Dismiss. Plaintiff alleges that he satisfies the "good cause" requirement

13  because he needs to carry a gun for self-defense, seeing as he is sixty years old and travels to high

14  crime areas for his job. (Pl. Opp., at 5-7.) Plaintiff also alleges that he satisfies the "residency"

15  requirement because he resides in San Diego at least four months out of the year, even though he does

16  so in a motor home. (Id. at 8-10.) Taking Plaintiff's allegations as true, Defendants' application of

17

18     [13] The Court does note that California law provides a number of exceptions, some of which
significantly undermine portions of Plaintiff's claims. For example, Section 12026(b) of the Penal
19  Code provides that no permit or license is necessary to possess, keep, or carry, "either openly or
concealed, a pistol, revolver, or other firearm capable of being concealed upon the person within the
20  citizen's or legal resident's place of residence, place of business, or on private property owned or
lawfully possessed by the citizen or legal resident." Because this exemption also applies to anyone
21  who is "temporarily within this state," nothing prevents Plaintiff from carrying a gun while inside of
his motor home. See CAL. PENAL CODE § 12026(b); accord id. § 12031(l) ("Nothing in this section
22  shall prevent any person from having a loaded weapon, if it is otherwise lawful, at his or her place of
residence, including any temporary residence or campsite."). Likewise, Section 12031(j) allows
23  carrying of a loaded firearm "by a person who reasonably believes that the person or property of
himself or herself or of another is in immediate, grave danger and that the carrying of the weapon is
24  necessary for the preservation of that person or property." However, this exemption is limited to the
"brief interval" between the notification of the local law enforcement agency and its arrival for
25  assistance. Id. § 12031(j).

26     Plaintiff's first cause of action is broader than any of these exceptions. What Plaintiff seeks
is enforcement of what he believes is the right guaranteed by the Second Amendment, as interpreted
27  in Heller, to carry a weapon that is "immediately capable of being used for its intended purpose," both
in his motor home and while on public property. (Pl. Opp., at 4-5.) At least at this stage of the
28  proceedings, even with the above exceptions in mind, the Court cannot say that as a matter of law,
Plaintiff's first cause of action either lacks cognizable legal theory, or alleges insufficient facts under
a cognizable legal theory. See SmileCare Dental Group, 88 F.3d at 783.

- 12 -

09cv2371-IEG (BLM)

COLA Sep. Statement   00097

1   Section 12050's requirements appears to infringe upon Plaintiff's right to "possess and carry weapons

2   in case of confrontation." See Heller, 128 S. Ct. at 2797. As already noted, for such infringement to

3   be in accord with the Second Amendment, Defendant must at the very least demonstrate that it is

4   necessary to further an important governmental interest. See Sell, 539 U.S. at 178-180. Seeing as

5   Defendant has failed to either identify an "important governmental interest" or demonstrate the

6   required "fit" between the law and the interest served, the Motion to Dismiss Plaintiff's challenge to

7   the "good cause" and "residency" requirements as applied by Defendants also fails. Cf. Skoien, 587

8   F.3d at 814-15.

9           4.    *Conclusion*

10       It is important to keep in mind the narrow issue before the Court at this stage of the

11   proceedings. The Court is not asked to, and does not, decide whether Section 12050 is constitutional.

12   Rather, the question is whether Plaintiff's complaint contains "enough facts to state a claim to relief

13   that is plausible on its face." Twombly, 550 U.S. at 570. The Court only reviews the contents of the

14   complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of

15   the nonmoving party. al-Kidd, 580 F.3d at 956 (citation omitted). In the present case, because

16   Plaintiff's complaint alleges sufficient facts to state a claim for relief and because Defendant's Motion

17   to Dismiss does little to identify an "important governmental interest" or to demonstrate the required

18   "fit" between the law and the interest served, the Court **DENIES** Defendant's Motion to Dismiss as

19   it relates to Plaintiff's first cause of action for violation of the Second Amendment.

20   **II.**    **Equal Protection**

21       **A.**    Parties' arguments

22       Plaintiff's second cause of action alleges that Defendant Gore's application of Section 12050's

23   "good cause" and "residency" requirements violates the Equal Protection Clause of the Fourteenth

24   Amendment. Defendant argues there is no equal protection violation because the government can

25   legitimately treat differently persons dissimilarly situated. Moreover, because no suspect classification

26   or fundamental right is involved, Defendant argues the Court should apply rational basis to Plaintiff's

27   challenge. According to Defendant, Plaintiff's second cause of action should be dismissed because

28   it is both rational and reasonable to deny a permit to an individual, such as Plaintiff, who only

occasionally visits San Diego and who voluntarily places himself in dangerous situations and places.

COLA Sep. Statement   00098

1   Plaintiff opposes the application of "rational basis" standard of review as contrary to the

2   Supreme Court's decision in Heller. According to Plaintiff, with heightened level of scrutiny applied,

3   there is no justification for treating Plaintiff differently than other residents of San Diego County.

4   First, Plaintiff argues that, as used in Section 12050, "residency" refers to something temporary in

5   nature, as opposed to the fixed nature of "domicile."[14] Thus, because he resides full-time in his motor

6   home and rents space at Campland on the Bay for at least four months during the year, Plaintiff alleges

7   he satisfies the "residency" requirement of Section 12050. (Pl. Opp., at 11-13.) Second, Plaintiff

8   argues he meets the "good cause" requirement because he needs a gun to protect himself and his wife

9   when he travels on business and when they travel to remote areas in their motor home. (Id. at 13-14.)

10   **B.   Analysis**

11   The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny

12   to any person within its jurisdiction the equal protection of the laws, which is "essentially a direction

13   that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr.,

14   473 U.S. 432, 439 (1985) (citation omitted). "The general rule is that legislation is presumed to be

15   valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate

16   state interest." Id. at 440 (citations omitted). This general rule gives way, however, where a statute

17   classifies by race, alienage, or national origin, or impinges on personal rights protected by the

18   Constitution. Id. When that is the case, the challenged law is subjected to strict scrutiny and will be

19   upheld only if it is "suitable tailored to serve a compelling state interest." Id. Moreover, laws that

20   classify based on other characteristics beyond the individual's control, such as gender and

21   illegitimacy, are subject to a somewhat heightened review, and will be upheld only if "substantially

22   related to a sufficiently important governmental interest." Id. at 440-41 (citations omitted).

23   Contrary to Defendant's arguments, the Supreme Court in Heller explicitly rejected "rational

24   basis" as the applicable standard of review for Second Amendment restrictions. See 128 S. Ct. at 2818

25   n.27. Accordingly, the Court has to apply one of the heightened levels of scrutiny to Plaintiff's

26   ─────────────────────

27   [14] Plaintiff urges the Court to adopt the definition of "residency" used in Section 349(c) of the California Election Code, which provides that: "The residence of a person is that place in which the

28   person's habitation is fixed for some period of time, but wherein he or she does not have the intention of remaining. At a given time, a person may have more than one residence." The Court need not decide this issue, however, because as noted below, even if the Court adopts the definition suggested by Defendant, Plaintiff appears to be a "resident" of San Diego County. See infra Part II.B.1.

- 14 -                        09cv2371-IEG (BLM)

COLA Sep. Statement   00099

1    challenge to Section 12050. In the present case, the Court need not decide which specific standard

2    controls because Defendant's Motion to Dismiss fails even if the Court applies "intermediate

3    scrutiny." As already noted in Part I above, Defendant has made very little effort to either identify an

4    "important governmental interest" or show how the challenged law is "substantially related" to that

5    interest. Cf. Skoien, 587 F.3d at 814-15. Thus, as long as Plaintiff can demonstrate that he is "similarly

6    situated" to other San Diego County residents and was "treated differently" by Defendants, his second

7    cause of action for violation of the Equal Protection Clause would survive the motion to dismiss.

8         *1.      Similarly situated*

9         Defendant urges the Court to find that Plaintiff is not "similarly situated" to other San Diego

10   County residents because his residence in San Diego is only temporary. In this regard, Defendant asks

11   the Court to adopt the definition of "residency" used in Section 17014(a) of the Revenue and Taxation

12   Code, which defines a resident as "[e]very individual who is in this state for other than a temporary

13   or transitory purpose." Defendant's argument is undercut, however, by the California Code of

14   Regulations, which clarifies the meaning of "temporary or transitory purpose" as used in Section

15   17014(a):

16        Whether or not the purpose for which an individual is in this State will be considered
          temporary or transitory in character will depend to a large extent upon the facts and
17        circumstances of each particular case. It can be stated generally, however, that if an
          individual is simply passing through this State on his way to another state or country,
18        or is here for a brief rest or vacation, or to complete a particular transaction, or perform
          a particular contract, or fulfill a particular engagement, which will require his presence
19        in this State for but a short period, he is in this State for temporary or transitory
          purposes, and will not be a resident by virtue of his presence here.
20
          If, however, an individual is in this State to improve his health and his illness is of such
21        a character as to require a relatively long or indefinite period to recuperate, or he is
          here for business purposes which will require a long or indefinite period to accomplish,
22        or is employed in a position that may last permanently or indefinitely, or has retired
          from business and moved to California with no definite intention of leaving shortly
23        thereafter, he is in the State for other than temporary or transitory purposes, and,
          accordingly, is a resident taxable upon his entire net income even though he may retain
24        his domicile in some other state or country.

25   CAL. CODE REGS. tit. 18, § 17014 (2009). In the present case, Plaintiff alleges that: (1) he and his wife

26   have maintained and had nearly exclusive use of a single room in a residence located at 3151 Driscoll

27   Drive, San Diego for the past 15 years, where they have kept a wardrobe and other personal items; (2)

28   they have resided regularly in San Diego since 2007, including continuously living in San Diego for

     two months between February 2007 and April 2007, as well as five months between November 15,

                                          - 15 -                              09cv2371-IEG (BLM)

COLA Sep. Statement   00100

1   2008 and April 15, 2009; and (3) he has a California identification card identifying San Diego as his

2   place of residence. (Compl. ¶¶ 17-22; Pl. Opp., at 8-10, 11-13, Ex. D.) Given these facts, which the

3   Court must accept as true at this stage of the proceedings, Plaintiff's presence in San Diego appears

4   to be more than "temporary or transitory" even under the definition urged by Defendant. Accordingly,

5   Plaintiff alleged sufficient facts to demonstrate he is a "resident" of San Diego County and therefore

6   is "similarly situated" to other San Diego County residents.

7          2.      *Treated differently*

8          According to Plaintiff, he was denied a license to carry a concealed weapon by Defendant

9   Gore's predecessor because the SD License Division made a finding that Plaintiff's need for self-

10  defense was not a "good cause" and because his residency in a motor home did not meet the

11  "residency" requirement. Taking these allegations as true, Plaintiff alleges sufficient facts to

12  demonstrate he was treated differently than other similarly situated individuals.

13         3.      *Conclusion*

14         For the foregoing reasons, because Plaintiff's complaint alleges sufficient facts to state a claim

15  for relief and because Defendant's Motion to Dismiss does little to identify an "important

16  governmental interest" or to demonstrate the required "fit" between the law and the interest served,

17  the Court **DENIES** Defendant's Motion to Dismiss as it relates to Plaintiff's second cause of action

18  for violation of the Equal Protection Clause.

19  **III.    Right to Travel**

20         **A.    Parties' arguments**

21         Plaintiff's third cause of action alleges that Defendants' requirement of full-time residence

22  violates his right to travel under the Fourteenth Amendment. Defendant moves to dismiss this cause

23  of action, arguing that Section 12050 does not actually deter the right to travel, impeding travel is not

24  one of its primary objectives, and it does not use any classification which serves to penalize the

25  exercise of that right. On the other hand, Plaintiff argues Defendants' application of the statute does

26  actually deter his right to travel because "San Diego residents, such as Plaintiff, must stay fulltime in

27  San Diego in order to have any sort of opportunity to apply and be granted a concealed carrying

28  weapons permit." (Pl. Opp., at 15.)

        //

                                              - 16 -                              09cv2371-IEG (BLM)

B.    Analysis

The constitutional "right to travel"[15] embraces at least three different components: (1) it protects the right of a citizen of one State to enter and to leave another State; (2) the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and (3) for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State. Saenz v. Roe, 526 U.S. 489, 500 (1999). However, not all regulations that merely have an effect on travel raise an issue of constitutional dimension. Rather, "[a] state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." Soto-Lopez, 476 U.S. at 903 (plurality) (internal quotation marks and citations omitted).

In all cases, the analysis is informed by the same guiding principle–the right to travel "protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents." Id. at 904 (citations omitted). Whenever a state law burdens the right to travel, the court must apply strict scrutiny and ask whether the challenged law is "necessary to further a compelling state interest." Id. at 904-05 & n.4 (citations omitted); accord Saenz, 526 U.S. at 499 (citing Shapiro v. Thompson, 394 U.S. 618, 634 (1969)). Accordingly, in the present case, the Court must engage in a two-step analysis: (1) determine whether Defendants' alleged requirement of full-time residence penalizes certain individuals, such as Plaintiff, with respect to their right to travel; and (2) if it does, Plaintiff "must prevail" unless Defendant can demonstrate that the requirement is "necessary to accomplish a compelling state interest." See Soto-Lopez, 476 U.S. at 906 (plurality) (citations omitted); Saenz, 526 U.S. at 499 (citation omitted).

*1.    Does the requirement of full-time residence "penalize" Plaintiff?*

Not all waiting periods and residency conditions are impermissible. Soto-Lopez, 476 U.S. at 903-06 (plurality). Rather, it is important to distinguish between "bona fide residence requirements, which seek to differentiate between residents and nonresidents," and "residence requirements, such

---

[15] Although the Supreme Court has made it clear that the "right to travel" exists, it has struggled in identifying the precise constitutional source of that right. See, e.g., Att'y Gen. of New York v. Soto-Lopez, 476 U.S. 898, 902-03 (1986) (plurality) (noting that the right has been inferred from federal structure of Government, and found variously in Privileges & Immunities Clause of Article IV, Commerce Clause, and Privileges & Immunities Clause of the Fourteenth Amendment).

- 17 -

09cv2371-IEG (BLM)

COLA Sep. Statement   00102

1   as durational, fixed date, and fixed point residence requirements, which treat established residents

2   differently based on the time they migrated into the State." Id. at 903 n.3 (citations omitted).

3         In the present case, Plaintiff alleges he is being penalized because Defendants' requirement

4   of full-time residence "actually deters" him from traveling and spending time outside of San Diego.

5   (Pl. Opp., at 15.) It is well-established "that a State may not impose a penalty upon those who exercise

6   a right guaranteed by the Constitution." Harman v. Forssenius, 380 U.S. 528, 540 (1965) (citation

7   omitted); accord Dunn v. Blumstein, 405 U.S. 330, 340-41 (1972). "Constitutional rights would be

8   of little value if they could be ... indirectly denied, or manipulated out of existence." Harman, 380 U.S.

9   at 540 (internal quotation marks and citations omitted). Taking Plaintiff's allegations as true, it

10  appears the "residency" requirement as applied by Defendants does actually deter individuals such

11  as Plaintiff from exercising their right to travel in that they are being "penalized" for traveling and

12  spending time outside of San Diego by not being able to obtain a concealed weapon's permit.

13        2.      Does the requirement of full-time residence pass "strict scrutiny"?

14        Whenever a state law burdens the right to travel, the court must apply strict scrutiny and ask

15  whether the challenged law is "necessary to further a compelling state interest." Soto-Lopez, 476 U.S.

16  at 904-05 & n.4 (plurality) (citations omitted); accord Saenz, 526 U.S. at 499 (citing Shapiro, 394 U.S.

17  at 634). The heavy burden of justification is on the State, and the court will closely scrutinize the

18  challenged law in light of its asserted purposes. Dunn, 405 U.S. at 343. In the present case, Defendant

19  has failed either to identify a "compelling state interest" or to demonstrate that the challenged law is

20  "necessary" to further that interest. Accordingly, the Court DENIES Defendant's Motion to Dismiss

21  as it relates to Plaintiff's third cause of action for violation of his right to travel.

                                    **CONCLUSION**

23        For the foregoing reasons, because Plaintiff's complaint alleges sufficient facts to state claims

24  for relief that are plausible on their face, the Court DENIES the Motion to Dismiss in its entirety.

25        **IT IS SO ORDERED.**

26

27  DATED: January 14, 2010

28                                    _Irma E. Gonzalez_
                                     **IRMA E. GONZALEZ, Chief Judge**
                                     **United States District Court**

                                    - 18 -                              09cv2371-IEG (BLM)

COLA Sep. Statement   00103

Case 2:09-cv-01235-MCE-KJM   Document 8   Filed 05/07/2009   Page 1 of 10

1   Alan Gura (Calif. Bar No. 178221)
    Gura & Possessky, PLLC
2   101 N. Columbus St., Suite 405
    Alexandria, VA 22314
3   703.835.9085/Fax 703.997.7665

4   Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)
    Law Offices of Donald Kilmer, A.P.C.
5   1645 Willow Street, Suite 150
    San Jose, CA 95125
6   408.264.8489/Fax 408.264.8487

7
                    IN THE UNITED STATES DISTRICT COURT
8
                   FOR THE EASTERN DISTRICT OF CALIFORNIA
9

10  Deanna Sykes, Andrew Witham,          )   Case No. 2:09-cv-01235-MCE-KJM
    Adam Richards, Second Amendment       )
11  Foundation, Inc., and The Calguns     )
    Foundation, Inc.,                     )   FIRST AMENDED COMPLAINT
12                                        )
                 Plaintiffs,              )   42 U.S.C. §§ 1983, 1988
13                                        )
                                          )
14               v.                       )
                                          )
15  John McGinness, County of Sacramento, )
    Ed Prieto, and County of Yolo,        )
16                                        )
                 Defendants.              )
17

18                          **COMPLAINT**

19       COME NOW the Plaintiffs, Deanna Sykes, Andrew Witham, Adam Richards, Second

20  Amendment Foundation, Inc. ("SAF"), and The Calguns Foundation, Inc. ("CGF"), by and

21  through undersigned counsel, and complain of Defendants as follows:

                            **THE PARTIES**
22
         1.      Plaintiff Deanna Sykes is a natural person and a citizen of the United States and of
23
    the State of California, residing in Sacramento County, California. Plaintiff Sykes is a member of
24
    SAF and a supporter of and participant in CGF activities.
25
         2.      Plaintiff Andrew Witham is a natural person and a citizen of the United States and
26
    of the State of California, residing in Sacramento County, California. Plaintiff Witham is a
27
    member of SAF and a supporter of and participant in CGF activities.
28

Complaint                        Page 1 of 10          *Sykes, et al. v. McGinness, et al.*

COLA Sep. Statement   00104

1      3.      Plaintiff Adam Richards is a natural person and a citizen of the United States and

2 of the State of California, residing in Yolo County, California. Plaintiff Richards is a member of

3 SAF and a supporter of and participant in CGF activities.

4      4.      Plaintiff Second Amendment Foundation, Inc. is a non-profit membership

5 organization incorporated under the laws of Washington with its principal place of business in

6 Bellevue, Washington. SAF has over 650,000 members and supporters nationwide, including

7 California. The purposes of SAF include education, research, publishing and legal action

8 focusing on the Constitutional right to privately own and possess firearms, and the consequences

9 of gun control. SAF brings this action on behalf of itself and its members.

10      5.      Plaintiff The Calguns Foundation, Inc. is a non-profit organization incorporated

11 under the laws of California with its principal place of business in Redwood City, California. The

12 purposes of CGF include supporting the California firearms community by promoting education

13 for all stakeholders about California and federal firearm laws, rights and privileges, and

14 defending and protecting the civil rights of California gun owners.  CGF represents these

15 members and supporters, which include California gun owners. CGF brings this action on behalf

16 of itself and its supporters, who possess all the indicia of membership.

17      6.      Defendant County of Sacramento is a municipal entity organized under the

18 Constitution and laws of the State of California.

19      7.      Defendant John McGinness is the Sheriff of Sacramento County, and as such, he

20 is responsible for formulating, executing and administering Sacramento County's laws, customs,

21 practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and

22 practices against plaintiffs, and is in fact presently enforcing the challenged laws, customs and

23 practices against plaintiffs.  Defendant McGinness is sued in both his individual and official

24 capacities.

25      8.      Defendant County of Yolo is a municipal entity organized under the Constitution

26 and laws of the State of California.

27      9.      Defendant Ed Prieto is the Sheriff of the County of Yolo, and as such, he is

28 responsible for formulating, executing and administering Yolo County's laws, customs,

---

Complaint                   **Page 2 of 10**             *Sykes, et al. v. McGinness, et al.*

COLA Sep. Statement   00105

1   practices, and policies at issue in this lawsuit; has enforced the challenged laws, customs and

2   practices against plaintiffs, and is in fact presently enforcing the challenged laws, customs and

3   practices against plaintiffs.  Defendant Prieto is sued in both his individual and official

4   capacities.

5                     **JURISDICTION AND VENUE**

6       10.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

7   §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

8       11.    Venue lies in this Court pursuant to 28 U.S.C. § 1391.

9                     **STATEMENT OF FACTS**

10                     *Background*

11       12.    The Second Amendment to the United States Constitution provides: "A well

12   regulated Militia being necessary to the security of a free State, the right of the people to keep

13   and bear Arms shall not be infringed."

14       13.    The Second Amendment is incorporated as against the states through the

15   Fourteenth Amendment, such that Defendants cannot, under color of law, deprive Plaintiffs of

16   their right to keep and bear arms.

17       14.    The Second Amendment guarantees the right of law-abiding individuals to

18   publicly carry operational handguns for self-defense.

19       15.    States retain the ability to regulate the manner of carrying handguns, prohibit the

20   carrying of handguns in specific, narrowly defined sensitive places, prohibit the carrying of arms

21   that are not within the scope of Second Amendment protection, and disqualify specific,

22   particularly dangerous individuals from carrying handguns.

23       16.    States may not completely ban the carrying of handguns for self-defense, deny

24   individuals the right to carry handguns in non-sensitive places, deprive individuals of the right to

25   carry handguns in an arbitrary and capricious manner, or impose regulations on the right to carry

26   handguns that are inconsistent with the Second Amendment.

27       17.    Almost all states basically respect the Second Amendment rights to carry a

28   handgun for self-defense, in that the right to carry a handgun is either unregulated, or regulated to

COLA Sep. Statement   00106

1   the extent that individuals passing a background check and completing a gun safety course are, as

2   a matter of course, licensed to carry handguns. In some of these states, a license to carry a

3   handgun is required only if the handgun is concealed.

4       18.    California law generally bans the carrying of concealed firearms. California Penal

5   Code § 12025. With very few exceptions, California generally prohibits the open, public carrying

6   of loaded handguns for self-defense in incorporated cities and many unincorporated areas, Penal

7   Code § 12031.

8       19.    California law allows the carrying of loaded handguns in public, for self-defense,

9   upon issuance of a permit to carry a concealed handgun or, in certain counties, a license to carry

10  an exposed handgun. Penal Code § 12050(a).

11      20.    Applicants seeking a license to carry a handgun must pass a criminal background

12  check, Penal Code §12052, and successfully complete a course of training in the proper use of

13  handguns. Penal Code § 12050(a)(1)(E). Applications for a permit to carry a handgun are made

14  to the Sheriff of the county in which the applicant either resides or spends a substantial period of

15  time in owing to the applicant's principal place of employment or business being located in that

16  county. Alternatively, application may be made to the chief or other head of a municipal police

17  department of any city or city and county in which the applicant resides.

18      21.    In addition to the successful completion of a background check and training, the

19  issuance of a permit to carry a handgun is left to the discretion of the issuing authority, based

20  upon that authority's determination of whether the applicant "is of good moral character, [and]

21  that good cause exists for the issuance" of the permit. Penal Code §§ 12050(a)(1)(A), (B). In

22  practice, the issuance of permits varies widely among California jurisdictions. Some issuing

23  authorities almost never issue handgun carry permits, others issue permits only occasionally, and

24  yet others liberally issue permits to most if not all law-abiding applicants.

25                                *Violations of Plaintiffs' Right to Bear Arms*

26      22.    Plaintiff Deanna Sykes, a lesbian, is concerned that her sexual orientation might

27  increase the odds that she would be targeted with criminal violence. The State of California has

28  recognized that violent crime directed at gay and lesbian people is a problem requiring specific

---

Complaint                          Page 4 of 10                 *Sykes, et al. v. McGinness, et al.*

1  legislative attention. California Penal Code §§ 422.55(a)(6), 422.6 and California Civil Code §

2  51.7. Plaintiff Sykes is also a competitive shooter and firearm instructor, and thus frequently

3  transports quantities of firearms and ammunition throughout the Sacramento area. As small-

4  statured woman traveling alone with guns and ammunition, Plaintiff may be particularly

5  vulnerable to criminal attack. Even apart from her sexual orientation and firearm-related

6  activities, Plaintiff Sykes is not immune from the risk of criminal behavior. She seeks to exercise

7  her Second Amendment right to carry a handgun for personal protection.

8      23.    The Second Amendment right to carry a handgun, and the inherent right of self-

9  defense and self-preservation it advances, are not considered by Defendant Sacramento County to

10  constitute "good cause" for the issuance of a handgun carry permit.

11      24.    Defendant Sheriff McGinness is continuing Sacramento County's "good cause"

12  policy for denying applications for gun carry permits. On a public website maintained by

13  Defendant Sacramento County, Defendant McGinness lays out his policy for determining

14  applications to carry handguns. Defendant McGinness explains that "[t]he mere fear of

15  victimization, or desire to carry a firearm, shall be insufficient" "good cause" to issue a gun carry

16  permit. Defendant McGinnis also explains that "[w]hat may be good cause in one area of the

17  county may not be in another area."

18      25.    Pursuant to Defendant Sacramento County's "good cause" policy, Plaintiff Sykes

19  was denied a permit to carry a handgun by Defendant McGinnis's predecessor, and it is obvious

20  that re-submission of the same application to Defendant McGinnis would be a futile act.

21      26.    But for the lack of a permit to carry a handgun, Plaintiff Sykes would carry an

22  operational handgun in public for self-defense.

23      27.    Plaintiff Andrew Witham emigrated to California from the United Kingdom on

24  October 31, 1998, and became a naturalized American citizen on January 22, 2003. In the United

25  Kingdom, Plaintiff Witham served nearly sixteen years as a British Reserve Sworn police officer

26  (Special Constable), earning the Queen's Medal for Long Service and Good Conduct.

27      28.    Between 2000 and 2004, Plaintiff Witham served as a non-sworn Community

28  Service Officer with the Redding Police Department, earning the annual Merit Award in 2001.

Complaint                  Page 5 of 10            *Sykes, et al. v. McGinness, et al.*

COLA Sep. Statement   00108

1    29.    On December 10, 2006, Plaintiff Witham completed the basic course required to

2   obtain a handgun carry permit in Shasta County, as well as the course of training required to

3   obtain a permit to carry an exposed firearm from the California Bureau of Security and

4   Investigative Services.  Since then, Plaintiff Witham has re-qualified four times for the exposed

5   handgun permit, which he currently possesses, along with a Private Investigator license.

6    30.    Plaintiff Witham's Private Investigator license, in conjunction with his Exposed

7   Firearm Permit, allows him to carry an exposed, loaded handgun in California but only while he

8   is engaged in the course and scope of his work as a private investigator.

9    31.    Since January 2, 2008, Plaintiff Witham has been employed as a Public Safety

10   Officer at McGeorge School of Law, University of the Pacific. The position is that of a

11   uniformed, non-sworn law enforcement officer on the campus of a private university. Plaintiff

12   Witham works late night and early morning shifts, requiring him to travel to and from work

13   through some of Sacramento's most crime-plagued areas..

14    32.    In 2005, while employed as Security and Surveillance Manager for an Indian

15   casino in Shasta County, Plaintiff Witham reported several tribal members embezzling from the

16   casino. Owing to this incident, Plaintiff Witham received death threats and various other threats

17   of violence and intimidation, including the leaving of dead animals in his driveway. The Sheriff

18   of Shasta County issued Plaintiff Witham a license to carry a handgun in January, 2007, which

19   was to last for two years.

20    33.    On or about July, 2007, Plaintiff Witham relocated from Shasta to the City of

21   Fairfield, in Solano County.  As required by law, Plaintiff Witham notified the Sheriff of Shasta

22   County of this move.

23    34.    On or about July, 2008, Plaintiff Witham relocated from Solano County to

24   Sacramento County, and again notified the Sheriff of Shasta County of this move. Within days,

25   Plaintiff Witham's permit to carry a handgun was revoked. Plaintiff Witham has reason to

26   believe this was done at the request of Defendant McGinness, pursuant to the custom, policy, or

27   practice of Defendant Sacramento County.

28   ///

Complaint                          Page 6 of 10          *Sykes, et al. v. McGinness, et al.*

COLA Sep. Statement   00109

35. Plaintiff Witham contacted Defendant McGinness's office to inquire about the revocation of his permit to carry a handgun, and was advised that a permit would have to be issued by Defendant McGinness. Plaintiff Witham was further advised that application for a permit to carry a handgun could not be made by individuals residing in Sacramento County for less than 12 months, in the absence of a letter attesting to the applicant's good character from the issuing authority of the applicant's previous gun permit.

36. Plaintiff was advised that as a matter of policy, the Sheriff of Shasta County does not issue letters of the sort required by Defendant McGinness.

37. Although Defendant McGinness does not require that handgun carry permit applicants complete the required training prior to making their applications, Plaintiff Witham was certified on December 16, 2008, in 24 hours POST PC 832 Firearms Familiarization at the Sacramento Regional Public Safety Training Center, an approved course for issuance of a handgun carry permit in Sacramento County.

38. However, owing to the fact that Plaintiff Witham has not been a resident of Sacramento County for over 12 months, Defendant McGinness refuses to even provide Plaintiff Witham with the form for applying for a handgun carry permit.

39. But for the lack of a permit to carry a handgun, Plaintiff Witham would carry an operational handgun in public for self-defense.

40. In March, 2009, Plaintiff Adam Richards, a law-abiding citizen who wishes to exercise his right to bear arms, contacted Defendant Prieto's office to inquire about the process for obtaining a permit to carry a handgun. Defendant Prieto's office advised Plaintiff Richards that the desire to have a gun available for self-defense would not constitute "good cause" for the issuance of the permit, and that his application would be a futile act. Defendant Prieto's written policy regarding the issuance of gun carry permits includes among "examples of invalid reasons to request a permit" "self-protection and protection of family (without credible threats of violence)." Plaintiff Richards was further advised that as a matter of policy, his application would not be considered unless he first applied to the Chief of Police in the City of Davis, where Plaintiff Richards resides.

COLA Sep. Statement    00110

1    41.   Plaintiff Richards subsequently applied to Davis Police Chief Lanny Black for a

2   permit to carry a handgun. On April 1, 2009, Police Chief Black denied Plaintiff Richards'

3   application for a permit to carry a handgun, stating in writing:

4           An evaluation and comparison of our current services to available resources has forced us
            to discontinue processing and issuing CCW (Carry Concealed Weapon) licenses. I
5           apologize for the inconvenience this action will cause you.

6   Chief Black suggested Plaintiff Richards apply to Defendant Prieto for a permit.

7    42.   But for the lack of a permit to carry a handgun, Plaintiff Richards would carry an

8   operational handgun in public for self-defense.

9                              **FIRST CLAIM FOR RELIEF**
                   **U.S. CONST., AMEND. II, 42 U.S.C. § 1983**
10                           **AGAINST ALL DEFENDANTS**

11   43.   Paragraphs 1 through 42 are incorporated as though fully stated herein.

12   44.   Plaintiffs are law abiding individuals, competent in the safe handling and

13   operation of handguns. Accordingly, there exists no reason to deny Plaintiffs permits to carry a

14   handgun under California Penal Code § 12050.

15   45.   By maintaining and enforcing a set of customs, practices, and policies depriving

16   Plaintiffs of permits to carry handguns, including but not limited to requiring subjective "good

17   cause" beyond the interest in self-defense and conditioning the consideration of a handgun carry

18   permit application on a durational residency requirement, Defendants are propagating customs,

19   policies, and practices that violate the Second and Fourteenth Amendments to the United States

20   Constitution, damaging Plaintiffs in violation of 42 U.S.C. § 1983.  Plaintiffs are therefore

21   entitled to permanent injunctive relief against such customs, policies, and practices.

22                            **SECOND CLAIM FOR RELIEF**
       **U.S. CONST., AMEND. XIV – EQUAL PROTECTION, 42 U.S.C. § 1983**
23                           **AGAINST ALL DEFENDANTS**

24   46.   Paragraphs 1 through 45 are incorporated as though fully stated herein.

25   47.   By maintaining and enforcing a set of customs, practices, and policies arbitrarily

26   denying Plaintiffs permits to carry handguns based on a subjective determination of their "good

27   cause" for the permit and their length of residence in the county, Defendants are propagating

28   customs, policies, and practices that violate Plaintiffs' rights to equal protection of the laws under

COLA Sep. Statement   00111

1    the Fourteenth Amendment to the United States Constitution, damaging Plaintiffs in violation of

2    42 U.S.C. § 1983.  Plaintiffs are therefore entitled to permanent injunctive relief against such

3    customs, policies, and practices.

4                       **THIRD CLAIM FOR RELIEF**
**U.S. CONST., AMEND. XIV – DUE PROCESS, 42 U.S.C. § 1983**

5         **AGAINST DEFENDANTS MCGINNESS AND SACRAMENTO COUNTY**

6          48.      Paragraphs 1 through 47 are incorporated as though fully stated herein.

7          49.      Plaintiff Witham had a cognizable property interest in his permit to carry a

8    handgun, the revocation of which was caused by Defendants McGinness and Sacramento County

9    without sufficient due process. Defendants are propagating customs, policies, and practices that

10   violate Plaintiff Witham's right to due process under the Fourteenth Amendment to the United

11   States Constitution, damaging Plaintiff in violation of 42 U.S.C. § 1983.  Plaintiff is therefore

12   entitled to permanent injunctive relief against such customs, policies, and practices.

13                     **FOURTH CLAIM FOR RELIEF**
**U.S. CONST., AMEND. XIV – RIGHT TO TRAVEL, 42 U.S.C. § 1983**

14       **AGAINST DEFENDANTS MCGINNESS AND SACRAMENTO COUNTY**

15         50.      Paragraphs 1 through 49 are incorporated as though fully stated herein.

16         51.      The Fourteenth Amendment guarantees individuals the right to interstate and

17   intrastate travel.

18         52.      By demanding that individuals reside in Sacramento County for a year before

19   allowing them to apply for a permit to carry a handgun, Defendants McGinness and Sacramento

20   County are propagating customs, policies, and practices that violate Plaintiffs' right to travel

21   under the Fourteenth Amendment to the United States Constitution, damaging Plaintiffs in

22   violation of 42 U.S.C. § 1983. Plaintiffs are therefore entitled to permanent injunctive relief

23   against such customs, policies, and practices.

24                          **PRAYER FOR RELIEF**

25         WHEREFORE, Plaintiffs request that judgment be entered in their favor and against

26   Defendants as follows:

27         1.      An order permanently enjoining Defendants, their officers, agents, servants,

28   employees, and all persons in active concert or participation with them who receive actual notice

---

Complaint                  Page 9 of 10           *Sykes, et al. v. McGinness, et al.*

COLA Sep. Statement   00112

1  of the injunction, from enforcing the "good moral character" and "good cause" requirements of

2  California Penal Code § 12050 against handgun carry permit applicants who seek the permit for

3  self-defense and are otherwise qualified to obtain a handgun carry permit under that section;

4      2.    An order permanently enjoining Defendants, their officers, agents, servants,

5  employees, and all persons in active concert or participation with them who receive actual notice

6  of the injunction, from requiring any duration of local residence prior to accepting an application

7  under California Penal Code § 12050;

8      3.    Declaratory relief that the "good moral character" and "good cause" provisions of

9  California Penal Code § 12050 are unconstitutional either on their face and/or as applied to bar

10  applicants who are otherwise legally qualified to possess firearms and who assert self-defense as

11  their "good cause" for seeking a handgun carry permit;

12      4.    Costs of suit, including attorney fees and costs pursuant to 42 U.S.C. § 1988;

13      5.    Any other further relief as the Court deems just and appropriate.

14      Dated: May 7, 2009          Respectfully submitted,

15  Donald E.J. Kilmer, Jr. (Calif. Bar No. 179986)    Alan Gura (Calif. Bar No. 178221)
    Law Offices of Donald Kilmer, A.P.C.    Gura & Possessky, PLLC

16  1645 Willow Street, Suite 150    101 N. Columbus St., Suite 405
    San Jose, CA 95125    Alexandria, VA 22314

17  408.264.8489/Fax 408.264.8487    703.835.9085/Fax 703.997.7665
    E-Mail: Don@DKLawOffice.com

18                     By:

19                          Alan Gura

20                      Attorneys for Plaintiffs

21

22

23

24

25

26

27

28

Complaint                 Page 10 of 10        *Sykes, et al. v. McGinness, et al.*