**CARMEN A. TRUTANICH**, City Attorney (SBN 86629x)
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE,** Assistant City Attorney
**ELIZABETH MITCHELL,** Deputy City Attorney (SBN 251139)
200 North Main Street
6th Floor, City Hall East
Los Angeles, CA  90012
Email: elizabeth.mitchell@lacity.org
Phone No.: (213) 978-6958
Fax No.: (213) 978-8785

*Attorneys for Defendants* CHARLIE BECK and CITY OF LOS ANGELES

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JONATHAN BIRDT, <br><br> Plaintiff, <br><br> v. <br><br> CHARLIE BECK, LEE BACA, THE LOS ANGELES POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFFS DEPARTMENT, DOES 1 to 50, *inclusive*, <br><br> Defendants. | CASE NO. CV10-8377 RGK (JEM) <br><br> **NOTICE OF RECENT DECISION GRANTING SUMMARY JUDGMENT TO COUNTY OF YOLO** |

Defendants CHARLIE BECK and THE LOS ANGELES POLICE DEPARTMENT hereby notify Court and Counsel of a recent decision issued by Judge England of the Eastern District of California in *Richards v. Prieto*, CV0901235 MCE (DAD), attached hereto, which deals with similar issues as the instant case and may be instructive.

///
///
///
///
///
///

1

Plaintiffs in the *Richards* case filed suit against the County of Yolo challenging the County's Concealed Carry Weapons ("CCW") permit policy and its "good cause" definition under California Penal Code Section 12050 as violating the 2nd and 14th Amendments of the United States Constitution. Judge England granted Summary Judgment to the County of Yolo.

DATED: May 17, 2011

**CARMEN A. TRUTANICH**, City Attorney
**GARY G. GEUSS**, Chief Assistant City Attorney
**CORY M. BRENTE**, Supervising Asst. City Attorney

By _____
**ELIZABETH MITCHELL**
Deputy City Attorney
Attorneys for Defendant **CITY OF LOS ANGELES**

2

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

ADAM RICHARDS et al.,                     No. 2:09-cv-01235 MCE-DAD

    Plaintiffs,

  v.                                       **MEMORANDUM AND ORDER**

COUNTY OF YOLO and YOLO COUNTY
SHERIFF ED PRIETO,

    Defendants.

----ooOoo----

Plaintiffs Adam Richards, Brett Stewart, the Second Amendment Foundation, Inc., and The Calguns Foundation, Inc. (collectively, "Plaintiffs") seek redress from Sheriff Ed Prieto and the County of Yolo (collectively, "Defendants") after Plaintiffs Richards and Stewart were denied gun permits under Yolo County's, and by extension Sheriff Prieto's, concealed weapon licensing policy. Both Plaintiffs and Defendants have filed Motions for Summary Judgment. A hearing on the matter was held on March 10, 2011. For the reasons set forth below, Plaintiffs' Motion is denied and Defendants' Motion is granted.

Case 2:10-cv-08377-JAK -JEM   Document 84   Filed 05/17/11   Page 4 of 18   Page ID
 #:1163
Case 2:09-cv-01235-MCE -DAD   Document 72   Filed 05/16/11   Page 2 of 16

BACKGROUND

A.  **Concealed Weapon License Policy**

California law generally prohibits individuals from carrying a concealed firearm in public.[1] See Cal. Penal Code §§ 12025(a)(2), 12027. With a permit and for self-defense purposes, one can obtain a license in California to carry a firearm "capable of being concealed upon the person." Penal Code § 12050(a)(1)(A)(i). However, applicants for such a license must provide good cause for applying, and demonstrate they are of "good moral character." Penal Code § 12050(a). Other requirements include a background check and completion of a training course. See id. Beyond these basic requirements, the state grants each municipal or county authority wide latitude to determine both the appropriate criteria for issuing a license and the need to impose any reasonable restrictions on the licensee. Penal Code § 12050(b).

///
///
///
///
///
///
///
///

---

[1] However, there are a number of exceptions carved out by the statute. For example, nothing prevents a person from carrying a weapon, concealed or otherwise, in their home, place of business or on other designated private property. Penal Code § 12026(a). There are also a number of designated uses for firearms outside the scope of Yolo County's policy and lawful under California law, such as the use of a firearm for hunting or for sport as part of a gun club. See Penal Code § 12027.

1  Plaintiffs are not challenging the California statute itself[2], but
2  instead challenge Yolo County's interpretation of their statutory
3  authority, namely its Concealed Weapon License Policy.
4      Consistent with the regulations under California Penal Code,
5  Yolo County and Defendant Prieto, as the Sheriff, have created a
6  policy regulating the issuance of concealed weapon licenses to Yolo
7  County residents. Sheriff Prieto retains "discretion to issue a
8  license to carry a concealed firearm to residents within Yolo
9  County." (See Policy, ECF No. 60-1, at 1.) The policy, accessible
10 to the public, clearly enumerates the criteria for obtaining the
11 license, and an applicant must, among other things, demonstrate
12 that they have a valid reason to request the permit in the first
13 place. (Id.) Examples of valid reasons listed in the policy
14 "include, but are not limited to:" credible threats of violence
15 against the applicant, and being a business owner who carries large
16 sums of cash. (Id. at 1-2.) Examples of invalid reasons include
17 hunting, fishing, or self-defense "without credible threats of
18 violence." (Id. at 2.) The issuance of a license ultimately bears
19 on whether the "Sheriff or his designee feels there is sufficient
20 reason to grant the license." (Id.)
21 ///
22
23 [2] The State of California and/or its legislature is not a party to the action. Plaintiffs appear to be challenging Defendants' exercise of state law at the local level. (See e.g. Sec. Am.
24 Compl., ECF No. 48 (hereinafter, "SAC").) However, Yolo County's policy derives its authority from the legislature's framework, and
25 there is substantial overlap between the policy and California law. In addition, Plaintiffs' Motion for Summary Judgment specifically
26 challenges portions of California's Penal Code. (ECF No. 54-1 at 21.) Recognizing the close overlap, this Court interprets
27 Plaintiffs' arguments as those ultimately against Defendants, and not the state legislature or, by extension, the California Penal
28 Code.

**B.  Plaintiffs**

Plaintiffs Second Amendment Foundation, Inc. and The Calguns Foundation, Inc. are non-profit organizations designed to promote the rights of firearm holders, and more generally anti-gun control advocates. (SAC 2.) Both Plaintiffs Richards and Stewart are members and supporters of both organizations. (Id. at 1.)

In March 2009, Plaintiff Richards contacted the Yolo County Sheriff's office to inquire about the procedure to obtain a permit to carry a handgun. Defendant was told that he could not obtain a concealed weapon license for self-defense purposes because that would not constitute good cause under the terms of the policy. (Id. at 4.) In addition, since Plaintiff Richards resides in Davis, the Yolo County Sheriff's office informed him that he would first have to apply for a concealed weapon license from the Chief of Police in the City of Davis. (Id.)

Similarly, in March 2010, Plaintiff Stewart applied for a concealed weapon license from Yolo County, after first being told that Davis police had discontinued issuing Carry Concealed Weapon permits. (Id. at 5.) On April 27, 2010, Plaintiff Stewart was informed in writing that he was being denied a permit by Yolo County because his application did not "'meet the criteria'" for granting a license, as outlined in the policy. (Id.)

///
///
///
///
///

**STANDARD**

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

In considering a motion for summary judgment, the court must examine all the evidence in the light most favorable to the non-moving party. U.S. v. Diebold, Inc., 369 U.S. 654, 655 (1962). Once the moving party meets the requirements of Rule 56 by showing that there is an absence of evidence to support the non-moving party's case, the burden shifts to the party resisting the motion, who "must set forth specific facts showing that there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).

Each party seeking summary judgment bears "the initial responsibility of informing the district court of the basis for its motion." Celotex, 477 U.S. at 323. However, genuine factual issues must exist that "can be resolved only by a finder of fact, because they may reasonably be resolved in favor of either party." Anderson, 477 U.S. at 250.

///

---

[3] Unless otherwise noted, all further references to Rule or Rules are to the Federal Rules of Civil Procedure.

Case 2:10-cv-08377-JAK -JEM   Document 84   Filed 05/17/11   Page 8 of 18   Page ID
#:1167
Case 2:09-cv-01235-MCE -DAD   Document 72   Filed 05/16/11   Page 6 of 16

1  In judging evidence at the summary judgment stage, the court does
2  not make credibility determinations or weigh conflicting evidence.
3  See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626,
4  630-631 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., Ltd.
5  v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).
6
7                               **ANALYSIS**
8       **A.   Second Amendment**
9            **1.   Heller and the Scope of Protection**
10
11      Plaintiffs argue that, by maintaining a policy that deprives
12 Plaintiffs Richards and Stewart of a concealed weapon license,
13 Defendants are infringing on their Second Amendment right to bear
14 arms, as the Yolo County license policy effectively acts as a
15 complete ban on an individual's right to carry.  They challenge the
16 policy both on its face, and as applied.  (See Mot. Summ. J. Hr'g
17 Tr. 9:15-17, March 10, 2011, ECF No. 70.)  Defendants, on the other
18 hand, believe that the Second Amendment has never been interpreted
19 as granting citizens the right to carry a concealed weapon in
20 public, and restrictions on firearm possession has been the status
21 quo in the United States for many years.  Further, Defendants
22 contend that Yolo County's policy does not violate the Second
23 Amendment, because it is not a total ban on the possession of
24 handguns.
25 ///
26 ///
27 ///
28 ///

1  The Second Amendment protects an individual's right to "keep
2  and bear arms." U.S. Const. amend. II. Rights bestowed under the
3  Second Amendment are "fundamental," and apply "equally to the
4  Federal Government and the States." McDonald v. City of Chicago,
5  130 S. Ct. 3020, 3050 (2010). Specifically, the Second Amendment
6  "protects a personal right to keep and bear arms for lawful
7  purposes, most notably for self-defense in the home." McDonald,
8  130 S. Ct. at 3044. See also United States v. Heller, 554 U.S.
9  570, 635 (2008) ("the District's ban on handgun possession in the
10 home [for self-defense purposes] violates the Second Amendment.");
11 United States v. Vongxay, 594 F.3d 1111, 1115 (9th Cir. 2010)
12 (explaining the scope of Heller was limited to the right to
13 register and keep a loaded firearm in the home for self-defense).
14  However, as the Supreme Court of the United States recently
15 clarified in a landmark case, the "right secured by the Second
16 Amendment is not unlimited. From Blackstone through the 19th-
17 century cases, commentators and courts routinely explained that the
18 right was not a right to keep and carry any weapon whatsoever in
19 any manner whatsoever and for whatever purpose." Heller, 554 U.S.
20 at 626. In fact, the Court was careful to explain that their
21 decision did not, in any way, invalidate many of the longstanding
22 state and federal prohibitions on firearm possession.
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1  Id. at 627.[4] Based upon this, Heller cannot be read to invalidate
2  Yolo County's concealed weapon policy, as the Second Amendment does
3  not create a fundamental right to carry a concealed weapon in
4  public.

5  Furthermore, the policy does not create a total ban on
6  carrying a firearm, such that the policy completely infringes on
7  the rights protected by the Second Amendment. Since the Supreme
8  Court has yet to articulate the appropriate standard of review, the
9  Ninth Circuit has determined that only regulations that
10 "substantially burden the right to keep and bear arms trigger
11 heightened scrutiny under the Second Amendment." Nordyke v. King,
12 No. 07-15763, 2011 WL 1632063, at *6 (9th Cir. May 2, 2011)
13 (evaluating whether a restriction on gun sales substantially
14 burdens Second Amendment rights). It then follows that if the
15 regulation does not place a substantial burden to an individual's
16 fundamental right, then rational basis review applies.
17 ///

---

[4] Plaintiffs' implicit argument is that Heller stands for the general right to carry a concealed weapon for self-defense purposes in public. (See Hr'g Tr. 23:9-13 ("There is a right to keep and bear arms. Bear arms means to carry them in public.").) The Supreme Court does explain that the historical inference of the word "bear" should be interpreted to mean that there is a right to carry "upon the person or in the clothing or in a pocket" a "weapon for a particular purpose - confrontation." Id. at 584-85. However, Heller's ultimate holding is not the Court's interpretation of the historical significance of the Second Amendment's language. To the contrary, the Court, both in Heller, and subsequently in McDonald, took pain-staking effort to clearly enumerate that the scope of Heller extends only to the right to keep a firearm in the home for self-defense purposes. See supra (emphasis added). This Court does not infer that Heller grants any right that "extends beyond the home," as Plaintiffs contended during oral argument. (Hr'g Tr. 11:8-10.) Courts "often limit the scope of their holdings, as such limitations are integral" to understanding the holdings' reach. Vongxay, 594 F.3d at 1115.

Case 2:10-cv-08377-JAK -JEM Document 84 Filed 05/17/11 Page 11 of 18 Page ID #:1170
Case 2:09-cv-01235-MCE -DAD Document 72 Filed 05/16/11 Page 9 of 16

Id. at *6 (In "a variety of contexts" the Supreme Court "applies mere rational basis scrutiny to laws that regulate, but do not significantly burden, fundamental rights.").[5]

In determining whether government action "substantially burdens" a constitutionally-protected right, courts "typically ask whether the restriction leaves open sufficient alternative avenues" for exercising the right. Id. at *7-8. The appropriate inquiry here, under a substantial burden analysis, is whether Yolo County's restrictions leave Plaintiffs with "reasonable alternative means" to obtain and keep a firearm "sufficient for self-defense purposes." Id. at *7.

California Penal Code has carved out a number of exceptions that allow individuals to possess and carry loaded firearms in public settings, including for use in hunting, or in a situation where someone who believes they are in "immediate, grave, danger and that the carrying of the weapon is necessary for the preservation of that person or property." Penal Code § 12031(j)(1).[6]

---

[5] In their Summary Judgment Motion, Plaintiffs interpret Heller to mean that rational basis review could not, under any circumstances, be used to evaluate the merits of a policy regulating portions of the Second Amendment. (ECF No. 54-1 at 26.) Indeed, the Ninth Circuit previously interpreted Heller the same way; namely that rational-basis scrutiny would not be appropriate to review Second Amendment restrictions. See Vongxay, 594 F.3d at 1118 n.5. However, earlier this month, the Ninth Circuit read Heller as "insisting that a Second Amendment backed only by rational basis review would have 'no effect,'" and heightened scrutiny is only appropriate for claims that substantially burden the right to bear and keep arms. Nordyke, 2011 WL 1632063, at *10 (citing Heller, 554 U.S. at 627 n.27) (emphasis added).

[6] Immediate is defined as "the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance." Id.

1  A regulation or policy "does not substantially burden a
2  constitutional right simply because it makes the right...more
3  difficult to exercise." Nordyke, 2011 WL 1632063, at *8.
4      Under the statutory scheme, even if Plaintiffs are denied a
5  concealed weapon license for self-defense purposes from Yolo
6  County, they are still more than free to keep an unloaded weapon
7  nearby their person, load it, and use it for self-defense in
8  circumstances that may occur in a public setting.  Yolo County's
9  policy does not substantially burden Plaintiffs' right to bear and
10 keep arms.  Therefore, rational basis review applies.
11     A regulation is constitutional under rational basis review if
12 it bears "a reasonable relationship to a legitimate government
13 interest." United States v. Whitlock, 2011 WL 1651232, at *5 (9th
14 Cir. April 28, 2011) (citing United States v. LeMay, 260 F.3d 1018,
15 1031 (9th Cir. 2001)).  As Defendants contend, regulating concealed
16 firearms is an essential part of Yolo County's efforts to maintain
17 public safety and prevent both gun-related crime and, most
18 importantly, the death of its citizens.  Yolo County's policy is
19 more than rationally related to these legitimate government goals,
20 and Plaintiffs' Motion for Summary Judgment fails as to this
21 portion of their argument.
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

### 2. Defendants' "Good Cause" Discretion

Plaintiffs also assert that the portions of Yolo County's concealed weapon license policy evaluating an applicant's good moral character and good cause for seeking a permit, gives the government "unbridled discretion" in violation of the Second Amendment. In applying traditional First Amendment analysis, Plaintiffs contend the statute is a prior restraint on the freedom to keep and bear arms. Defendants, in turn, believe any analogy of the Second Amendment to the First is improper because it "ignores the fundamental difference between regulation of speech and guns." (Def's. Mot. for Summ. J. 24, ECF No. 59.)

In a facial challenge[7] to a statute outside of the First Amendment context, a plaintiff must demonstrate that "no set of circumstances exists under which" the statute would be valid, "i.e. that the law is unconstitutional in all of its applications." Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 450 (2008). See also Hotel & Motel Ass'n. of Oakland v. City of Oakland, 344 F.3d 959, 971 (9th Cir. 2003) ("To bring a successful facial challenge outside the context of the First Amendment, the challenger must establish that no set of circumstances exists under which the statute would be valid." (internal citations omitted)); Nordyke, 2011 WL 1632063, at *7 n.11 ("A facial challenge" is "the most difficult challenge to mount successfully.").

---

[7] Plaintiffs characterized this portion of their argument as a "facial challenge" during oral argument, and the pleadings support such an interpretation. (See Hr'g Tr. 9:15-10:8) An as-applied constitutional challenge to Yolo County's policy was not asserted under the analogous First Amendment analysis.

Courts are instructed to first determine whether "the enactment reaches a substantial amount of constitutionally protected conduct" by examining "the ambiguous as well as the unambiguous scope of the enactment." Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 & n.6 (1982). Such an inquiry must be "examined in the light of the facts of the case at hand," which should ultimately demonstrate that the regulation is patently invalid because "no standard of conduct is specified at all." Id. at 495 n.7 (internal citations omitted).

An exception to the rigidity of the facial challenge test exists for issues involving the First Amendment. A law involving First Amendment protections "may be overturned as impermissibly broad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." Wash. State Grange, 552 U.S. at 449 n.6 (internal citations omitted). Plaintiffs suggest the Court turn to case precedent established from examining the rights and regulations carved from the First Amendment as a framework for assessing those rights indicated under the Second Amendment. However, Plaintiffs do not address the exception in their papers, but cite cases entrenched in First Amendment constitutional analysis. The Court sees no reason to analogize rights under the Second Amendment to those under the First, as plenty of case authority exists to provide a clear framework of analysis to facial challenges, without poaching precedent from another Amendment's framework.

///

///

Therefore, this Court cannot invalidate the good cause and good moral character portions of Yolo County's policy as unconstitutional on their face. Plaintiffs cannot demonstrate that there are zero circumstances under which Sheriff Prieto could clearly issue a concealed weapon permit to someone who demonstrates plausible good cause under the terms of the policy, and is also of objective good moral character. Any inquiry into the facial constitutionality of Yolo County's policy is futile, for it is both "undesirable" and near impossible for the Court to "consider every conceivable situation which might possibly arise in the application of complex and comprehensive legislation." Gonzales v. Carhart, 550 U.S. 124, 168 (2007) (internal citations omitted); Nordyke, 2011 WL 1632063 at *7. Facial challenges are also disfavored for many reasons, most notably because they "rest on speculation." Wash. State Grange, 552 U.S. at 450.

Moreover, Yolo County's policy does contain a standard of conduct; applicants are clearly instructed to be of good moral character (and submit application documents corroborating such character), and demonstrate good cause for requiring the license. The policy goes further by providing examples of the types of good cause that satisfy the terms of the policy. While Plaintiffs are entitled to dislike the qualifications and standards created by Sheriff Prieto and Yolo County's policy, they cannot demonstrate that the policy itself is void for facial vagueness. For each of the above reasons, Plaintiffs' Motion for Summary Judgment on the Second Amendment claim fails and Defendants' Motion for Summary Judgment is granted.

///

B.  Equal Protection

Plaintiffs insist that Yolo County's concealed weapon license policy is subjective because Sheriff Prieto has discretionary authority to determine what constitutes "good cause." Plaintiffs also believe the policy is arbitrary and violates Equal Protection because some individuals are granted the right to bear arms for self-defense, while others are not.  Defendants maintain that Yolo County's interest in preventing crime and ensuring public safety merits the policy's language and renders it constitutional.

The Equal Protection Clause of the Fourteenth Amendment requires that all "persons similarly situated" be treated the same under the law.  <u>City of Cleburne v. Cleburne Living Center, Inc.</u>, 473 U.S. 432, 439 (1985); <u>Freeman v. City of Santa Ana</u>, 68 F.3d 1180, 1187 (1995).  Modern equal protection analysis is a two step process: the first step is identifying the classification of groups, namely that a law is "applied in a discriminatory manner or imposes different burdens on different classes of people." <u>Id.</u>

The second step requires the court to "assess the legitimacy of a discriminatory statute under the appropriate level of scrutiny."  <u>Sagana v. Tenorio</u>, 384 F.3d 731, 740 (9th Cir. 2004).

///
///
///
///
///
///
///

Where an ordinance does not "purposefully operate to the detriment of a suspect class, the only requirement of equal protection is that the ordinance be rationally related to a legitimate governmental interest. <u>Nordyke</u>, 2011 WL 1632063, at *14 (internal citations omitted).[8]

Plaintiffs' equal protection claim fails for two reasons. First, the policy does not treat similarly situated individuals differently. All law-abiding citizens who apply for a permit are not the same because some can demonstrate they have good cause and are of good moral character, and some cannot. Second, Defendants' good cause and good character clauses in the policy are clearly rationally related to Yolo County's goals of reducing the incidence of unlawful public shootings, prevent police from safely responding to dangerous situations, generally preventing crime, and ensuring public safety.

## CONCLUSION

Compared to many of this country's constitutional protections, the scope of rights under the Second Amendment is ambiguous and no doubt subject to change and evolution over time. Nonetheless, even in light of <u>Heller</u> and <u>McDonald</u>, Yolo County's concealed license policy is constitutionally valid.

---

[8] Though the right to keep and bear arms for self-defense is a fundamental right, "that right is more appropriately analyzed under the Second Amendment. <u>Id.</u> (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) ("Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing those claims." (internal citations omitted))).

1 | Plaintiffs' Motion for Summary Judgment (ECF No. 54) is DENIED.
2 | Defendants' Cross Motion for Summary Judgment (ECF No. 58) is
3 | GRANTED.  The Clerk of Court is accordingly directed to enter
4 | judgment in favor of Defendants Yolo County and Yolo County Sheriff
5 | Ed Prieto.
6 |     IT IS SO ORDERED.
7 | Dated: May 13, 2011

_____
MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE