1  ANDREA SHERIDAN ORDIN, County Counsel
   ROGER H. GRANBO, Assistant County Counsel
2  JENNIFER A.D. LEHMAN, Principal Deputy County Counsel
   (SBN 191477) • *jlehman@counsel.lacounty.gov*
3  648 Kenneth Hahn Hall of Administration
   500 West Temple Street
4  Los Angeles, California 90012-2713
   Telephone: (213) 974-1908 · Fax: (213) 626-2105
5
   Attorneys for Defendant
6  LOS ANGELES COUNTY SHERIFF'S DEPARTMENT

7
                **UNITED STATES DISTRICT COURT**
8
                **CENTRAL DISTRICT OF CALIFORNIA**
9

10
   SIGITAS RAULINAITIS and RIMA          CASE NO. CV 11-8026 JHN(JCGx)
11 RAULINAITIS
                                          (to be related to CV 10-08377 JAK
12          Plaintiffs,                    (JEMx) and CV 11-06154 SJO(JCx))

13      v.                                **AMENDED NOTICE OF RELATED
                                          CASES**
14 THE LOS ANGELES COUNTY
   SHERIFF'S DEPARTMENT                   **[Local Rule 83-1.3]**
15
            Defendant.
16

17 **TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

18
         This Notice previously filed on January 18, 2012 is **amended to include**
19
   **page 2 and page 3** which did not scan and were inadvertently not included when the
20
   pleading was originally filed.
21
         In accordance with Local Rule 83.1.3, Defendant Los Angeles County
22
   Sheriff's Department ("LASD") files the instant Notice of Related Cases.  The
23
   following cases call for a determination of the same or substantially identical
24
   questions of law and fact and, therefore, are likely to entail substantial duplication of
25
   labor for the judges assigned each respective case.  In fact, Judge Kronstadt recently
26
   ruled on the constitutionality of the exact policy at issue in the *Thomson* and
27
   HOA.854693.1                                        Notice of Related Cases
28                                                  CV 10-08377 JAK(JEMx) /
                                                    CV 11-06154 SJO (JCx),
                                                    CV 11-08026 JHN(JCGx)

1 | *Raulinaitis* cases.

2 |     1.    *Jonathan Birdt v. Charlie Beck, et al.*, United States District Court
3 | Case No. CV 10-08377 JAK (JEMx). A copy of Plaintiff's First Amended
4 | Complaint is attached hereto as Exhibit 1. At issue in the *Birdt* case is the
5 | constitutionality of the Los Angeles County Sheriff's Department's policy on the
6 | issuance of concealed weapons permits. Judge Kronstadt recently granted a
7 | summary judgment motion finding that the LASD's concealed weapons permit
8 | (CCW) policy is constitutional. A copy of the Court's Order granting Defendants'
9 | Motion for Summary Judgment is attached hereto as Exhibit 2.

10 |     2.    *Robert Thomson v. Torrance Police Department, et al.*, United States
11 | District Court Case No. CV 11-06154 SJO (JCx). A copy of Plaintiff's Second
12 | Amended Complaint is attached hereto as Exhibit 3 for the court's convenience. In
13 | this case, Plaintiff Thomson allege that the LASD's CCW permit policy is
14 | unconstitutional.

15 |     3.    *Sigitas Raulinaitis, et al. v. Los Angeles County Sheriff's Department*,
16 | United States District Court Case No. CV 11-08026 JHN(JCGx). A copy of
17 | Plaintiff's Complaint is attached hereto as Exhibit 4. In this case, the Plaintiffs
18 | allege that the LASD's CCW permit policy is unconstitutional.

19 | **I.    These Cases Should Be Related Because They Arise out of the Same Nucleus of Facts and Involve the Same Legal and Factual Issues.**

20 |
21 | The cases of (1) *Jonathan Birdt v. Charlie Beck, et al.*, (2) *Robert Thomson v.*
22 | *Torrance Police Department, et al.,* and (3) *Sigitas Raulinaitis, et al. v. Los Angeles*
23 | *County Sheriff's Department* challenge the constitutionality of the LASD's policy for
24 | the issuance of a concealed weapons permit (CCW). The plaintiffs in these cases
25 | claim that the LASD's definition of "good cause" under California Penal Code
26 | section 12050 violates the Second Amendment, and that their respective CCW

27 |
28 | HOA.854693.1

Notice of Related Cases
CV 10-08377 JAK(JEMx) /
CV 11-06154 SJO (JCx),
CV 11-08026 JHN(JCGx

1  applications were unconstitutionally denied.[1]  Judge Kronstadt recently ruled on the

2  constitutionality of the LASD's policy--the precise issues again set forth in the

3  *Thomson* and *Raulinaitis* cases.

4  **II.  In the Interests of Judicial Economy, and Consistency, the Two Cases Should Be Related.**

5

6  In light of the identical legal issues presented in these cases, (See attached

7  Complaints), Defendant LASD submits that litigating these cases separately will

8  create a substantial duplication of labor if heard by different judges.  Judge

9  Kronstadt recently ruled on the very issues that are the subjects of the *Thomson* and

10  *Raulinaitis* cases, and is already familiar with the law and the facts.  Having two

11  other judges become familiar with the issues, when Judge Kronstadt has already

12  done so, will result in a substantial and expensive duplication of labor.  Moreover,

13  inconsistent rulings regarding the constitutionality of the LASD policy may result.

14  Accordingly, these are Related Cases for the purposes of Local Rule 83.1.3.

15  DATED: January 19, 2012              Respectfully submitted,

16                                        ANDREA SHERIDAN ORDIN
                                          County Counsel
17

18                                        By            /S/
19                                               JENNIFER A.D. LEHMAN
                                               Principal Deputy County Counsel
20
                                          Attorneys for Defendant
21                                        LOS ANGELES COUNTY SHERIFF'S
                                          DEPARTMENT
22

23

24
————————————————

25  [1] In addition to the LASD's policy, Mr. Birdt also challenges the City of Los
26  Angeles' good cause policy in his action and Mr. Thomson challenges the City of
    Torrance's policy in his action.
27

28  HOA.854693.1                                           Notice of Related Cases
                                                           CV 10-08377 JAK(JEMx) /
                                                           CV 11-06154 SJO (JCx),
                                                           CV 11-08026 JHN(JCGx

CV                              -3-

# EXHIBIT 1

1  **JONATHAN W. BIRDT – SBN 183908**
   18252 Bermuda Street
2  Porter Ranch, CA 91326
   Telephone:    (818) 400-4485
3  Facsimile:    (818) 428-1384
   jon@jonbirdt.com
4  Plaintiff

5

6

7                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**

9

10

11 JONATHAN BIRDT,                       )   **CASE NO. 2:10-cv-08377-RGK -JEM**
                                         )
12              Plaintiff,               )   FIRST AMENDED COMPLAINT
                                         )
13      vs.                              )   42 U.S.C. 1983 & 1988
                                         )
14 CHARLIE BECK, LEE BACA, THE LOS       )
   ANGELES POLICE DEPARTMENT and         )
15 THE LOS ANGELES COUNTY                )
   SHERIFFS DEPARTMENT, DOES 1 to 50,    )
16                                       )
17              Defendants.              )
                                         )
18                                       )
                                         )
19 _____)

20      COMES NOW  Plaintiff, Jonathan Birdt who seeks a declaration that the definition of "good

21 cause" for the issuance of a CCW Permit used by the Los Angeles Police and Sheriffs' Departments

22 is unconstitutional as applied to his application for a CCW permit.  This is a 42 U.S.C. 1983 & 1988

23 action based upon defendants definition of "Good Cause" as a specific threat.  Constitutional

24 mandates establish self defense as "Good Cause" which should be applied to Plaintiff's application.

25                              <u>INTRODUCTION</u>

26 1.  Plaintiff is a resident of Los Angeles who has applied for and been denied a permit to carry a

27     concealed weapon by the Los Angeles Police and Sheriffs' Departments because he failed to

28     identify an imminent or specific threat, thus applying a needs based test.

                    FIRST AMENDED COMPLAINT - 1

2. Plaintiff has appealed the LAPD denial in or about April, 2010, but received no response to the appeal.  Thereafter, plaintiff applied for a CCW permit with the LASD which was summarily denied again for failure to identify an imminent or specific threat, thus applying a needs based test.

3. Plaintiff is an attorney licensed to practice law in California and Nevada and admitted to practice before the 9th Circuit, the District of Nevada and the Central, Northern, Southern and Eastern Districts of California.

4. Plaintiff is licensed by the States of Nevada and Utah to carry a concealed weapon, by virtue of reciprocity and States that follow the US Constitution, he is permitted to carry a concealed weapon in more than 40 States, but not in his State of residence, California.

5. Plaintiff is an avid outdoorsman who belongs to several firearm related organizations including CRPA and the NRA (Life Member).  Plaintiff is also a member at a local shooting club and competes monthly in said activities.

6. Plaintiff has actively litigated cases in Nevada (currently inactive, but last trial was a one week wrongful death case in Clark County District Court in January 2010).

7. Under the laws of the State of California, Plaintiff is prohibited from publicly carrying a loaded firearm and despite repeated requests, City and County officials have refused to issue a CCW permit plaintiff is entitled to receive.

### THE PARTIES

8. Plaintiff is a natural person and citizen of the United States who resides in Los Angeles. The States of Nevada and California and each Federal Court therein have found Plaintiff to possess good moral character sufficient to engage in the practice of law and the States of Utah and Nevada (where plaintiff frequently travels) have found that plaintiff has met all the qualifications for and have issued him permits to carry a concealed weapon.

9. Defendant Charlie Beck is the Chief of the Los Angeles Police Department and the individual responsible for issuing CCW permits and deciding the procedure to be followed when determining "good cause" to justify the issuance of a permit and made the decision to deny Plaintiff's application for a CCW permit because plaintiff did not demonstrate "good cause" consisting of an imminent threat.

10. The Los Angeles Police Department is a municipal entity organized under the laws of the State of California.

11. Defendant Lee Baca is the Sheriff of Los Angeles County and the individual responsible for issuing CCW permits and deciding the procedure to be followed when determining "good cause" to justify the issuance of a permit and made the decision to deny Plaintiffs' application for a CCW permit because plaintiff did not demonstrate "good cause" consisting of an imminent threat.

12. The Los Angeles Sheriffs Department is a municipal entity organized under the laws of the State of California.

### JURISDICTION & VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

14. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

### LEGAL BACKGROUND

15. California Penal Code 12050 is the only mechanism in California by which a non-law enforcement official can carry a loaded firearm. Pursuant to the statutory scheme the California Attorney General has created a form application for residents of the State of California to use when applying for a permit thereunder.

16. The Los Angeles Police Department openly refuses to comply with State Law as well as prior judicial decrees and settlements. The LAPD does not accept the standard CCW application, nor does it readily make available a CCW application at each of its' stations. Plaintiff spent several hours on the phone over several months calling various departments just trying to get a CCW application from the LAPD. Plaintiff was then required to make an appointment and bring the form in for an interview. Plaintiff did this in early 2010. Thereafter, Plaintiff received a letter stating that his request for a permit had been denied because he had not identified a specific threat justifying the issuance of a permit. Plaintiff immediately responded requesting an appeal, but to date, the LAPD has not responded.

17. Following the advice of the LAPD gun detail, Plaintiff then submitted his application to the LASD who summarily denied the request for the same reason, i.e. failure to identify a specific threat.

18. Plaintiff alleges that the definition of Section 12050's requirements of (1) "good cause" beyond the interests of self-defense violate the Second and Fourteenth Amendments to the U.S. Constitution.

19. Plaintiff does not dispute the validity of the statute, or the right of the State to regulate the possession of loaded weapons.  In fact, the State legislature has made clear its' intent to create the only mechanism by which law abiding citizens can and should posses loaded firearms in the state by creating a statutory scheme for regulating such conduct. 12050(a)(1) provides, in pertinent part:

> (A) The sheriff of a county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying satisfies any one of the conditions specified in subparagraph (D) and has completed a course of training as described in subparagraph (E), may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person in either one of the following formats:
>
> (i) A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.
>
> . . . .

20. Applicants seeking a license to carry a handgun must pass a criminal background check, Penal Code §12052, and successfully complete a course of training in the proper use of handguns. Penal Code § 12050(a)(1)(E).  Plaintiff is ready and willing to submit the criminal background check and represents that he has no criminal history.  Plaintiff also is ready, willing and able to submit to any reasonable training requirements set forth by either department.

<u>FIRST CAUSE OF ACTION</u>

VIOLATION OF 42 U.S.C. 1983, 1988

21. Defendants interpretation of Section 12050's requirements of (1) "good cause" beyond the interests of self-defense violates the Second and Fourteenth Amendments.

22. The United States Supreme Court has now made it clear that the Second Amendment guarantees "the individual right to possess and carry weapons in case of confrontation." Heller at128 S. Ct. at 2797.

23. When a fundamental right is recognized, substantive due process forbids infringement of that right "at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Flores, 507 U.S. at 301-02 (citations omitted)

24. Defendants policies in interpreting Section 12050 infringe upon Plaintiff's Second Amendment right "to possess and carry weapons in case of confrontation." See Heller, 128 S. Ct. at 2797. The Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ...upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.'" Id. at 2793.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE EQUAL PROTECTION CLAUSE

25. The Equal Protection Clause of the Fourteenth Amendment provides that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is "essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Ctr.,473 U.S. 432, 439 (1985) (citation omitted). "The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest." Id. at 440 (citations omitted).

26. Plaintiff is licensed to practice law in both California and Nevada.  Plaintiff has also been issued a permit to carry a concealed weapon in the State of Nevada; however, plaintiff is unable to freely exercise this right because the moment he passes the border from Nevada into California he would be violating California law if he were in possession of a loaded and concealed firearm.

### PRAYER FOR RELIEF

27. Plaintiff request that judgment be entered in his favor and against Defendants requiring defendants to immediately issue a CCW permit to Plaintiff and thereafter renew such permit, absent permission to the contrary from the court.

28. For costs, fees and any such other relief the Court deems just and proper.

November 5, 2010

_____

Jonathan W. Birdt

FIRST AMENDED COMPLAINT - 5

# EXHIBIT 2

Case 2:10-cv-08377-JAK -JEM Document 96 Filed 01/13/12 Page 1 of 10 Page ID
#:1305
Case 2:10-cv-08377-JAK -JEM Document 105 Filed 01/19/12 Page 11 of 33 Page ID
#:

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**                    **JS-6**

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

Present: The Honorable    JOHN A. KRONSTADT, UNITED STATES DISTRICT JUDGE

| Andrea Keifer | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**     **ORDER RE PLAINTIFF'S AND DEFENDANTS' MOTIONS FOR SUMMARY**
                            **JUDGMENT (Dkt. 20, 54, 56)**

## I.     Introduction

In California, a person may carry a concealed firearm only if first issued a license by the sheriff of the county in which the licensee resides. Such licenses are to be issued only upon a showing of "good cause." Cal. Penal Code § 12050. Plaintiff Jonathan Birdt applied for a concealed carry weapons ("CCW") license from the Los Angeles Police Department and the Los Angeles County Sheriff's Department. Each denied his application; this action followed.

Plaintiff has named the Los Angeles Police Department ("LAPD"), the Los Angeles County Sheriff's Department ("LACSD"), Los Angeles Chief of Police Charlie Beck, and Los Angeles County Sheriff Lee Baca as defendants in his claims brought pursuant to 42 U.S.C. §§ 1983 and 1988. Relying on *District of Columbia v. Heller*, 554 U.S. 570 (2008), and *McDonald v. City of Chicago*, 130 S. Ct. 3020 (2010), Plaintiff argues that, as applied to Plaintiff, the LAPD and LACSD policies under which his CCW license application was denied, violate the Second Amendment to the United States Constitution. Plaintiff also claims that LAPD and LACSD policies violate his rights under the Equal Protection Clause and interfere with his right to interstate travel.

Plaintiff and Defendants have filed cross-motions for summary judgment. The parties stipulated at oral argument on September 19, 2011 that there are no disputed issues of material fact.

## II.     Background

### A.     California's Concealed Weapons Law

California Penal Code section 12031 prohibits the open carrying of loaded firearms in public, and section 12025 prohibits the carrying of concealed firearms in public, subject to a licensing process. Section 12050(a)(1)(A) allows "[t]he sheriff of a county, upon proof that the person applying

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

is of good moral character, that good cause exists for the issuance, and that the person applying satisfies" other statutory requirements, to "issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person." Without a license, a person cannot carry a concealed weapon. "Section 12050 gives extremely broad discretion to the sheriff concerning the issuance of concealed weapons licenses and explicitly grants discretion to the issuing officer to issue or not issue a license to applicants meeting the minimum statutory requirements." *Gifford v. City of Los Angeles*, 88 Cal. App. 4th 801, 805 (2001).

The LAPD and the LACSD each has formulated definitions of "good cause" to evaluate permit applications.

The LAPD defines "good cause" in these terms:

[G]ood cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm . . .

Good cause is deemed to exist, and a license will issue in the absence of strong countervailing factors, upon a showing of any of the following circumstances: (a) The applicant is able to establish that there is an immediate or continuing threat, express or implied, to the applicant's, or the applicant's family, safety and that no other reasonable means exist which would suffice to neutralize the threat.

Tompkins Decl., Exh. 1, Dkt. 56-4. The LAPD does not consider general fear for one's personal safety good cause. *Id.* at ¶ 4.

The LACSD's definition of "good cause" requires the following showing:

Convincing evidence of a clear and present danger to life or of great bodily harm to the applicant, his spouse or dependent child, which cannot be adequately dealt with by existing law enforcement resources and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm.

Waldie Decl., Exh. 1, Dkt. 55. The LACSD does not consider a general desire for self-defense good cause; the applicant must "demonstrate a credible threat of violence." Waldie Decl. ¶ 7, Dkt. 55.

### B. Plaintiff's Applications for a License

Plaintiff is a lawyer. He resides in Los Angeles County. Plaintiff applied to the LAPD and the

Case 2:10-cv-08377-JAK-JEM Document 96 Filed 01/13/12 Page 3 of 33 Page ID
#:1305
Case 2:10-cv-08377-JAK-JEM Document 117 Filed 01/19/12 Page 13 of 33 Page ID
#:1365

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

LACSD for a CCW license in 2010. Each department denied his application. On his LAPD application, Plaintiff listed his reasons for seeking a CCW license. These included his work as a volunteer bench officer for the Los Angeles Superior Court, his frequent interstate travel with large sums of cash, his representation of clients in high-profile litigation involving violent crime, and unspecified threats against his employees. Tompkins Decl., Exh. 2, Dkt. 56-4. The LAPD rejected his application, concluding that Plaintiff did not establish "a clear and present danger to life or great bodily injury" that could not "be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures." Tompkins Decl., Exh. 3, Dkt. 56-4. The Citizens Advisory Review Board that reviews denied applications also found that Plaintiff had failed to show good cause for licensure. Tompkins Decl., Exh. 4, Dkt. 56-4.

Plaintiff's LACSD application identified substantially similar reasons in support of licensure. The LACSD denied his application for the same reasons previously advanced by the LAPD. As the LACSD wrote in denying the license:

> Typically, the verbiage "convincing evidence of a clear and present danger . . ." refers to a current situation which involves a specific person(s) who has threatened an individual and who has displayed a pattern of behavior which would suggest that the threat(s) could be carried out. Situations which would suggest only a potential danger to one's safety, (e.g. carrying large amounts of money to the bank, profession/job, working late hours in a high crime rate area, etc.) are not consistent with the criteria for issuance of a concealed weapon license.

Waldie Decl., Exh. 3, Dkt. 55.

### III. **The Second Amendment Claims**

####    A.    **Legal Standard**

#####       1.    The Second Amendment

The Second Amendment protects the "individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 554 U.S. 570, 592 (2008). In *Heller*, the Supreme Court held that a total prohibition on handguns within the home precluded citizens from using guns "for the core lawful purpose of self-defense and [was] hence unconstitutional." *Id.* at 630. In *McDonald v. City of Chicago*, 130 S. Ct. 3020, 3026 (2010), the Court held "that the Second Amendment right is fully applicable to the States." *McDonald* stated that *Heller*'s "central holding" was "that the Second Amendment protects a personal right to keep and bear arms for lawful purposes, most notably for self-defense within the home." *Id.* at 3044.

*Heller* also explained that "the right secured by the Second Amendment is not unlimited." 554 U.S. at 626. It is "not a right to keep and carry any weapon whatsoever in any manner whatsoever

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
|---|---|---|---|
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

and for whatever purpose." *Id.* The Court listed examples of "presumptively lawful regulatory measures" that would not infringe Second Amendment rights, including "prohibitions on the possession of firearms by felons and the mentally ill, or laws forbidding the carrying of firearms in sensitive places such as schools and government buildings, or laws imposing conditions and qualifications on the commercial sale of arms." *Id.* at 570. The Court added that, "the majority of the 19th-century courts to consider the question held that prohibitions on carrying concealed weapons were lawful under the Second Amendment or state analogues." *Id.* This observation is significant, because under *Heller*, the scope of the Second Amendment's protection turns on "the historical background of the Second Amendment." *Id.* at 592.

 2.    Case Law with Respect to the Standard of Review

Six of the Circuits have applied a standard of review resembling intermediate scrutiny to claims under the Second Amendment.

In *Ezell v. City of Chicago*, 651 F.3d 684, 708 (7th Cir. 2011), the Seventh Circuit subjected a Chicago gun-control ordinance to "rigorous" review, "if not quite 'strict scrutiny.'" The ordinance at issue in that case amounted to a total ban on gun ownership. It conditioned gun ownership -- even within the home -- on the gun owner having completed firing range training. The same ordinance, however, also banned firing ranges within the city. The Seventh Circuit found that this ban impacted too greatly the "core Second Amendment right to possess firearms for self-defense." *Id.* at 711. Where such a core right is not implicated, the Seventh Circuit has applied intermediate scrutiny. For example, in *United States v. Skoien*, that court applied intermediate scrutiny to a regulation prohibiting those convicted of domestic violence misdemeanor crimes from carrying firearms; in its view, such a regulation did not infringe the core right to self-defense. 614 F.3d 638, 641 (7th Cir. 2010).

Similarly, in *United States v. Marzzarella*, 614 F.3d 85, 97 (3rd Cir. 2010), the Third Circuit applied intermediate scrutiny to a regulation of the sale of firearms because the "burden imposed by the law [did] not severely limit the possession of firearms." The court reasoned that the *Heller* handgun ban was "an example of a law at the far end of the spectrum of infringement on protected Second Amendment rights" because it prohibited all handgun possession. *Id.* The regulation at issue in *Marzzarella* did not prohibit all handgun possession; as a result, the court found that it was far from the restrictions that *Heller* found improper. *Id.*

Other circuits have applied intermediate scrutiny to restrictions on the use of firearms. *See, e.g.*, *United States v. Booker*, 644 F.3d 12, 25 (1st Cir. 2011) (requiring "a substantial relationship between the restriction and an important governmental objective"); *United States v. Masciandaro*, 638 F.3d 458, 471 (4th Cir. 2011) ("[w]hile we find the application of strict scrutiny important to protect the core right of the self-defense of a law-abiding citizen in his home . . . we conclude that a lesser showing is necessary with respect to laws that burden the right to keep and bear arms outside of the home.); *United States v. Reese*, 627 F.3d 792, 802 (10th Cir. 2010) (applying intermediate scrutiny); *Heller v. District of Columbia*, No. 10–7036, 2011 WL 4551558, at *8 (D.C. Cir. Oct. 4,

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

2011) (same).

Although not binding on this Court , two District Courts in California have considered certain of the issues raised in this action. These decisions are instructive here. In *Richards v. County of Yolo*, the District Court for the Eastern District of California considered a challenge to Yolo County's concealed weapon policy implementing California Penal Code section 12050. No. 09-01235, 2011 WL 1885641 (E.D. Cal. May 16, 2011). The court held that "the Second Amendment does not create a fundamental right to carry a concealed weapon in public." *Id.*, 2011 WL 1885641, at *3. Given the various exceptions to the concealed weapons law, discussed below, the court found that there was adequate opportunity for the plaintiff to use a weapon in self-defense. Therefore, the county's policy did not substantially burden his Second Amendment rights. The court applied rational basis review to find the county policy constitutional.

In *Peruta v. County of San Diego*, the District Court for the Southern District of California considered claims -- like those of the Plaintiff in this action -- brought by a party whose application for a CCW license was denied for lack of good cause pursuant to section 12050. 758 F. Supp. 2d. 1106 (S.D. Cal. 2010). The court applied intermediate scrutiny in assessing the county's policy, noting that

> the Court is not aware of . . . a case in which a court has employed strict scrutiny to regulations that do not touch on the "core" Second Amendment right: possession in the home. If it exists, the right to carry a loaded handgun in public cannot be subject to a more rigorous level of judicial scrutiny than the 'core right' to possess firearms in the home for self-defense.

*Id.* at 1116.

### B. Application

#### 1. Intermediate Scrutiny Is Appropriate

California Penal Code section 12025, prohibiting the carrying of concealed weapons, California Penal Code section 12050, creating the concealed weapon licensure requirements, and the LACSD and LAPD policies do not infringe the "core" Second Amendment right of self-defense within the home. They do not prevent Plaintiff from using "arms in defense of hearth and home." *Heller*, 554 U.S at 635. They do not effect a total ban on gun ownership. Thus, they are not presumptively unconstitutional, as was the handgun ban in *Heller*. For these reasons, strict scrutiny is not appropriate. The Court need not decide whether intermediate scrutiny, or mere rational review, applies to Plaintiff's claims; the regulations at issue, as applied to Plaintiff, satisfy intermediate scrutiny.

#### 2. The Regulations Satisfy Intermediate Scrutiny

"To withstand intermediate scrutiny, a statutory classification must be substantially related to

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
|---|---|---|---|
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

an important governmental objective." *Clark v. Jeter*, 486 U.S. 456, 461 (1988). The government bears the burden of showing the "substantial relation" to an "important government objective." *See City of Los Angeles v. Alameda Books, Inc.*, 535 U.S. 425, 465 (2002).

        a)    "Important Government Objective"

It is clear that the protection of public health and safety are important government objectives, *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 475 (1996), as is crime prevention, *Foucha v. Louisiana*, 504 U.S. 71, 81 (1992). In considering California's concealed weapons regulations, the *Peruta* court noted:

> In particular, the government has an important interest in reducing the number of concealed weapons in public in order to reduce the risks to other members of the public who use the streets and go to public accommodations. The government also has an important interest in reducing the number of concealed handguns in public because of their disproportionate involvement in life-threatening crimes of violence, particularly in streets and other public places.

758 F. Supp. 2d at 1117.

This Court finds this reasoning persuasive. Thus, the concealed weapons regulations serve an important government objective.

        b)    "Substantial Relation"

California's concealed weapons regime is substantially related to the important government objective identified above. A licensing regime allows the state to protect the general public from widespread and unchecked public carrying of concealed and loaded firearms. Such widespread carrying of weapons poses the threat of criminal use of firearms by stealth and surprise. Limiting the number of concealed firearms in public places strengthens law enforcement and prevents the need for public places -- such as restaurants, malls, theaters and parks -- to be equipped with metal detectors, fencing, guards, and other forms of security, in order to protect patrons from unchecked concealed firearms. As the *Peruta* court noted, "[r]equiring documentation enables [the state] to effectively differentiate between individuals who have a bona fide need to carry a concealed handgun for self-defense and individuals who do not." 758 F. Supp. 2d at 1117.

It is also significant that the ban on carrying loaded weapons has numerous exceptions. These allow the carrying of weapons by police officers, private investigators, members of the military forces, target shooters, hunters, and others. Cal. Penal Code § 12031(b). The statute also specifically allows the keeping of loaded weapons at one's home. Cal. Penal Code § 12031(*l*). More importantly, a person may carry a loaded firearm in public when he

reasonably believes that the person or property of himself or herself or of another is in

Case 2:10-cv-08377-JAK -JEM Document 96 Filed 01/13/12 Page 7 of 10 Page ID
#:1309
Case 2:10-cv-08377-JAK -JEM Document 105-1 Filed 01/19/12 Page 17 of 33 Page ID
#:1309

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property. As used in this subdivision, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

Cal. Penal Code § 12031(j)(1). The section also permits carrying a loaded firearm "while engaged in the act of making or attempting to make a lawful arrest." Cal. Penal Code § 12031(k). These exceptions ensure that California's concealed weapons law is tailored to the safety issues raised by gun violence and does not infringe unnecessarily on the right to use guns in self-defense.

Because of these exceptions, and because the regulatory regime for concealed weapons focuses on the carrying of such weapons in public, the statutory system imposes much more narrow limitations on firearm possession than the sweeping prohibition presented by the statute addressed in *Heller*. Thus, California's concealed weapon laws are substantially related to an important government objective, and survive intermediate scrutiny.

> c) The Parties' Expert Declarations

The parties have provided competing expert declarations with respect to the threat of concealed weapons. Defendants have presented evidence that concealed weapons are a particularly serious threat to public safety. As one example, Defendants point out that the

> special danger of a hidden handgun is that it can be used against persons in public robbery and assault. The concealment of a handgun means that other citizens and police don't know it is in their shared space until it is brandished. Concealed handguns are a special problem for police because an armed police officer has no warning that persons carrying concealed handguns are doing so. A police officer will be vulnerable to an element of surprise that will not be present if a person is openly carrying a firearm.

Zimring Decl. ¶ 4, Dkt. 56-5. Defendants also have produced evidence that, during 2010, approximately 39% of those arrested by the LAPD on a charge of homicide had no prior felony convictions. Torrez Decl. ¶¶ 4-15, Dkt. 56-6. This data suggests that eliminating restrictions on permitting the carrying of concealed weapons, or a policy less stringent than that presently in place, could readily increase the number of future felons who may use such weapons while committing a crime. Thus, if the regulations were invalidated, rescinded, or severely restricted, those with no prior felony convictions could more readily obtain CCW licenses and go on to commit homicides. Zimring Decl. ¶ 5, Dkt. 56-5. By contrast, Plaintiff has provided competing expert testimony arguing that CCW permits reduce crime. Mudgett Decl. ¶ 7, Dkt. 69-1.

As noted, the parties have stipulated that there are no genuine issues of material fact presented by the instant motions. As such, these competing expert declarations should not be

Case 2:10-cv-08377-JAK -JEM Document 96 Filed 01/13/12 Page 8 of 10 Page ID
Case 2:10-cv-08377-JAK -JEM Document 105-2 Filed 01/19/12 Page 18 of 33 Page ID
#:1310

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| Case No. | LA CV10-08377 JAK (JEMx) | | Date | January 13, 2011 |
|---|---|---|---|---|
| Title | Jonathan Birdt v. Charlie Beck, et al. | | | |

deemed to create disputed questions of fact. Rather, they reflect differing opinions within the law enforcement community regarding the impact of limitations on the carrying of concealed weapons -- something that can be considered in the intermediate scrutiny analysis. Thus, Defendants' policy need not be a perfect empirical fit to the problem of gun violence; it must merely be "substantially related." "In contrast with strict scrutiny, intermediate scrutiny, by definition, allows the government to paint with a broader brush." *Peruta*, 758 F. Supp. 2d at 1117. Because the concealed weapons law focuses on the particular threat posed by concealed weapons, there is a substantial relationship between the state's means and its important objectives. It is also noteworthy that the variations in the declarations are a reflection of the responsibility that lies with the California Legislature to weigh the effectiveness of concealed weapons laws as a tool to combat crime and violence. As the Supreme Court has noted, when applying intermediate scrutiny in the First Amendment context:

> What our decisions require is a "fit" between the legislature's ends and the means chosen to accomplish those ends -- a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope is in proportion to the interest served; that employs not necessarily the least restrictive means but . . . a means narrowly tailored to achieve the desired objective. Within those bounds we leave it to governmental decisionmakers to judge what manner of regulation may best be employed.

*Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 480 (1989). Thus, to prevail on their motion for summary judgment, Defendants need not prove that California's approach to concealed weapons is more empirically sound, that Plaintiff's expert is incorrect, or that California's approach is otherwise the "correct" one. Rather, Defendants need only show a sufficient "fit," which they have done. The Legislature's decision in balancing or addressing competing views will be upheld where, as here, it is substantially related to the important objectives described.

### 3.    The LASD and LACSD Policies

#### a)    The Policies Themselves Do Not Violate the Second Amendment

That the LASD and LACSD policies implementing California's concealed weapons laws define "good cause" as requiring the applicant to show a "clear and present danger to life or of great bodily injury" does not render them unconstitutional. To the contrary, that California allows those facing a clear and present danger to carry concealed weapons provides further support for the conclusion that the CCW regulations are substantially related to an important government objective. Not only can Plaintiff keep loaded guns in his house, but he can carry them in public when he is in immediate grave danger, and can obtain a concealed weapon permit when there is a clear and present danger. The focus of the Second Amendment right is "to possess and carry weapons in case of confrontation," *Heller*, 554 U.S. at 592, and these exceptions to California's gun control laws are in harmony with that right to self-defense. Because the Supreme Court suggested that long-standing prohibitions on carrying concealed weapons would be constitutional, *id.* at 626, a concealed weapons law that allows exceptions tailored to the need for self-defense is certainly constitutionally

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

sound.

> b) The LASD and LACSD Policies as Applied to Plaintiff

The LASD and LACSD policies have been applied to Plaintiff in a consistent manner. Plaintiff has been unable to point to any direct, physical threats against him or his family as a result of his work as an attorney, as a volunteer bench officer, or otherwise. *See* Lehman Decl., Exh. C, Dkt. 61-3. Plaintiff has produced no evidence that his application was not properly and fairly reviewed. Thus, Plaintiff lacked "good cause" to receive a CCW license under the LASD and LACSD policies.

### C.    Conclusion

Because the LASD and LACSD policies, as implementing the California concealed weapons regime and as applied to Plaintiff, satisfy intermediate scrutiny, they do not violate the Second Amendment. There has been no violation of Plaintiff's constitutional rights, and no resulting violation of 42 U.S.C. §§ 1983 and 1988.

## IV.    **Equal Protection**

Plaintiff argues that the LAPD and LACSD policies violate the Equal Protection Clause to the Fourteenth Amendment because those who have been subjected to a "clear and present danger to life or of great bodily injury" are generally victims of past crimes. Plaintiff argues that, as a result, the policies grant broader Second Amendment rights to crime victims by allowing them CCW licenses. Plaintiff argues that classifications based on whether one has been a crime victim violates the Equal Protection Clause.

This argument is unpersuasive. First, the policies do not classify applicants based on whether or not an applicant for a CCW license has been a victim of a crime. Instead, they classify applicants based on whether a person has a need for a concealed weapon due to the showing of a sufficient, immediate danger to the applicant. Second, even if the policies did classify based on whether the applicant was a crime victim, the policies would pass constitutional muster. Persons who have not been crime victims are not a suspect class under the Constitution. Rather, crime victims are those who rationally may be thought to legitimately fear some future criminal act. A law that classifies based on crime victim status must merely "rationally further a legitimate state interest." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). Preventing crime is a legitimate state interest. It is entirely rational for the LAPD and LACSD to believe that those who have been victims of crime once may be victims again, and have a greater need for self-protection by carrying a concealed weapon. Accordingly, it is rational for the LAPD and LACSD to restrict CCW licenses to such applicants.

Case 2:10-cv-08377-JAK -JEM Document 1224 Filed 01/19/12 Page 20 of 33 Page ID #:1312

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | LA CV10-08377 JAK (JEMx) | Date | January 13, 2011 |
| Title | Jonathan Birdt v. Charlie Beck, et al. | | |

## V.     Interstate Travel

Plaintiff also claims that his right to interstate travel is burdened by the challenged regulations and by his resulting inability to obtain a CCW license. Thus, he claims that he has a permit to carry a concealed weapon in Nevada, but that when he enters California, he must move any weapons carried to a locked container in the trunk of this car, thereby "brandishing" his weapon in violation of the Nevada law authorizing his Nevada CCW license.

This argument is not sufficient to support this claim. "A state law implicates the right to travel when it actually deters such travel, when impeding travel is its primary objective, or when it uses any classification which serves to penalize the exercise of that right." *Attorney General of New York v. Soto-Lopez*, 476 U.S. 898, 903 (1986). The right to interstate travel is tied to the Article IV Privileges and Immunities Clause. *See Zobel v. Williams*, 457 U.S. 55, 79 (1982). However, the Article IV Privileges and Immunities Clause protects only those activities "sufficiently basic to the livelihood of the Nation." *Supreme Court of Virginia v. Friedman*, 487 U.S. 59, 64 (1988). The Supreme Court has found such a right implicated in a waiting period for the right to vote, *Dunn v. Blumstein*, 405 U.S. 330 (1972), a residency period to receive welfare benefits, *Shapiro v. Thompson*, 394 U.S. 618 (1969), and a residency period to receive medical benefits, *Memorial Hospital v. Maricopa County*, 415 U.S. 250 (1974).

The inconvenience of moving a weapon from the passenger compartment to the trunk of a car does not rise to the level of such activities "sufficiently basic to the livelihood of the Nation." The LAPD and LACSD policies do not deter travel, have impeding travel as their objective, or serve to penalize travel.

## VI.     Conclusion

California's concealed weapons law, the LAPD and LACSD policies promulgated under that law, and those policies as applied to Plaintiff do not infringe upon Plaintiff's constitutional rights. Consequently, the Court DENIES Plaintiff's motion for summary judgment and GRANTS Defendants' motion for summary judgment.

**IT IS SO ORDERED.**

_____     :     _____

Initials of Preparer     ak

# EXHIBIT 3

1 | JONATHAN W. BIRDT – SBN 183908
Law Office of Jonathan W. Birdt
2 | 18252 Bermuda Street
Porter Ranch, CA 91326
3 |
Telephone:     (818) 400-4485
4 | Facsimile:     (818) 428-1384
jon@jonbirdt.com
5 | Attorney for Plaintiff Robert Thomson

FILED

2011 NOV 22  AM 9: 13

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT THOMSON, | CASE NO.  2:11-cv-06154-SJO-JC |
| Plaintiff, | SECOND AMENDED COMPLAINT FOR: |
| vs. | 1.  SECOND AMENDMENT VIOLATION- 42 U.S.C. § 1983 |
| TORRANCE POLICE DEPARTMENT and THE LOS ANGELES COUNTY SHERIFFS DEPARTMENT, | JURY TRIAL DEMANDED |
| Defendants. | ATTORNEY FEES REQUESTED 42 U.S.C. § 1988 |

COMES NOW  Plaintiff, Robert Thomson, pursuant to 42 U.S.C. § 1983 who alleges

violation of his Second Amendment Rights by Defendants.  Plaintiff is precluded from carrying a

concealed firearm by the laws of the State of California unless he is granted permission to do so.

As a resident of Los Angeles County and the City of Torrance, Plaintiff was required to apply for

permission to exercise his Second Amendment Rights to Carry a concealed firearm, first from the

Torrance Police Department and then from the Los Angeles County Sheriffs Department.  Both

Defendants denied Plaintiff permission, leaving him with no ability to exercise his Second

Amendment Rights.. Further, Plaintiff alleges that Defendants utilize a "Good Cause" policy

implemented to overly restrict the exercise of Second Amendment rights without any reasonable

basis for doing so.  Plaintiff also seeks recovery pursuant to 42 U.S.C. § 1988.

## FACTUAL BACKGROUND

1. Plaintiff is a resident of Los Angeles County and the City of Torrance who has applied for and been denied a license to Carry a Concealed weapon from the Torrance Police Department and the Los Angeles county Sheriffs' Department in the past six months.

2. Plaintiff may only carry a concealed weapon with a permit to do so absent being in the course of an arrest, or waiting for Police to arrive after summoning them.

3. Plaintiff is employed as a licensed California Bail Agent. While in the process of his Bail Agent duties Plaintiff sometimes has in his possession over $10,000 in cash, late at night in high crime areas. .

4. As a licensed Bail Agent, Plaintiff has passed multiple criminal background checks, and, as required by his license (P.C.1299), completed a course on powers of arrest approved by the Bureau of Security and Investigative Services.

5. Plaintiff has also taken and was licensed by the State of California to Carry an exposed firearm having completed the security guard exposed firearm training to receive an exposed firearm permit from the BSIS.

6. The State of California has declared that Plaintiff is of good moral character and has sufficient training to possess a loaded firearm outside of the home.

7. The California Legislature has passed Assembly Bill AB 144 which, unless vetoed, will go into effect January 1, 2012 and will make it a crime to openly carry an unloaded firearm in Los Angeles.

8. Plaintiff lives within 1,000 feet of a school and under California law, the only way Plaintiff can leave his home with a handgun is to secure it in a locked container absent a permit to carry concealed.

## THE PARTIES

9. Plaintiff is a natural person and citizen of the United States who resides in the County of Los Angeles and in the City of Torrance.

10. The Torrance Police Department is a municipal entity organized under the laws of the State of California.

11. The Los Angeles Sheriffs Department is a municipal entity organized under the laws of the State of California.

## JURISDICTION & VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983.

13. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## LEGAL BACKGROUND

14. California Penal Code § 12050 is the only mechanism in California by which a non-law enforcement official can carry a loaded firearm.

15. Defendants policies are an unconstitutional prior restraint on a fundamental personal liberty.

16. The Bill of Rights is the collective name for the first ten amendments to the United States Constitution, which limit the power of the U.S. federal government. These limitations serve to protect the natural rights of liberty and property including freedoms of religion, speech, a free press, free assembly, and free association, as well as the right to keep and bear arms.

17. The Second Amendment States: A well regulated militia being necessary to the security of a free State, the right of the People to keep and bear arms shall not be infringed.

18. The US Supreme Court Says:
> "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 128 S. Ct. 2783, at 2798 (2008).

19. The Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ...upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id.* at 2793 (quoting Muscarello v. United States, 524 U.S. 125, 143 (1998)).

20. The Ninth Circuit recently found, in a prior restraint case decided on a First Amendment claim that:

> Our analysis is guided by certain well-established principles of First Amendment law. In public places such as streets and sidewalks, "the State [may] enforce a content-based exclusion" on speech if the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). For content-neutral regulations, the State may limit "the time, place, and manner of expression" if the regulations are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*

> We conclude that the Ordinance fails to satisfy the narrow tailoring element of the Supreme Court's "time, place, and manner" test. The Ordinance is not narrowly tailored because it regulates significantly more speech than is necessary to achieve the City's purpose of improving traffic safety and traffic flow at two major Redondo Beach intersections, and the City could have achieved these goals through less restrictive measures, such as the enforcement of existing traffic laws and regulations. Because the Ordinance does not constitute a reasonable regulation of the time, place, or manner of speaking, it is facially unconstitutional.
> *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach* (9th Cir., Sept. 16, 2011, 06-55750) 2011 WL 4336667.

21. Alternatively, the regulation fails because, it substantially burdens the right to keep and bear arms and is therefore subject to heightened scrutiny under the Second Amendment. *Nordyke v. King* (9th Cir. 2011) 644 F.3d 776, 786.

22. Torrance Police Department's Good Cause Policy states: The Police Department shall conduct an individualized assessment of each applicant for a CCW license, including a review of the standardized DOJ application, a background check, and an interview of the applicant. The Chief of Police shall issue a CCW license when, in his sole discretion, he determines there is good cause to do so and the applicant has met all of the other conditions set forth in California Penal Code section 12050. To establish good cause, an applicant must demonstrate more than a "generalized fear" for one's personal safety. Rather, the applicant must document that:

> (i) the applicant is dealing with circumstances that distinguish the applicant from other members of the public, in that there is a clear, present, and documented danger to the applicant, and
> (ii) there are no feasible alternative means of protection, either through existing law enforcement resources or under the provisions of California Penal Code section 12031, which carve out a number of exceptions that allow individuals to possess and carry firearms in public settings for self-defense and defense of property.

23. Torrance Police Department Defines Good Cause as requiring, an applicant to demonstrate that there is a clear, present, and documented danger to the applicant, and there are no feasible alternative means of protection.

24. Torrance Police Department provides the following example of Good Cause:

> where the applicant is a business owner who typically is forced to carry large sums of cash or valuable items in public and has been the victim of violent crime and/or the subject of documented, credible threats of violence.

Case 2:11-cv-06154-SJO-JC   Document 26-1   Filed 11/22/11   Page 5 of 5   Page ID #:94
Case 2:10-cv-08377-JAK -JEM   Document 101   Filed 01/19/12   Page 26 of 33   Page ID
#:1318

25. Defendant LASD defines good cause as:

"convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

## FIRST CAUSE OF ACTION

## VIOLATION OF 42 U.S.C. § 1983

26. Defendants interpretation of Penal Code § 12050's requirements of (1) "good cause" beyond the interests of self-defense violates the Second and Fourteenth Amendments.

27. The United States Supreme Court has now made it clear that the Second Amendment guarantees the individual right to possess and carry weapons in case of confrontation.

28. Defendants Denial of Plaintiffs applications leaves him with no alternative means of exercising his Fundamental Constitutional Right to possess a Functional Firearm for the purposes of Self Defense.

## PRAYER FOR RELIEF

29. For an order that Defendants issue Plaintiff a Concealed Weapons Permit because "self-defense" is constitutionally sufficient good cause.

30. For general damages according to proof.

31. Costs and Attorneys' fees pursuant to 42 U.S.C. § 1988.

32. For costs, fees and any such other relief the Court deems just and proper.

November 4, 2011                    ___/s/_____

                                        Jonathan W. Birdt

# EXHIBIT 4

1  | **JONATHAN W. BIRDT – SBN 183908**
   | Law Office of Jonathan W. Birdt
2  | 18252 Bermuda Street
   | Porter Ranch, CA 91326
3  | Telephone:    (818) 400-4485
   | Facsimile:    (818) 428-1384
4  | jon@jonbirdt.com
5  | Attorney for Plaintiffs Sigitas and Rima Raulinaitis

6

7

8                    UNITED STATES DISTRICT COURT

9                   CENTRAL DISTRICT OF CALIFORNIA

10

11              CV11-08026 JHN (JCGx)

12  | SIGITAS RAULINAITIS and          )   CASE NO.
    | RIMA RAULINAITIS                 )
13  |                                  )   COMPLAINT
14  |            Plaintiffs,           )
    |                                  )   42 U.S.C. 1983 & 1988
15  |      vs.                         )
    |                                  )
16  | THE LOS ANGELES COUNTY SHERIFFS  )
    | DEPARTMENT,                      )
17  |                                  )
    |                                  )
18  |            Defendants.           )
19  |                                  )
    ——————————————————————————————————

20       COME NOW Plaintiffs Sigitas Raulinaitis and Rima Raulinaitis, pursuant to 42 U.S.C.

21  1983 who allege violation of their Second Amendment Rights by Defendant. Plaintiffs are

22  precluded from carrying a functional firearm by the laws of the State of California unless they are

23  granted permission to do so. As a resident of Los Angeles County and the City of Santa Clarita,

24  Plaintiffs were required to apply for permission to exercise their Second Amendment Rights to

25  carry a functional firearm from the Los Angeles County Sheriffs Department. Defendant denied

26  Plaintiffs application, leaving them with no ability to exercise their Second Amendment Rights.

27  Further, Plaintiff alleges that Defendants intentionally utilize a "Good Cause" policy implemented

28

                                    Civil Litigation
                                    Unit

                                    OCT 06 2011

                 COMPLAINT - 1      Received

10. Plaintiffs drive by school zones on a daily basis and are prohibited by California Law from possessing an exposed firearm within 1,000 feet of a school.

11. The California Senate and Assembly have passed a bill banning the open carrying of firearms, thus further evidencing their intent to make concealed carry the only lawful method of Second Amendment expression in this State.

## THE PARTIES

12. Plaintiffs are natural persons and citizens of the United States who reside in the County of Los Angeles and in the City of Santa Clarita.

13. The Los Angeles Sheriffs Department is a municipal entity organized under the laws of the State of California.

## JURISDICTION & VENUE

14. This Court has subject matter jurisdiction over this action pursuant to 42 U.S.C. § 1983.

15. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## LEGAL BACKGROUND

16. California Penal Code 12050 is the only mechanism in California by which a non-law enforcement official can carry a loaded firearm. Pursuant to a statutory scheme, the California Attorney General has created an application form for residents of the State of California to use when applying for a permit thereunder.

17. Defendants have discretion thereunder to decide what constitutes "good cause" for the issuance of a permit and utilize this discretion to administer a policy of refusing to issue permits to any applicant who has not been the victim of a crime, lacks political connections or is retired Federal Law Enforcement.

18. Defendants define good cause as:

"convincing evidence of a clear and present danger to life, or of great bodily harm to the applicant, his spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

1   to overly restrict the exercise of Second Amendment rights without any reasonable basis for doing

2   so.  Plaintiff seeks recovery pursuant to 42 U.S.C. 1988

3

4   <u>INTRODUCTION</u>

5   1.  Plaintiffs are residents of Los Angeles County and the City of Santa Clarita who have

6       applied for and been denied a license to Carry a Concealed weapon from the Los Angeles

7       County Sheriffs' Department in the past twelve months.

8   2.  Plaintiff Sigitas Raulinaitis is employed as a licensed General Contractor, Attorney, and

9       Real Estate Broker

10  3.  While in the process of his various duties Plaintiff Sigitas Raulinaitis  sometimes had in his

11      possession large amounts of cash and other valuables.

12  4.  As a licensed Attorney, Contractor and Real Estate Broker and handgun purchaser, Plaintiff

13      Sigitas Raulinaitis has passed multiple criminal background checks.

14  5.  The State of California has recognized that Plaintiff Sigitas is of Good Moral Character and

15      is not disallowed from legally keeping and bearing firearms. The only lawful way to do this

16      is with a CCW Permit which Defendants refuse to issue because under their policies and

17      procedures Plaintiff has not established "Good Cause" as they define it to exercise his

18      Fundamental Constitutional Right to possess a functional firearm for the purpose of self-

19      defense.

20  6.  Plaintiff Rima Raulinaitis is the CFO of a General Contracting firm.

21  7.  Plaintiff Rima Raulinaitis is not prohibited from owning or possessing firearms.

22  8.  The only lawful way Plaintiff Rima Raulinaitis can exercise her fundamental constitutional

23      right to keep and bear arms in California is through the acquisition of a CCW permit.

24      Defendants refuse to issue this permit because she has not established "Good Cause", and is

25      thereby denied her fundamental constitutional right to self defense.

26  9.  Plaintiffs seek to exercise their Second Amendment Right to carry a functional firearm for

27      self defense.

28

COMPLAINT - 2

19. Defendants justify their policy with an unsupported belief that more guns equal more crimes, but admit under oath that there is no justification for this fanciful belief.

20. Defendants policy is an unconstitutional prior restraint on a fundamental personal liberty.

21. The Bill of Rights is the collective name for the first ten amendments to the United States Constitution, which limit the power of the U.S. federal government. These limitations serve to protect the natural rights of liberty and property including freedoms of religion, speech, a free press, free assembly, and free association, as well as the right to keep and bear arms.

22. The Second Amendment States: A well regulated militia being necessary to the security of a free State, the right of the People to keep and bear arms shall not be infringed.

23. The US Supreme Court Says:

> "Putting all of these textual elements together, we find that they guarantee the individual right to possess and carry weapons in case of confrontation." *District of Columbia v. Heller*, 128 S. Ct. 2783, at 2798 (2008).

24. The Supreme Court has explained that the natural meaning of "bear arms" is to "'wear, bear, or carry ...upon the person or in a pocket, for the purpose ... of being armed and ready for offensive or defensive action in a case of conflict with another person.'" *Id.* at 2793 (quoting Muscarello v. United States, 524 U.S. 125, 143 (1998)).

25. The Ninth Circuit recently found, in a prior restraint case decided on a First Amendment claim that:

> Our analysis is guided by certain well-established principles of First Amendment law. In public places such as streets and sidewalks, "the State [may] enforce a content-based exclusion" on speech if the "regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983). For content-neutral regulations, the State may limit "the time, place, and manner of expression" if the regulations are "narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication." *Id.*
> We conclude that the Ordinance fails to satisfy the narrow tailoring element of the Supreme Court's "time, place, and manner" test. The Ordinance is not narrowly tailored because it regulates significantly more speech than is necessary to achieve the City's purpose of improving traffic safety and traffic flow at two major Redondo Beach intersections, and the City could have achieved these goals through less restrictive measures, such as the enforcement of existing traffic laws and regulations. Because the Ordinance does not constitute a reasonable regulation of the time, place, or manner of speaking, it is facially unconstitutional.

*Comite de Jornaleros de Redondo Beach v. City of Redondo Beach* (9th Cir., Sept. 16, 2011, 06-55750) 2011 WL 4336667.

26. Alternatively, the regulation fails because Accordingly, it substantially burdens the right to keep and to and is therefore subject to heightened scrutiny under the Second Amendment. *Nordyke v. King* (9th Cir. 2011) 644 F.3d 776, 786

27. "I shall not today attempt further to define the kinds of material I understand to be embraced within that shorthand description; and perhaps I could never succeed in intelligibly doing so. But I know it when I see it, and the motion picture involved in this case is not that." *Jacobellis v. State of Ohio* (1964) 378 U.S. 184, 197. There is little doubt Justice Potter would come to the opposite conclusion in this matter, finding the policy at issue to be quite obscene.

## FIRST CAUSE OF ACTION

### VIOLATION OF 42 U.S.C. 1983

28. The Second Amendment confirms the Fundamental Right of law-abiding individuals to bear arms for self-defense.

29. The California legislature has stated that the only method by which citizens can bear arms for self defense is with a concealed carry permit is to carry exposed, and has recently taken the steps necessary to close the open carry "loophole" that previously existed.

30. Defendants justification for removing all avenues of Second Amendment expression is that "more guns equal more crime", but are unable to back this assertion with any hard data or evidence. Thus an argument that "crime control" is achieved by the denial of permits will not stand up to even a Rational Basis inquiry.

31. Defendants Denial of Plaintiffs' applications leaves them with no alternative means of exercising their Fundamental Constitutional Right to keep and bear a functional firearm for the purposes of Self Defense.

PRAYER FOR RELIEF

32. For an order that Defendants issue to Plaintiffs' Concealed Weapons Permits, and subsequently renew said permits as long as plaintiffs have not lost their right to legally possess firearms under State and Federal law.

33. For a declaration that defendants policy violates the Second Amendment.

34. For general damages according to proof.

35. Costs and Attorneys' fees pursuant to 42 U.S.C. 1988.

36. For costs, fees and any such other relief the Court deems just and proper.

September 23, 2011

Jonathan W. Birdt

COMPLAINT - 6